**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ENFORCEMENT COMMITTEE, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) **PUBLIC VERSION** ) |
| UNITED STATES, | ) Court No. 21-00129 |
| Defendant, | ) ) |
| and | ) ) |
| MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION, | ) ) ) |
| Defendant-intervenors. | ) ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>**

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL                                  KARA M. WESTERCAMP
JENNIFER L. PETELLE                  Trial Counsel
Attorney                                          U.S. Department of Justice
U.S. Customs and Border Protection  Commercial Litigation Branch
Office of the Chief Counsel             P.O. Box 480
   Enforcement and Compliance      Ben Franklin Station
                                                      Washington, D.C.  20044
                                                      Tel:  (202) 305-7571
                                                      Fax: (202) 514-8264
                                                      Email: kara.m.westercamp@usdoj.gov
December 3, 2021                            Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................................... ii

    I.     Administrative Determination Under Review ........................................2

    II.    Issues Presented For Review ...................................................................2

STATEMENT OF FACTS ..........................................................................................2

    I.     Commerce's Revocation Of The Antidumping Duty Order With Respect To MPG ............................................................................................ 2

    II.    Initiation Of Investigation ....................................................................... 2

    III.   TRLED's Information Requests And MPG's Responses ......................5

    IV.   The Written Arguments Of MPG And AHSTEC ...................................7

    V.    TRLED Issued A Finding Of Affirmative Evasion And MPG's Appeal ..............8

    VI.   On Appeal, OTRR Reversed TRLED's Finding Of Affirmative Evasion ...........12

SUMMARY OF THE ARGUMENT ..........................................................................15

ARGUMENT ..............................................................................................................16

    I.     Enforce And Protect Act .......................................................................16

    II.    Standard Of Review ...............................................................................17

    III.   OTRR's Reversal Of TRLED's Determination Of Evasion Is Supported By Substantial Evidence And Is In Accordance With Law .............18

    IV.   CBP Did Not Violate Any Due Process Right By Not Rejecting MPG's Public Summaries Of Business Confidential Information ................................23

CONCLUSION ..........................................................................................................28

i

# **TABLE OF AUTHORITIES**

## **CASES**                                                                                                **PAGE(S)**

*Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States,*
    751 F.2d 1239 (Fed. Cir. 1985)..................................................................................25

*Am-Pro Prot. Agency, Inc. v. United States,*
    281 F.3d 1234 (Fed. Cir. 2002)...........................................................................19, 20

*Borusan Mannesmann Pipe U.S. Inc. v. United States,*
    No. 20-00012, 2020 WL 3470104 (Ct. Int'l Trade June 25, 2020) ............................19, 26

*Calcutta Seafoods Pvt. Ltd. v. United States,*
    495 F. Supp. 3d 1318 (Ct. Int'l Trade 2021) ...................................................23

*Camilo v. United States,*
    642 F.3d 1040 (Fed. Cir. 2011)..................................................................................20

*Cook v. United States,*
    536 F.2d 365 (Ct. Cl. 1976) .......................................................................................27

*Diamond Tools Tech. LLC v. United States,*
    No. 20-00060, 2021 WL 5149856 (Ct. Int'l Trade Oct. 29, 2021)....................................27

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012).........................................................................18

*FPC v. Transcon. Gas Pipe Line Corp.,*
    423 U.S. 326 (1976)...................................................................................................18

*Jazz Photo Corp. v. United States,*
    439 F.3d 1344 (Fed. Cir. 2006).........................................................................19

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)............................................................................................26, 27

*Maverick Tube Corp. v. United States,*
    857 F.3d 1353 (Fed. Cir. 2017)........................................................................22, 23

*Micron Tech., Inc. v. United States,*
    117 F.3d 1386 (Fed. Cir. 1997).................................................................................28

*MidContinent Nail Corp. v. United States,*
    949 F. Supp. 2d 1247 (Ct. Int'l Trade 2013) .....................................................27

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003)..................................................................21, 22

*PSC VSMPO-Avisma Corp. v. United States,*
    688 F.3d 751 (Fed. Cir. 2012)............................................................................18

*Royal Brush Manufacturing v. United States,*
    483 F. Supp. 3d 1294 (Ct. Int'l Trade 2020) ............................................25, 26

*Royal Brush Manufacturing, Inc. v. United States,*
    --- F.Supp.3d ----, 2021 WL 5033650 (Fed. Cl. Oct. 29, 2021) ......................26

*SKF USA Inc. v. United States,*
    263 F.3d 1369 (Fed. Cir. 2001)..........................................................................18

*Star Fruits S.N.C. v. United States,*
    393 F.3d 1277 (Fed. Cir. 2005)..........................................................................18

*Tung Fong Indus. Co. v. United States,*
    318 F. Supp. 2d 1321 (Ct. Int'l Trade 2004) ............................................23, 24

*WelCom Prods., Inc. v. United States,*
    865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) ....................................................17

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998)..........................................................................17

## **STATUTES**

19 U.S.C. § 1517.................................................................................................. passim

19 U.S.C. § 1677f(c)(1)(A)........................................................................................25

## **REGULATIONS**

19 C.F.R. § 165.21....................................................................................................17

19 C.F.R. § 165.22....................................................................................................17

19 C.F.R. § 165.23....................................................................................................16

19 C.F.R. § 165.4..................................................................................2, 23, 24, 27

19 C.F.R. § 165.6....................................................................................................10

## OTHER AUTHORITIES

*Certain Frozen and Canned Warmwater Shrimp and Prawns from Brazil, China, Ecuador, India, Thailand, and Vietnam*,
  69 Fed. Reg. 1,301 (Dep't of Commerce Jan. 8, 2004) ......................................................2

*See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
  70 Fed. Reg. 5,152 (Dep't of Commerce Feb. 1, 2005). ..................................................2, 3

*See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
  81 Fed. Reg. 47,756 (Dep't of Commerce July 22, 2016) ..................................................3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ENFORCEMENT COMMITTEE, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br>Defendant, )<br><br>and )<br><br>MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION, )<br>Defendant-intervenors. ) | **BPI VERSION**<br><br>Court No. 21-00129 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Defendant, the United States, respectfully submits this response in opposition to the motion for judgment upon the agency record filed by plaintiff Ad Hoc Shrimp Trade Enforcement Committee (AHSTEC), ECF No. 33 (AHSTEC Br.).  As demonstrated below, U.S. Customs and Border Protection (CBP), specifically the Trade Remedy and Law Enforcement Directorate (TRLED), lawfully conducted its investigation of Minh Phu Group (Minh Phu) and its affiliated importer, MSeafood Corporation (MSeafood) (collectively, MPG).  Further, the final negative determination issued by the Office of Trade, Regulations and Rulings (OTRR), is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Accordingly, we respectfully request that the Court deny AHSTEC's motion, and sustain CBP's final negative evasion determination.

I.     **Administrative Determination Under Review**

AHSTEC challenges CBP's administrative review of the final determination as to a

negative finding of evasion with respect to certain frozen warmwater shrimp from India.  Notice

of Final Determination as to Evasion in EAPA Case No. 7356 (C.R. 219)[1] (Feb. 11, 2021).

II.    **Issues Presented For Review**

1.     Whether OTRR's determination to reverse TRLED's affirmative determination of

evasion is supported by substantial evidence, and is not otherwise arbitrary, capricious, or

contrary to law.

2.     Whether CBP deprived AHSTEC of due process by determining that MPG's

public summaries of business proprietary information was in compliance with 19 C.F.R.

§ 165.4(a)(2).

## STATEMENT OF FACTS

I.     **Commerce's Revocation Of The Antidumping Duty Order With Respect To MPG**

In 2004, the U.S. Department of Commerce initiated an antidumping duty investigation

into frozen warmwater shrimp from Vietnam.  *See Certain Frozen and Canned Warmwater*

*Shrimp and Prawns from Brazil, China, Ecuador, India, Thailand, and Vietnam*, 69 Fed. Reg.

1,301 (Dep't of Commerce Jan. 8, 2004).  As one of the largest producers of shrimp in Vietnam,

MPG participated in the investigation and was then subject to the antidumping duty order

covering frozen warmwater shrimp from Vietnam when Commerce imposed the order on

February 1, 2005.  *See Certain Frozen Warmwater Shrimp from the Socialist Republic of*

*Vietnam*, 70 Fed. Reg. 5,152 (Dep't of Commerce Feb. 1, 2005) (LTFV determ.).  That same

day, Commerce also imposed an antidumping duty order covering certain frozen warmwater

---

[1]  References to the confidential and public records are C.R. and P.R., respectively.

shrim from India.  *See Certain Frozen Warmwater Shrimp from India*, 70 Fed. Reg. 5,147

(Dep't of Commerce Feb. 1, 2005) (LTFV determ.).

MPG thereafter participated as a mandatory respondent and was subject to the

antidumping duty order covering Vietnamese shrimp for over a decade until Commerce revoked

the order with respect to MPG in July 2016.  *See Certain Frozen Warmwater Shrimp from the*

*Socialist Republic of Vietnam*, 81 Fed. Reg. 47,756 (Dep't of Commerce July 22, 2016) (Section

129 Partial Revocation), and accompanying Section 129 Decision Memorandum.  The

revocation order applied only to frozen warmwater shrimp that is "produced and exported by the

Minh Phu Group."  *Id.* at 47,757.  As a condition of the revocation, Commerce required MPG to

certify that it was importing only Vietnam-origin shrimp to the United States.  Section 129

Decision Memorandum at 6.

## II.  <u>Initiation Of Investigation</u>

On October 9, 2019, CBP initiated an investigation under 19 U.S.C. § 1517, commonly

referred to as the "Enforce and Protect Act" or "EAPA," to determine whether certain frozen

warmwater shrimp from India had been entered into the United States by means of evasion.

Notice of Initiation (Oct. 9, 2019) (P.R. 10).

CBP initiated the investigation in response to a trade association's allegation that MPG

was evading antidumping duties.  *See* Ad Hoc Shrimp Trade Enforcement Committee

(AHSTEC) EAPA Allegation (July 17, 2019) (P.R. 2); AHSTEC Supplemental EAPA

Allegation (Aug. 30, 2019) (P.R. 4); AHSTEC Additional Supplemental EAPA Allegation (Sept.

30, 2019) (C.R. 2-3, P.R. 7); AHSTEC 2d Additional Supplemental EAPA Allegation (Oct. 8,

2019) (P.R. 8).  AHSTEC alleged that MPG had evaded antidumping duties by importing certain

frozen warmwater shrimp into the United States that were produced in India and transshipped

through Vietnam.  CBP officially acknowledged receipt of the allegation in September 2019.

CBP Acknowledgment of EAPA Allegation (Sept. 18, 2019) (P.R. 5).  CBP later placed

additional information on the record, including MPG's monthly export snapshots covering May

2019, through October 2019, and Panjiva data showing aggregated exports of shrimp from India

to Vietnam.  *See* TRLED Memorandum to File (Dec. 20, 2019) (C.R. 5).

However, prior to CBP's official acknowledgement of AHSTEC's allegation, in a letter

dated May 17, 2019, U.S. Congressman Darin LaHood had urged CBP to initiate an

investigation based on an earlier allegation against MPG.  MPG Voluntary Response

Resubmission at Attachment 1 (Jan. 31, 2020) (C.R. 7; P.R. 13) (MPG Voluntary Resubmission).

Congressman LaHood had alleged that "{t}he Minh Phu Group is accused of purchasing

substantial quantities of frozen shrimp from India, minimally processing the shrimp in Vietnam,

and selling the shrimp to the United States through their related importer{.}"  *Id.*  In a June 2019

press release in response to Congressman LaHood's letter, MPG informed its shareholders of the

allegation, and explained that it "always strives to comply with the law" and that it "imports

shrimp from India to meet the increase in {} shrimp demand from markets outside the United

States{.}"  *See* MPG Supplemental Voluntary Submission at Exhibit 5 (May 1, 2020) (P.R. 38).

In January 2020, TRLED preliminarily determined that on the basis of AHSTEC's

various submissions and the additional information it had placed on the record, there was a

"reasonable suspicion" that MPG had evaded paying antidumping duties by transshipping

Indian-origin shrimp to the United States while claiming it was of Vietnamese origin.  *See* Notice

of Initiation and Interim Measures (Jan. 5, 2020) (C.R. 6).

**III.    <u>TRLED's Information Requests And MPG's Responses</u>**

On January 31, 2020, MPG refiled its voluntary submission that it claimed it had

previously hand-delivered to CBP on September 13, 2019.  *See* MPG Voluntary Resubmission.

On February 25, 2020, TRLED issued its initial request for information (RFI) questionnaires to

Minh Phu and MSeafood, *see* MPG RFI Questionnaire (C.R. 8); MSeafood RFI Questionnaire

(C.R. 9), and after several extensions, Minh Phu and MSeafood filed their responses on March

19, 2020, and March 23, 2020, respectively.  *See* MSeafood RFI Response (C.R. 229); Minh Phu

RFI Response (C.R. 230).

Prior to the deadline for the RFI responses, however, AHSTEC had submitted comments

in February 2020, alleging that MPG's January 31, 2020 voluntary resubmission failed to meet

CBP's regulatory requirements regarding the identification of business confidential information

and adequate public summaries.  *See* AHSTEC Letter (Feb. 28, 2020) (P.R. 16).  In its comments

to Minh Phu and MSeafood's RFI responses, AHSTEC again alleged that the public summaries

were inadequate.  *See* AHSTEC Comments on Minh Phu RFI Response (Mar. 25, 2020) (P.R.

18); AHSTEC Comments on MSeafood RFI Response (Mar. 31, 2020) (P.R. 19).

On May 1, 2020, MPG submitted a further voluntary response, *see* MPG Voluntary

Factual Submission (May 1, 2020) (C.R. 26), with AHSTEC submitting rebuttal comments on

May 20, 2020.  AHSTEC Rebuttal Comments (May 20, 2020) (P.R. 64).  In this response, MPG

clarified that "{f}or all orders shipped to the United States, MPG only uses raw shrimp sourced

from Vietnamese farms, both farms owned by MPG and those owned by other Vietnamese

suppliers."  *Id.* at 15.  With respect to imported shrimp, "{a}fter the initial processing, the shrimp

are placed into a basket marked with a trace code along with the name of the supplier," and then

the "imported shrimp is placed into separate bins for thawing" with those bins marked with an "XH" to denote imported shrimp.  *Id.* at 16.

The shrimp are then sized and placed into baskets which identify: "(i) the source of the shrimp (*i.e.*, imported or domestic); (ii) the traceability code; (iii) the short name of the finished product to identify the processing the shrimp will undergo; and (iv) the brand name required by the customer to be placed on the package."  *Id.*  "If some baskets for the same order contain an 'XH,' then these shrimp are mixed during further processing with domestic shrimp for the same order," with this being "the *first time* that imported shrimp comes into contact with domestic shrimp, and this intermingling *only occurs* for orders which *have already been designated as containing imported shrimp*, per the tags placed on the basket during pre-processing."  *Id.* at 16-17 (emphasis in original).  MPG explained that "*none of these intermixed orders were for export to the United States*."  *Id.* at 17 (emphasis in original).

In MPG's response to a supplemental RFI questionnaire, in which TRLED had requested "a bill of lading report for all the covered merchandise imported from India," MPG responded that it could not trace individual imported shrimp from import bill of lading through to finished goods inventory.  *See* MPG Supplemental RFI Response (June 11, 2020) (C.R. 213).  MPG reiterated how it *collectively* segregates and traces all imported shrimp, but that it cannot trace *individual* imports to the original bills of lading.  *See id.* at 16.

However, MPG disclosed that "{d}uring the preparation of this submission, MPG discovered that one of Minh Phat's exports to the customs territory of the United States during the period of investigation contained a small quantity of Indian shrimp."  *Id.* at 8.  "Specifically, it was discovered that one of Minh Phat's export sales to [ ██████ ] contained [ ████ ] {kilograms} of mixed Vietnamese and Indian shrimp (marked 'XH') and [ ████ ] {kilograms}

of solely Vietnamese-origin shrimp, for a total export sale quantity of [⬛⬛⬛] {kilograms} of shrimp." *Id.* MPG explained that "{t}he production team processing the shrimp for the order was initially not aware that the restrictions on the importation of Indian shrimp into the United States also applied to [⬛⬛⬛⬛]," but had since been instructed to not use any imported Indian shrimp for any future sales to that country. *Id.* MPG explained this was the only instance of sales of Indian shrimp to that country and due to the "*de minimis* quantity of the shipment this was not initially flagged when reviewing and reporting the sales records of Minh Phat for purposes of this investigation." *Id.* at 8-9.

## IV.   The Written Arguments Of MPG And AHSTEC

On September 14, 2020, MPG submitted its written arguments and reiterated that the evasion allegation was baseless. MPG Written Submission (Sept. 14, 2020) (C.R. 214). Among other things, MPG explained that it "has been transparent throughout the course of this investigation regarding the specifics and limitations of its tracing system," and that it "has numerous procedures in place to prevent the unintentional comingling of imported and domestic shrimp." *Id.* at 10. Further, MPG explained that since January 1, 2019, it has "prepare{d} product traceability documents for its exports to the United States in order to comply" with the U.S. National Oceanic and Atmospheric Administration (NOAA) Seafood Import Monitoring Program (SIMP), and that periodic audits by "SIMP authorities have not found any discrepancies between the information provided in the SIMP reports and the origin of the shrimp resulting from Minh Phu's system of tracing (any small discrepancies noted in the Audit Results were minor and due to inadvertent entry errors)." *Id.* at 12-13; *see also* MPG Voluntary Resubmission at Attachment 2 (explaining requirements of SIMP program).

Further, MPG argued that CBP should not find a determination of evasion because it "has a robust process in which it segregates imported and domestic {shrimp} along with a comprehensive and NOAA-verified tracing system that has already demonstrated that it can flag any possible errors."  MPG Written Submission at 17.  And while MPG had "voluntarily informed CBP about the one inadvertent shipment of imported shrimp," MPG argued that the CBP should not find "that a single inadvertence that constituted [███████████] of MPG's total shrimp exports to the United States in [████] demonstrates a 'pattern of negligent conduct.'"  *Id.*

In AHSTEC's response to MPG's written argument, it continued to argue that MPG should have made its business confidential information available to it, which otherwise prevented AHSTEC from comparing MPG's tracing system with the system described in MPG's earlier responses in the 2014-2015 review of the antidumping duty order covering MPG's shrimp.  *See* AHSTEC Written Submission (Sept. 28, 2020) (P.R. 219).

## V.     TRLED Issued A Finding Of Affirmative Evasion And MPG's Appeal

On October 13, 2020, TRLED determined that "evidence on the record indicates that there is a strong likelihood that MPG co-mingled Indian-origin shrimp with Vietnamese-origin shrimp on imports to the United States."  Notice of Determination as to Evasion at 9 (Oct. 13, 2020) (C.R. 217) (October 13 Determination).  It first explained that "{r}ecord evidence shows that MSeafood, the U.S. based affiliated of {MPG}, imported shrimp from {MPG} during the period of investigation . . . from October 8, 2018, through October 13, 2020{, and that e}vidence on the record shows that {MPG} has a history of importing Indian-origin shrimp into Vietnam for processing."  *Id.* at 4.

For example, TRLED explained that "{e}vidence on the administrative record shows that {MPG} stores and processes Indian-origin shrimp in the same facilities and locations in which it processes Vietnamese-origin shrimp, which allows for the possibility of comingling or mislabeling." *Id.* at 5.  This was information prior to the revocation of MPG from the order, and that while TRLED noted that MPG had previously "openly comingl{ed} [███████████ ████████████████████] before this EAPA investigation," it "now claims that it implemented a tracing system in 2016, which allows it to track imported shrimp from the minute it enters its production facility." *Id.* at 6.  In order to test the veracity of this claim, TRLED explained that it had requested supplemental information from MPG including a "bill of lading report for all the covered merchandise imported from India," but that MPG responded that "it cannot trace specific imported shrimp from the import bill of lading through to specific 'XH' market shrimp in finished goods inventory, but it segregates and traces *all* imported shrimp in order to ensure that no imported shrimp is exported to the United States." *Id.* at 6-7 (emphasis in original).

TRLED explained that MPG's "inability to trace specific imports of Indian-origin shrimp through the production facility to specific sales is problematic in that it is crucial to CBP's understanding of whether comingling or mislabeling of Indian-origin shrimp was happening." *Id.* at 7.  And that while MPG claimed that it could reconcile its purchases of imported shrimp to sales to all markets, "{t}he problem with this claim is that it is an accounting reconciliation that is unsupported by {MPG's} internal production records of the shrimp being processed at different stages," and that the "importance of this missing information cannot be understated{.}" *Id.*

While TRLED considered MPG's response that MPG had discovered that one of its export sales to [█████████] contained some "mixed Vietnamese and Indian shrimp (marked 'XH')," TRLED explained that there were several potential issues with this response. *Id.* First, although MPG had claimed to have a robust tracing system, that "should have prevented this instance of comingling." *Id.* Second, "if {MPG} could precisely trace this sale of comingled shrimp," then TRLED explained that it questioned MPG's "inability to trace specific imported shrimp from the bill of lading through to specific 'XH' marked shrimp in finished goods inventory.'" *Id.* at 7-8. Further, TRLED explained that "{MPG} and MSeafood should be capable of conforming" to the SIMP and provide substantiating documentation, and that even the accuracy of MPG's "SIMP documents are in question if they are unable to trace imported shrimped that has been processed through to tis production documents." *Id.* at 8. Finally, TRLED noted "other discrepancies that cast doubt on the overall reliability of {MPG's} responses," such as inconsistencies on when MPG had stated it had stopped "importing shrimp into Vietnam from [████████████████] after July 2019." *Id.*

Regarding evasion, TRLED explained that, pursuant to 19 U.S.C. § 1517(c)(e) and 19 C.F.R. § 165.6, "CBP may apply an adverse inference if the party to the investigation that filed an allegation, the importer, or the foreign producer or exporter of the covered merchandise fails to cooperate and comply to the best of its ability with a{ request for information} made by CBP." *Id.* at 9. TRLED determined that MPG's failure to "provide the requested information, *i.e.*, tracing imported shrimp's bill of ladings to specific exported shrimp, that would allow CBP to trace its imports of Indian-origin shrimp through its production processes to its sales demonstrates that {MPG} did not act to the best of its abilities in this EAPA investigation." *Id.* Furthermore, "{MPG's} failure to submit sufficient tracing information and cooperate to the best

of its abilities means that {MPG} was unable to demonstrate that it did not comingle Indian-origin shrimp with Vietnamese-origin shrimp on its sales to the United States during the {period of investigation}." *Id.*

And then TRLED determined to apply "facts otherwise available and infer that the merchandise imported to the United States contained comingled Indian-origin and Vietnamese-origin shrimp" due to "{MPG's} refusal to provide full tracing of all of its Indian-origin shrimp purchase to its sales of shrimp." *Id.* Thus, TRLED determined that record evidence supported its determination that MPG "has been comingling Indian-origin shrimp with Vietnamese-origin shrimp on imports to the United States," and that MPG's failure to "respond to the best of its ability supports the application of adverse inferences." *Id.* at 9-10.

In November 2020, MPG timely requested an administrative review of TRLED's decision. *See* MPG Request for Administrative Review (Nov. 10, 2020) (C.R. 218). MPG argued that the application of adverse inferences to it was unlawful and not supported by substantial evidence, and that CBP's determination of evasion was not supported by substantial evidence. *See id.* With respect to CBP's application of adverse inferences, MPG argued that "{i}t cannot be the case that if a company's system makes it impossible for it to report data in a specific way requested by CBP, that it is then *per se* not cooperating to the best of its ability if it can achieve the same result by a different method." *Id.* at 12. Further, MPG explained that it had put its "tracing system into place after the revocation of the antidumping duty order" in July 2016, and that CBP had failed to demonstrate how MPG's prior behavior "is in any way relevant to its actions in 2018-2020, particularly when {it} has demonstrated and explained that its entire system for tracking the shrimp it sold to the United States changed in 2016." *Id.* at 23.

Finally, MPG argued that "{i}t should go without saying that the mere fact" that it imports shrimp from India "proves nothing regarding whether it is guilty of evading the {antidumping duty} order" because the "data on the record demonstrates that MPG's domestic purchases of shrimp, both from MPG-owned farms and other farms in Vietnam, were sufficient to cover all export to the United States." *Id.* at 24.  Indeed, MPG argued that it "did not have any capacity issues that would necessitate supplementing exports of domestic shrimp to the United States with exports of imported Indian shrimp." *Id.*  And while MPG conceded that it had disclosed an instance in which "Indian shrimp was mistakenly shipped to the United States," that was not substantial evidence that its "tracing system is ineffective" because the "error was not immediately apparent" and discovered only in compiling responses to CBP's requests for information.  *See id.* at 27-28.

## VI.   On Appeal, OTRR Reversed TRLED's Finding Of Affirmative Evasion

On February 11, 2021, in a *de novo* administrative review, OTRR reversed TRLED's affirmative finding of evasion.  *See* OTRR Reversal of Evasion Findings (Feb. 11, 2021) (C.R. 219) (Final Determination).  OTRR adopted TRLED's entire factual history, *id.* at 2-3, and then summarized MPG's arguments in its request for administrative review, and AHSTEC's responses thereto.  *Id.* at 5-7.

OTRR then explained that, in making its determination, it had reviewed:  "(1) the *entire administrative record* upon which the initial October 13 Determination was made by TRLED; and (2) the timely and properly filed request for review and response." *Id.* at 7-8 (emphasis added).  First, OTRR explained that "{a} review of the administrative record raises significant questions as to whether MPG engaged in evasion by transshipping Indian-origin frozen shrimp through Vietnam to the United States" because "{e}xtensive documentation in support of MPG's

arguments against evasion was provided by MPG and this documentation has not been shown to be unreliable." *Id.* at 8. Specifically, OTRR explained that while TRLED had relied on MPG's "inability to produce the specifically requested documents including a 'bill of lading' report' (*i.e.* tracing imported shrimp's bills of lading to specific imported shrimp)," that, alone, was insufficient "to conclude that MPG did not act to the best of its ability to comply with CBP's requests for information during the investigation." *Id.* Rather, in OTRR's view, "this created a situation where there is not substantial evidence that evasion occurred," especially considering that CBP did not have the opportunity to conduct a site visit due to ongoing pandemic restrictions. *Id.*

Moreover, OTRR determined that the October 13 Determination's "finding of evasion in this case appears to rest significantly upon the use of facts otherwise available due to the purported insufficient responses to TRLED's requests for information," which were based on "perceived deficiencies" and a finding that MPG had "failed to cooperate and comply to the best of its ability in response to requests for information from CBP." *Id.* at 9. But OTRR agreed with MPG in that "{e}ven though {it} was unable to trace imported shrimp in the exact manner requested by CBP, MPG was able to reach the same result by demonstrating that {it} tracks imported shrimp throughout the production and sales process through its use of an 'XH' marking to ensure that imported shrimp is not shipped to the United States." *Id.* Also, CBP found that MPG had reconciled its accounting of shrimp purchases and withdrawals from inventory, and "{a}s such, {it} was not unresponsive to CBP's requests for information but rather, responded to the best of its ability given the practical difficulties of directly tracing imported shrimp throughout the production process from specific important bills of lading to specific export sales." *Id.*

OTRR also determined that MPG's explanation of the effectiveness of its internal

tracking system and accounting reconciliation was supported by substantial evidence because

although MPG had identified one shipment to the United States customs territory which

"erroneously contained a *de minimis* amount of imported Indian-origin shrimp," it had explained

that "this shipment was the result of a mistake by {its} production team, [███████████████

████████████████████████████████████████████████████████]." *Id.* Moreover,

OTRR explained that "{d}ue to insufficient documentary evidence on the record regarding this

single shipment containing a *de minimis* amount of Indian-origin shrimp exported to [████████

████], CBP cannot speak to whether this shipment qualifies as a clerical error under the EAPA."

*Id.* But because MPG had voluntarily disclosed the error, "while {it} was unable to tie the

imported shrimp to a specific import bill of lading as requested by CBP," OTRR determined that

MPG's "ability to identify the sale of a *de minimis* amount of imported shrimp from India

commingled with Vietnamese-origin shrimp to [████████] serves as reliable evidence that

MPG's internal system is effective, though not without flaws." *Id.* at 10. Additionally, the

mistaken shipment to the U.S. customs territory was not repeated and, "{i}n the absence of

evidence to the contrary, MPG's internal tracking system of imported shrimp in place during the

period of investigation as well as its accounting reconciliation methods have not been proven to

be unreliable by CBP." *Id.* at 10.

Thus, OTRR determined that "the record evidence as a whole is inconclusive to

demonstrate that MPG's entries to the customs territory of the United States during the period of

investigation contained covered merchandise" and "therefore, the application of adverse

inferences against MPG is inappropriate in this case." *Id.* As a result, OTRR determined that

"based on the documentation and information provided in the record, there is not substantial

evidence that MPG entered shrimp from India by means of evasion by transshipment through Vietnam during the period of investigation," and reversed TRLED's October 13 Determination of evasion.  *Id.*

This action followed.

## SUMMARY OF THE ARGUMENT

First, CBP lawfully concluded that MPG was not evading antidumping duties.  CBP also acted well within its authority when it determined that it was inappropriate to apply adverse inferences against MPG.  Substantial evidence likewise supports CBP's determination that MPG's explanation of its tracking system, which was SIMP-compliant, was a sufficient alternative to the bills of lading that TRLED had requested in its requests for information.  Moreover, it was not arbitrary and capricious for CBP to accept the explanation MPG gave for its one shipment to a United States customs territory which erroneously contained a *de minimis* amount of imported Indian-origin shrimp.

Second, CBP lawfully administered the investigatory proceedings.  CBP acted within the confines of its authority in this investigation to collect information necessary to make its evasion determination, and AHSTEC fails to demonstrate otherwise.  Although AHSTEC contends that it was deprived of due process because CBP did not require MPG to amend its public summaries of confidential information, AHSTEC fails to demonstrate that it has a constitutional due process right to access other parties' business confidential information.

# ARGUMENT

## I.     Enforce And Protect Act

EAPA, codified at 19 U.S.C. § 1517, established a new CBP administrative procedure for investigating allegations of evasion of antidumping and countervailing duty orders as part of the United States' efforts to ensure a level playing field for domestic industries.  Under EAPA, Federal agencies or interested parties—including domestic and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; trade or business associations in a particular industry—may submit allegations to CBP that reasonably suggest that merchandise covered by an AD/CVD order has entered the United States through evasion.  Upon receiving an allegation, the statute mandates a formal investigation process.  CBP's regulations implemented the statutory requirements and set forth additional procedures in furtherance of the agency's EAPA mandate.

Generally, the investigation of an EAPA allegation proceeds as follows:  Within 15 calendar days of receiving an allegation, if CBP determines that the allegation reasonably suggests covered merchandise has been entered through evasion, CBP must initiate an investigation, 19 U.S.C. § 1517(b)(1), and within 90 calendar days, CBP makes its initial determination of reasonable suspicion of evasion and issue interim measures, which includes the suspension and extension of certain liquidated entries, 19 U.S.C. § 1517(e).  The EAPA statute grants CBP broad discretion to determine the scope and means of the investigation, including authority to collect and verify any information it deems necessary to make its evasion determination.  *See* 19 U.S.C. § 1517(c)(2).  CBP's regulations set forth the types of and requirements for the submission of factual information by parties.  *See* 19 C.F.R. § 165.23.  For example, parties to the investigation may voluntarily submit information to CBP or may provide

information in response to requests by CBP.  *Id.*  Parties to the investigation have 200 days from

the date of the initiation of the investigation to submit factual information on the record, and 230

calendar days to submit written arguments.  *Id.*  Parties to the investigation have 15-calendar

days to submit responses to other parties' written arguments.  *Id.*  Interested parties who are not

parties to the investigation may also provide information in response to requests by CBP.  *Id.*

 During the investigation, CBP maintains an administrative record of material obtained

and considered during the investigation.  *See* 19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No

later than 300 calendar days after the initiation of the investigation, CBP is normally required to

make a determination as to whether substantial evidence exists based on the administrative

record to find evasion.  *See* 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  Interested parties

may request reviews of initial determinations, and CBP must complete its reviews and issue final

administrative determinations no later than 60 days after each request.  *See* 19 U.S.C. § 1517(f);

*see* 19 C.F.R. § 165.44 (explaining OTRR's *de novo* review of TRLED's initial determination).

EAPA permits for judicial review in this Court of CBP's final administrative determination and

the original determination as to evasion.  19 U.S.C. § 1517(g)(1).

## II. <u>Standard Of Review</u>

 In reviewing CBP's evasion determinations, this Court determines whether any

determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law.  *Id.* § 1517(g)(2).

 "Courts look for a reasoned analysis or explanation for an agency's decision as a way to

determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of

discretion occurs where the decision is based on an erroneous interpretation of the law, on factual

findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1341 (Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

When reviewing CBP's determinations, "absent constitutional constraints or extremely compelling circumstances," this Court "will defer to the judgment of an agency regarding the development of the agency record."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'"  *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action."  *Id.* at 761; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance").

**III.    OTRR's Reversal Of TRLED's Determination Of Evasion
Is Supported By Substantial Evidence And Is In Accordance With Law**

OTRR's reversal of TRLED's determination of evasion is supported by substantial evidence and in accordance with law because OTRR determined that the record evidence was inconclusive to demonstrate that MPG's entries to the customs territory of the United States

18

during the period of investigation contained Indian-origin shrimp, thus finding that TRLED's

application of adverse inferences was unwarranted.  *See generally* Final Determination.

AHSTEC primarily argues that OTRR failed to conduct a *de novo* review and instead relied on

MPG's "characterizations" of the record.  *See* AHSTEC Br. at 34.  Relatedly, without support,

AHSTEC argues that OTRR "conducted its review without addressing the record" and its

"telescoping of the administrative record to a few select documents renders its determination

arbitrary, capricious, and an abuse of discretion because the agency makes characterizations of

the evidence on the record that are demonstrably false."  *Id.* at 37-38.  AHSTEC's arguments are

without merit, as we explain below.

To begin with, as AHSTEC concedes, *id.* at 37, Government officials are entitled to a

presumption of regularity.  Indeed, CBP is "entitled to the presumption of regularity, which

'supports official acts of public officers.  In the absence of clear evidence to the contrary, the

doctrine presumes that public officers have properly discharged their official duties.'"  *Borusan*

*Mannesmann Pipe U.S. Inc. v. United States*, No. 20-00012, 2020 WL 3470104, at *4 (Ct. Int'l

Trade June 25, 2020) (quoting *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1351 (Fed. Cir.

2006)); *cf. Am-Pro Prot. Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002)

(discussing presumption that government officials act in good faith and requiring clear and

convincing evidence to show otherwise).

Here, in its *de novo* review of TRLED's affirmative finding of evasion, OTRR confirmed

that it reviewed both the "entire administrative record upon which the initial October 13

Determination was made by TRLED" and MPG's "timely and properly filed request for review

and response."  Final Determination at 7-8.  OTRR explained that its "review of the

administrative record raise{d} significant questions as to whether MPG engaged in evasion by

transshipping Indian-origin frozen shrimp through Vietnam to the United States." *Id.* at 8. While AHSTEC argues that OTRR failed to cite specific documents other than MPG's supplemental RFI response, AHSTEC Br. at 34, AHSTEC cites no case law, and nor are we aware of any, that the Court must find that OTRR did *not* consider the entire record evidence merely on the basis of OTRR limiting citations to compelling and important record evidence. *See* Final Determination at 10 ("Consequently, the record evidence *as a whole* is inconclusive to demonstrate that MPG's entries to the customs territory of the United States during the period of investigation contained covered merchandise{.}") (emphasis added); *see e.g.*, *Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011) ("an administrative board's or trial court's failure to mention specific evidence does not mean, as {appellant} contends, that it failed to consider that evidence."); *Am-Pro Prot. Agency, Inc.*, 281 F.3d at 1239–40.  Similarly, the Court should reject AHSTEC's baseless assertion that our motion to correct the administrative record in this action somehow intimates that OTRR failed to review the entire administrative record.  *See* AHSTEC Br. at 37-38.

With respect to adverse inferences, while CBP must generally base its evasion determination on substantial evidence pursuant to 19 U.S.C. § 1517(c)(1)(A), CBP may "use an inference that is adverse to the interests of" the person alleged to have engaged in evasion or "a person that is a foreign producer or exporter" of the covered merchandise when "selecting from among the facts otherwise available" if that person "failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information."  19 U.S.C. § 1517(c)(3)(A).  An adverse inference "may include reliance on information derived from . . . (i) the allegation of evasion . . . ; (ii) a determination by {CBP} in another investigation,

proceeding, or other action regarding evasion of the unfair trade laws; or (iii) any other available information."  *Id.* § 1517(c)(3)(C).

Using antidumping and countervailing duties case law as a guidepost with respect to application of adverse inferences, the Court of Appeals for the Federal Circuit has held that, "{b}efore making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  "An adverse inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; *i.e.*, under circumstances in which it is reasonable to conclude that less than full cooperation has been shown."  *Id.* at 1383.  Even so, "{w}hile the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping."  *Id.* at 1382.

Here, in its decision reversing TRLED's finding of evasion, OTRR explained that TRLED primarily "relied on MPG's inability to produce the specifically requested documents including a 'bill of lading report' (*i.e.* tracing imported shrimp's bills of lading to specific exported shrimp) to conclude that MPG did not act to the best of its ability to comply with CBP's requests for information during the investigation, and as a result, applied adverse inferences against MPG."  Final Determination at 8; *see also id.* (explaining that TRLED's reliance on MPG's inability to produce bills of lading "created a situation where there is not substantial evidence that evasion occurred"); October 13 Determination at 9 (TRLED explaining that MPG's failure to "provide the requested information, *i.e.*, tracing imported shrimp's bill of ladings to specific exported shrimp, that would allow CBP to trace its imports of Indian-origin

shrimp through its production processes to its sales demonstrates that {MPG} did not act to the best of its abilities in this EAPA investigation, justifying the application of adverse inferences under 19 U.S.C. § 1517(c)(3).").  In other words, in OTRR's *de novo* review, it determined that TRLED's "finding of evasion in this case appears to rest significantly upon the use of facts otherwise available due to the *purported* insufficient responses to TRLED's requests for information provided by MPG during the course of the EAPA investigation," and then TRLED "applied adverse inferences on the basis that MPG failed to cooperate and comply to the best of its ability in response to requests for information from CBP."  Final Determination at 9 (emphasis added).

But as OTRR determined, MPG was not, in fact, unresponsive to TRLED's requests. Rather, it "responded to the best of its ability given the practical difficulties of directly tracing imported shrimp throughout the production process from specific import bills of lading to specific export sales."  *Id.*  OTRR noted that although MPG could not "trace imported shrimp in the *exact* manner requested by CBP," MPG reached the same result "by demonstrating that {it} tracks imported shrimp throughout the production and sales process through its use of an 'XH' marking to ensure that imported shrimp is not shipped to the United States."  *Id.* (emphasis added); *see, e.g.*, *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017) (holding that the respondent not only "never indicated that it was unable to provide the relevant information," but admitted that it "*could* provide that information" and the respondent "also never suggested an alternative for the requested information; instead, its 'alternative' was not providing the information at all.").

Supporting its determination that MPG adequately demonstrated the effectiveness of its internal tracking system and accounting reconciliation, OTRR explained that MPG had identified

one shipment to the United States customs territory which erroneously contained a *de minimis* amount of Indian-origin shrimp comingled with Vietnamese-origin shrimp. *See* Final Determination at 9. OTRR assessed MPG's explanation as to this mistake and determined that, "{d}ue to insufficient documentary evidence on the record regarding this single shipment," it "cannot speak to whether this shipment qualifies as a clerical error under the EAPA." *Id.* It did, however, credit MPG for voluntarily disclosing this shipment, and further determined that "while MPG was unable to tie the imported shrimp to a specific import bill of lading as requested by CBP, MPG's ability to identify the sale of a *de minimis* amount of imported shrimp from India commingled with Vietnamese-origin shrimp" to a U.S. customs territory "serve as reliable evidence that MPG's internal system is effective, though not without flaws." *Id.* at 9-10.

As a result, OTRR properly determined that it was inappropriate to apply adverse inferences against MPG because "the record evidence as a whole is inconclusive to demonstrate that MPG's entries to the customs territory of the United States during the period of investigation" contained merchandise covered under the Indian-origin antidumping duty order. *Id.* at 10. "In short, {MPG} was not required to provide information that it did not have, and {CBP} cannot penalize {MPG} for providing information it did not possess." *Calcutta Seafoods Pvt. Ltd. v. United States*, 495 F. Supp. 3d 1318, 1335 (Ct. Int'l Trade 2021) (citing *Tung Fong Indus. Co. v. United States*, 318 F. Supp. 2d 1321, 1335–36 (Ct. Int'l Trade 2004) (holding that Commerce is not permitted to require a party to manufacture or rely on a calculation scheme that would result in inaccurate data)).

## IV.    CBP Did Not Violate Any Due Process Right By Not Rejecting MPG's Public Summaries Of Business Confidential Information

AHSTEC's due process arguments are unavailing because the EAPA statute leaves considerable discretion to CBP in investigating EAPA allegations, and the applicable regulation,

19 C.F.R. § 165.4, expressly states what constitutes business proprietary information.  Although AHSTEC generally complains that it repeatedly raised "specific detailed concerns" regarding MPG's alleged deficient public summaries of its business confidential information and that CBP "completely ignored" its concerns, AHSTEC Br. at 32-33, AHSTEC points to no cognizable violation of due process nor regulatory violation.

The EAPA statute broadly authorizes CBP to "collect such additional information as is necessary to make the determination through such methods {CBP} considers appropriate."  19 U.S.C. § 1517(c)(2).  "Any interested party that makes a submission to CBP in connection with an investigation under this part, including for its initiation and administrative review, may request that CBP treat any part of the submission as business confidential information{.}"  19 C.F.R. § 165.4(a).  "Business confidential treatment will be granted if . . . the information for which protection is sought consists of trade secrets and commercial or financial information obtained from any person, which is privileged or confidential."  *Id.*  When an interested party files a submission with claimed business confidential information, it is also required to file a public version of that same submission.  *Id.* § 165.4(a)(2).  "The public version must be filed on the same date as the business confidential version and contain a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the information."  *Id.*

When interested parties provide public versions of their submissions, they "must certify that the information they are providing is either their own information (*i.e.*, information from their own business records and not business confidential information of another entity) or information that was publicly obtained or in the public domain."  *Id.* § 165.4(d).  CBP, in its discretion, "will reject a submission that includes a request for business confidential treatment

but does not meet the requirements of paragraph (a) of this section." *Id.* § 165.4(b).  Notably,

there is no statutory authority that requires or authorizes CBP to disclose business confidential

information under administrative protective order similar to an antidumping and countervailing

duty investigation or safeguards investigation.  *See* 19 U.S.C. § 1677f(c)(1)(A) (mandating the

release of all business proprietary information to interested parties to the proceeding under a

protective order).

Generally speaking, AHSTEC does not identify any protected interest of which it was

allegedly deprived because it was given access only to public versions of MPG's business

proprietary information.  "A prerequisite for due process protection is some interest worth

protecting." *Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751

F.2d 1239, 1250 (Fed. Cir. 1985).  The Court "look{s} to see if the interest is within the

Constitution's protection of liberty and property." *Id.*  "A protectable interest must be more than

a unilateral expectation.  Those seeking constitutional protection under the due process clause

must point to a legitimate claim of entitlement prior to any consideration of the Government's

constitutional obligations." *Id.*

AHSTEC acknowledges it has no statutory right to access business confidential

information in an EAPA investigation when it has made an allegation against another company,

but without first identifying a protected interest, AHSTEC's due process claim must fail.

Moreover, AHSTEC does not explain why MPG's business proprietary information is crucial to

undermining OTRR's final determination, but, instead, speaks only in generalities about its

desire to have access to this information.

Regardless, AHSTEC maintains that it was deprived due process because CBP did not

reject MPG's public summaries of its own business proprietary information.  *See* AHSTEC Br. at

32-33.  AHSTEC cites *Royal Brush Manufacturing v. United States*, 483 F. Supp. 3d 1294 (Ct.

Int'l Trade 2020), for the proposition that Commerce failed to "ensure compliance with the

public summarization requirements provided in its own regulations."  *Id.* at 32.  But *Royal Brush*

is plainly distinguishable.  In *Royal Brush*, an *importer* who was the target of an EAPA

investigation, alleged that "CBP redacted or otherwise withheld substantial amounts of record

information, some of which CBP relied on to support its affirmative evasion determination"

against the importer.  483 F. Supp. 3d at 1304.  The Court noted that in some documents that

*CBP itself* had placed on the record, CBP had an "inattention to the requirement for a public

summary of information designated business confidential."  *Id.* at 1307.  In remanding to CBP,

the Court held that it did "not hold that Royal Brush is entitled to receive business confidential

information" because "Congress has not mandated that Royal Brush be afforded such access and

Royal Brush has not shown that due process requires it."  *Id.* at 1308.  But the Court held that

CBP, nonetheless, "must ensure compliance with the public summarization requirements

provided in its own regulations."  *Id.*

Upon remand, in *Royal Brush Manufacturing, Inc. v. United States*, --- F. Supp. 3d ----,

2021 WL 5033650, at *5 (Ct. Int'l Trade Oct. 29, 2021), the Court sustained CBP's

determination because "CBP has now issued its remand results in which it documents the

addition of revised public summaries to the administrative record."  The Court further explained

that in determining whether a due process right has been violated, it typically undertakes a fact-

based inquiry focused on the following three factors: (1) "the private interest that will be affected

by the official action;" (2) "the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural

safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at *6 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Royal Brush failed to address the first and third factors and, therefore, the Court also held that nothing "compel{led} the conclusion that CBP was required to grant Royal Brush access to confidential information during the EAPA investigation."  *Id.*; *see also Diamond Tools Tech. LLC v. United States*, No. 20-00060, 2021 WL 5149856, at *14–15 (Ct. Int'l Trade Oct. 29, 2021) ("Similarly, {the importer} has not demonstrated that due process requires that it receive access to proprietary information during the EAPA investigation.  Moreover, {the importer} has failed to demonstrate how access to the proprietary information would have aided the company during the administrative proceeding.").

        In contrast, AHSTEC is *not* an importer who is the target of an EAPA investigation, rather, it made the allegations *against* MPG.  And unlike in *Royal Brush*, wherein CBP itself failed to provide adequate public summaries of business proprietary information, here, CBP accepted MPG's various public summaries.  While AHSTEC may quibble with CBP for not rejecting MPG's voluminous submissions and requiring more detail in its public summaries, the very fact that AHSTEC ably filed robust comments to each of MPG's submissions undermines its argument and demonstrates that MPG's public summaries provided "information in sufficient detail to permit a reasonable understanding of the substance of the information."  19 C.F.R. § 165.4(a)(2).  Moreover, AHSTEC fails to articulate precisely how MPG even could have provided more information in its public summaries, despite now having had access to MPG's business proprietary information.

         At bottom, because MPG does not identify any protected property interest, it cannot have a due process right to a "particular form of procedures."  *Cook v. United States*, 536 F.2d 365,

368 (Ct. Cl. 1976) (citation omitted).  Without establishing any due process right, the Court should decline AHSTEC's invitation to expand access by a company or person alleging an EAPA violation to the target company's business proprietary information during an EAPA investigation.  *See, e.g.*, *MidContintent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1278 (Ct. Int'l Trade 2013) ("{A}gencies with statutory enforcement responsibilities . . . enjoy broad discretion in allocating investigative and enforcement resources."); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1394-95 (Fed. Cir. 1997) (explaining Commerce maintains "discretionary authority to determine the extent of investigation and information it needs").

## CONCLUSION

For these reasons, we respectfully request that the Court deny AHSTEC's motion for judgment on the agency record, sustain CBP's negative evasion determination, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General


/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

28

OF COUNSEL:

JENNIFER L. PETELLE                    /s/ Kara M. Westercamp
Attorney                               KARA M. WESTERCAMP
U.S. Customs and Border Protection     Trial Attorney
  Office of the Chief Counsel          U.S. Department of Justice
                                       Civil Division
                                       Commercial Litigation Branch
                                       P.O. Box 480
                                       Ben Franklin Station
                                       Washington D.C. 20044
                                       Tel: (202) 305-7571
                                       Email: kara.m.westercamp@usdoj.gov


December 3, 2021                       Attorneys for Defendant

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| AD HOC SHRIMP TRADE ENFORCEMENT COMMITTEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) | Court No. 21-00129 |
| Defendant, | ) ) | |
| and | ) ) | |
| MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION, | ) ) ) | |
| Defendant-intervenors. | ) ) | |

<u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's

response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied, and it is further

ORDERED that the final determination of the U.S. Customs and Border Protection is

sustained in its entirety, and it is further

ORDERED that judgment is entered in favor of the United States.


Dated _____          _____
        New York, N.Y.                                          Judge

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief

contains 7,992 words.  In making this certification, I have relied upon the word count function of

the Microsoft Word processing system used to prepare this brief.

*/s/Kara M. Westercamp*
KARA M. WESTERCAMP