# THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |
|---|---|
| AD HOC SHRIMP TRADE and ENFORCEMENT COMMITTEE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) **NON-CONFIDENTIAL** |
|  | ) Proprietary Information |
| Defendant, | ) Removed from Page 6 |
| and | ) Court No. 21-00129 |
| MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION, | ) ) ) |
| Defendant-Intervenors. | ) ) |

## POST-HEARING BRIEF OF DEFENDANT-INTERVENORS MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION

Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

*Counsel to Defendant-Intervenors Minh Phu Seafood Joint Stock Company and MSeafood Corporation*

William H. Barringer
3900 Watson Place, N.W.
Washington, D.C. 20016

April 22, 2022                                    *Legal Advisor to Minh Phu and MSeafood*

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1
II. STANDARD OF REVIEW ............................................................................................. 2
III. ARGUMENT .................................................................................................................. 4
   A. ORR Examined All Information Material To Its Review ...................................... 4
      1. TRLED's Determination ...................................................................................... 4
      2. ORR's Determination .......................................................................................... 7
   B. Documents Before TRLED But Not ORR Were Not Material To ORR's Review ........... 8
   C. Expedited Remand To Consider Missing Documents ........................................ 10
IV. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Intercargo Ins. Co. v. United States*,
  83 F.3d 391 (Fed. Cir. 1996)..................................................................................................4

*Sea-Land Serv. v. United States*,
  735 F. Supp 1059 (Ct. Int'l Trade 1990) ...........................................................................4, 10

**Statutes**

5 U.S.C. § 554(d) ...........................................................................................................................2

5 U.S.C. § 557(c)(3).......................................................................................................................3

5 U.S.C. § 706............................................................................................................................3, 4

19 U.S.C. § 1517(c) .......................................................................................................................2

19 U.S.C. § 1517(f)(1) ...............................................................................................................3, 7

28 U.S.C. § 2111..........................................................................................................................10

19 USC 1517(c)(3).....................................................................................................................5, 6

**Regulations**

19 C.F.R. § 165.45 .....................................................................................................................3, 7

THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE and ENFORCEMENT COMMITTEE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br>and<br><br>MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION,<br><br>Defendant-Intervenors. | **NON-CONFIDENTIAL**<br>Proprietary Information<br>Removed from Page 6<br><br>Court No. 21-00129 |

**POST-HEARING BRIEF OF DEFENDANT-INTERVENORS MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION**

Defendant-Intervenors Minh Phu Seafood Joint Stock Company and MSeafood Corporation (collectively "Minh Phu") file this brief in support of its motion for supplemental briefing.

**I.     INTRODUCTION**

For the first time at oral argument, the Government notified the Court and the parties that the full record before TRLED was not transmitted to ORR for its review. Minh Phu was understandably surprised by this admission as it had assumed throughout the course of this proceeding that ORR had received the entire record from TRLED.

Nevertheless, the record that ORR did receive and review contained all information material to the review proceeding and to its reversal of TRLED's application of adverse facts available ("AFA"). An examination of the documents omitted from the ORR-reviewed record

1

confirms that the information contained therein is either redundant with information that ORR did review or is not material to ORR's review of TRLED's determination. The narrow issue presented is whether the failure of ORR to review isolated non-material record documents precludes upholding that determination as supported by substantial evidence where all documents material to ORR's review of TRLED's determination were before ORR and reviewed.

In such circumstances, MPG believes it is not necessary for the Court to remand ORR's decision. Instead, we request that the Court review the determination of TRLED and ORR with respect to the information before each and consider the substantive issues before it. In such case, we believe the ORR determination is supported by substantial evidence and is not arbitrary or capricious. If the Court disagrees, we request that the Court remand this narrow issue to ORR on an expedited basis with the instruction to review the non-transmitted documents and inform the Court as to whether they affect its reversal of TRLED's determination.

## II.  STANDARD OF REVIEW

In conducting its investigations, TRLED is to determine whether substantial evidence supports a finding of evasion. 19 U.S.C. § 1517(c)(1). This is in accordance with the APA, which directs that the individuals presiding over the reception of evidence shall make the agency's initial determination. 5 U.S.C. § 554(d). In making the initial determination, TRLED considers all of the evidence before it, examining in particular the subset of documents most relevant to its determination. All documents in question were before and reviewed by TRLED. 19 U.S.C. § 1517(c)(1)(A) ("{CBP} shall make a determination, based on substantial evidence . . . ."). Where TRLED finds that a party has not acted to the best of its ability and that the application of AFA is warranted, it is generally with respect to a party's response to a specific request for information. 19 U.S.C. § 1517(c)(3)(A) ("If {CBP} finds that a party . . . has

failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information, {CBP} may . . . use an inference that is adverse to the interests of that party . . . ."). Thus the documents associated with that requested information are the documents relevant to the AFA finding.

Following a request for administrative review, ORR conducts a *de novo* review of TRLED's initial determination. 19 U.S.C. § 1517(f)(1) ("{A} person . . . may file an appeal with {CBP} for *de novo* review of the determination"). ORR will "review the entire administrative record upon which the initial determination was made, the timely and properly filed request(s) for review and responses, and any additional information" received in response to an ORR request for information. 19 C.F.R. § 165.45.

The APA instructs:

The record being reviewed shall show the ruling on each finding, conclusion, or exception presented. All decisions . . . are a part of the record and shall include a statement of—

    (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.; and

    (B) the appropriate rule, order, sanction, relief, or denial thereof.

5 U.S.C. § 557(c)(3). Thus the record before the agency in a review of an initial decision includes all prior decisions by the agency and the information related to the material issues presented. *Id.* In this EAPA context, when ORR conducts its intra-agency review, it "will render a determination appropriate under law according to the specific facts and circumstances on the record." 19 C.F.R. § 165.45.

The Court is to decide "all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. In doing so, the Court "shall review the whole record or those parts of it cited by

3

a party, and due account shall be taken of the rule of prejudicial error," *id.*, which requires Courts to consider harmless error when reviewing agency actions. *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996) (The APA "requires courts to apply conventional principles of harmless error when reviewing agency action."). Moreover, it is "well settled that courts will not set aside agency action for procedural errors unless the errors 'were prejudicial to the party seeking to have the action declared invalid.'" *Sea-Land Serv. v. United States*, 735 F. Supp. 1059, 1063 (Ct. Int'l Trade 1990) (quoting Woodrum v. Donovan, 544 F. Supp. 202, 207 (Ct. Int'l Trade 1982), *aff'd and adopted*, 923 F.2d 838 (Fed. Cir. 1991).

## III. ARGUMENT

### A. ORR Examined All Information Material To Its Review

#### 1. TRLED's Determination

In its decision, TRLED considered the questions before it to be (1) "whether the Indian-origin shrimp are being comingled with Vietnamese-origin shrimp" and (2) "whether Indian-shrimp are being mislabeled as Vietnamese-origin shrimp and shipped to the U.S. customs territory." CR Doc. 217 at 5. In other words, TRLED's examination purported to focus on the veracity of MPG's tracing system in preventing co-mingling. Thus the documentation pertinent to TRLED's examination relates to Minh Phu's production and accounting records with respect to the production and export of shrimp.

TRLED did not, however, affirmatively answer either question. Instead, TRLED relied on the application of AFA in lieu of actual evidence or substantive analysis. To justify this application of AFA, TRLED determined that Minh Phu's answer to Question 11 of Minh Phu's June 11, 2020 Supplemental RFI response, which explained the limitations of its ability to trace imported shrimp from the import bill of lading through production and export, evidenced Minh Phu's failure to cooperate to the best of its ability:

> As previously noted, Minh Phu alleges that this tracing system has been in place since the *Vietnam Order* revoked Minh Phu from it. To verify the veracity of this claim, CBP requested in question 11 of Minh Phu's supplemental RFI the following information:
>
>> Provide a bill of lading report for all the covered merchandise imported from India. Include references to the importer name, dates, goods descriptions, commercial invoices, source vendor and country, bills of lading, and total kilograms/pounds received during September 18, 2018 through January 31, 2020. Include a purchase value column with VND, U.S. currency, or conversion to U.S. currency. Provide enough information to tie forward to the SAP goods receipt history with origin, "Factory code", "Type" (for mark "XH"), "Trace code", and "Batch Note", and any other information to show Indian shrimp/prawns were not commingled with Vietnamese shrimp/prawns. Identify the plant name for the factory code and trace code.
>
> In response to this question, Minh Phu stated:
>
>> At the outset, MPG notes that it cannot trace specific imported shrimp from the import bill of lading through to specific "XH" marked shrimp in finished goods inventory, but it segregates and traces *all* imported shrimp in order to ensure that no imported shrimp is exported to the United States….
>
> Minh Phu's inability to trace specific imports of Indian-origin shrimp through the production facility to specific sales is problematic in that it is crucial to CBP's understanding of whether comingling or mislabeling of Indian-origin shrimp was happening. Minh Phu further claims that it can reconcile its purchases of imported shrimp to sales to all markets, meaning that it knows exactly how much Indian-origin shrimp it sold and the destination of those sales. The problem with this claim is that it is an accounting reconciliation that is unsupported by Minh Phu's internal production records of the shrimp being processed at different stages. If Minh Phu had provided the requested information to CBP, this information would have supported Minh Phu's claims that it implemented a robust tracking system of its sales that prevented Indian-origin shrimp from entering U.S. customs territory….
>
> Based on the aforementioned analysis, CBP determines that the failure of Minh Phu to provide the requested information, *i.e.,* tracing imported shrimp's bill of ladings to specific exported shrimp, that would allow CBP to trace its imports of Indian-origin shrimp through its production processes to its sales demonstrates that Minh Phu did not act to the best of its abilities in this EAPA investigation, justifying the application of adverse inferences under 19 USC 1517(c)(3). As a result, CBP will apply adverse inferences to its final determination in this case.

*Id*. at 6-9. While TRLED provided no rationale for its insistence that Minh Phu's tracing system must be able to trace Indian and other shrimp imports from the original bill of lading to the export sale bill of lading, it is clear that the documentation on which TRLED based its

5

determination that Minh Phu did not act to the best of its ability related directly to Minh Phu's ability to trace India-origin shrimp through to export — information that was only provided in Minh Phu's June 11, 2020 Supplemental RFI response.

Similarly, TRLED's claim that the sale of **[      ]** of imported Indian shrimp inadvertently shipped to **[           ]** is proof that Minh Phu could have traced the rest of its sales of imported shrimp back to the Vietnamese import bills of lading is based on TRLED's misinterpretation of documentation submitting at Question 8 of MPG's June 11, 2020 Supplemental RFI response. *Id*. at 7-8; *see also* CR Doc. 213 at 8-9. Indeed, rather than rely or examine further record evidence, TRLED simply relied on Minh Phu's responses to these two questions to justify its AFA-based finding. CR Doc. 217 at 9.

Finally, while we acknowledge that TRLED's determination alleged "discrepancies" that referred to documents that were not part of the record before ORR, *id*. at 8, these alleged "discrepancies" were not material to TRLED's finding or application of AFA. Indeed, TRLED itself noted that these "discrepancies" were only relevant insofar as they "cast doubt on the overall reliability of Minh Phu's responses." *Id.* TRLED did not point to the alleged discrepancies as evidence of a failure to respond to a request for information or as the facts otherwise available used pursuant to an adverse inference. Moreover, regardless of the materiality of these "discrepancies" to TRLED's decision, they only cited to one document that was not reviewed by ORR, specifically Minh Phu's March 23 RFI response. *Id.* (citing CR Doc. 330). However, as discussed in more detail below, the cited document is duplicative of other submissions, including those referred to therein by TRLED.

In sum, the decision itself is clear that the parts of the record material to TRLED's decision were those related to the finding of noncompliance and the application of AFA — in

6

particular documents related to Minh Phu's response to Question 11 of the Supplemental Manufacturer RFI.  *Id.* at 9.

### 2. ORR's Determination

In accordance with the EAPA regulations, ORR "review{ed} the entire administrative record upon which the initial determination was made, the timely and properly filed request(s) for review and responses, and any additional information."  *See* 19 C.F.R. § 165.45; *see also* 19 U.S.C. § 1517(f)(1).  Moreover, the record before ORR, while limited, was in accordance with the APA, which simply requires that "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented" were a part of the record during its review.  5 U.S.C. § 557(c)(3)(A).

Each of Minh Phu's voluntary submissions as well as its June 11 Supplemental RFI response, which was the sole document TRLED used to find noncompliance, were on the record before and considered by ORR.  ORR recognized that TRLED's determination is based entirely on the application of AFA with respect to Question 11 of the June 11 Supplemental RFI response.  ORR therefore examined that Supplemental RFI response as well as other documents material to the application of AFA to determine whether MPG's Question 11 response justified the application of AFA.  CR Doc. 219 at 9.  As the request for review focused on the application of adverse inferences with respect to the Supplemental RFI response, ORR did not have cause to look beyond information material to that specific RFI response to consider the request for review.

In sum, ORR correctly examined the information that was material to TRLED's AFA decision and the information related to the issues raised in the request for review.  It is also clear that ORR's examination was in accordance with the APA, which requires an examination of the material issue:  the application of and information relied upon pursuant to AFA.  Absent AFA,

7

TRLED's decision did not point to *any* record evidence that Minh Phu's tracing system was unreliable or to *any* record evidence of evasion by MPG.  *See* CR Doc. 217 at 3-10; *see also* CR Doc. 219 at 8-10.

### B. Documents Before TRLED But Not ORR Were Not Material To ORR's Review

As the Court itself recognized, many of the documents that were not transmitted to ORR were extension requests, requests for information for which the response was transmitted, or other non-material documents.  MPG has now reviewed the documents contained in the supplemental record filed with the Court to confirm whether the information contained therein was material to TRLED's determination, and therefore ORR's review of that determination.  There are only three documents that do contain substantive information, namely (1) AHSTEC's March 4, 2020 voluntary submission; (2) MSeafood's March 19, 2020 RFI response, and (3) Minh Phu's March 23, 2020 RFI response.

Upon an examination of AHSTEC's March 4, 2020 voluntary submission, PR Docs. 238-41, it is clear that the information was not material to TRLED or ORR's decisions.  More specifically, the only information contained therein is related to the U.S. Department of Commerce's administrative review of the antidumping duty order on Shrimp from India, which was ongoing at the time of the March 4 submission.  *Id.*  The March 4 submission by AHSTEC recounts that a respondent in that Commerce review indicated that it had some sales of Indian shrimp to Minh Phu during that review's POR.  *Id.* at 3.  As MPG openly and clearly stated throughout the TRLED investigation that it purchased shrimp from India, this information is redundant and non-material.  Indeed, MPG provided a full list of purchased Indian shrimp covering the EAPA POI in its June 11 RFI response, which provided details for the sales discussed in AHSTEC's voluntary submission.  *See* CR Docs 151-154, 158-160, 185-187, 191-193 (Exhibits 26 and 28).  As a result, the information in that submission was either immaterial

8

to the determinations or, as it was provided elsewhere, was redundant with material information that was part of the examined record. The fact that MPG imported shrimp from India was never in issue or subject to debate. *Id*.

With respect to MSeafood's RFI response, much of the information was unique to that response. However, the supplemental RFI response for MSeafood was limited in scope, and TRLED noted that MSeafood's information was not material to its decision. C.R 217 at 5 ("The questions before CBP are whether the Indian-origin shrimp are being comingled with Vietnamese-origin shrimp and whether Indian-shrimp are being mislabeled as Vietnamese-origin shrimp and shipped to the U.S. customs territory."). More specifically, as no part of MSeafood's responses related to MPG's tracing system of Minh Phu's importation and export of India-origin shrimp, it was not material to TRLED's AFA finding and TRLED's decision did not identify MSeafood's RFI response as support for its finding of AFA. *See generally id*. at 6-9. Similarly, as the request for review did not indicate that MSeafood's RFI response contained information material to the question of whether AFA was applicable with respect to Minh Phu's June 11, 2020 Supplemental RFI response, it was not material to ORR's examination. *See generally* CR Doc. 219 at 7-10.

With respect to Minh Phu's March 23, 2020 RFI response, CR Doc. 330, MPG has reviewed the information contained therein and confirmed that all of the material information can be found in either the January 31, 2020 resubmission, CR Doc. 7, the May 1, 2020 voluntary submission, CR Doc. 26, or the June 11, 2020 supplemental RFI response, CR Doc. 213, all of which were part of the record before ORR. ECF No. 20. Indeed, it is worth noting the information requested in the March 23, 2020 RFI response pertained primarily to Minh Phu's exports to the United States, for which Minh Phu has a separate, and more comprehensive,

9

tracing procedure. *See, e.g.*, CR Doc. 330 at 29 ("Explain how MPSJSC segregates Indian sourced shrimp from Vietnam sourced shrimp for exports to the U.S. . . ."). Put another way, the missing response did not include detailed information about Minh Phu's tracing of *imported India-origin* shrimp, as such information was not requested. *See id.* Indeed, such information, which TRLED considered the material aspect of its determination, was requested in the supplemental RFI to which Minh Phu provided its response on June 11, 2020, which, as the Court is aware, was part of the record before ORR. *See* CR Doc. 213; ECF No. 20.

Finally, it is worth noting that all of these documents were before AHSTEC throughout the review by ORR. Nonetheless, none of the missing documents were substantively considered in AHSTEC's arguments (it is also noteworthy that none of the missing documents were substantively considered in AHSTEC's arguments before this Court). *See* PR Doc. 230 at 8-26. There is a reason for this — these documents were not material to TRLED's determination or ORR's review. Moreover, given that neither Minh Phu's nor AHSTEC's arguments during ORR's review related to the missing documents, ORR not considering those documents did not harm either party. In particular, because this procedural error did not prejudice AHSTEC, the Court should render its judgment without regard to this procedural defect. *See* 28 U.S.C. § 2111; *Sea-Land Serv.*, 735 F. Supp. at 1063 (It is "well settled that courts will not set aside agency action for procedural errors unless the errors were prejudicial to the party seeking to have the action declared invalid.") (marks omitted), *aff'd and adopted*, 923 F.2d 838.

**C. Expedited Remand To Consider Missing Documents**

A remand to allow CBP to cure this procedural defect is not necessary for the Court to render its judgment in this case. A remand would essentially be a formality without substance since neither MPG nor AHSTEC relied on the missing documents in addressing the issues central to TRLED's determination, the determination of ORR, or the determination required of

10

this Court.  However, if the Court disagrees and believes that a remand is necessary, we request in the alternative that the Court remand the case to ORR on an expedited basis with the narrow instruction to review the non-transmitted documents and inform the Court as to whether they affect its reversal of TRLED's determination.

      This request for a narrow remand would allow ORR to decide whether it would change its determination in light of the missing documents.  We request that should the Court grant an expedited remand, it instruct ORR to review the missing documents and, within 30 days of the Court's remand order, issue a remand determination detailing whether and to what extent the newly available documents affect its determination.  Should the Court grant this request in the alternative, we also respectfully request that the parties be permitted to propose a new briefing schedule within ten (10) days of the filing of the remand determination, if additional briefing is required.  Because this request in the alternative is for an expedited remand, the parties will not be unduly prejudiced by such a remand.

## IV.     CONCLUSION

In light of the forgoing, we respectfully request that the Court review the decisions of TRLED and ORR with respect to the information before each and consider the substantive issues raised before the Court.  In the alternative, we request that the Court remand this narrow issue to ORR on an expedited basis with the instruction to review the non-transmitted documents and inform the Court as to whether they affect its reversal of TRLED's determination.

                                                  Respectfully submitted,

                                                /s/ Donald B. Cameron
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

**MORRIS, MANNING & MARTIN LLP**
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
(202) 408-5153

*Counsel to Defendant-Intervenors Minh Phu Seafood Joint Stock Company and MSeafood Corporation*

William H. Barringer
3900 Watson Place, N.W.
Washington, D.C. 20016

*Legal Advisor to Minh Phu Seafood Joint Stock Company and MSeafood Corporation*

**CERTIF'ICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,437 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2010 used to prepare this brief.

/s/ Donald B. Cameron