**PUBLIC VERSION**

# REMAND REDETERMINATION
### *Ad Hoc Shrimp Trade Enforcement Committee v. United States*
Court No. 21-00129 (Court of International Trade May 23, 2022)
EAPA Case No. 7356

## I.    SUMMARY

U.S. Customs and Border Protection (CBP) has prepared this remand redetermination

pursuant to the opinion and remand order, dated May 23, 2022, issued by the U.S. Court of

International Trade (the Court) in *Ad Hoc Shrimp Trade Enforcement Committee v. United*

*States*, Court No. 21-00129 (hereinafter, the Remand Order).[1] This remand concerns CBP's

affirmative determination of evasion of the antidumping (AD) order on certain frozen warmwater

shrimp (shrimp) from India[2] against an importer, MSeafood Corporation (MSeafood),[3] pursuant

to the Enforce and Protect Act (EAPA), as well as the subsequent reversal of the determination

on administrative review.[4] Following oral arguments, the Court remanded certain aspects of

CBP's determination of evasion and administrative review.[5] Specifically, the Court directed

CBP to: (1) forward the entire administrative record, including any and all documents collected

during the investigation and not previously transmitted to the CBP Office of Trade, Regulations

---

[1] *See* Opinion and Order, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade May 23, 2021), ECF No. 56.
[2] *See* Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Order: Certain Frozen Warmwater Shrimp from India, 70 Fed. Reg. 5147 (Dep't Commerce Feb. 1, 2005) (AD Order).
[3] MSeafood is affiliated with the following companies: Minh Phu Seafood Export Import Corporation (and affiliates Minh Qui Seafood Co., Ltd. and Minh Phat Seafood Co., Ltd.); Minh Phu Seafood Corp.; Minh Phu Seafood Corporation; Minh Phu Seafood Pte; Minh Qui Seafood; Minh Qui Seafood Co., Ltd.; Minh Qui; Minh Phat Seafood Co., Ltd,; Minh Phat; Minh Phat Seafood; Minh Phat Seafood Corp., Minh Phu Hau Giang Seafood Joint Stock Company; Minh Phu Hau Giang Seafood Co., Ltd.; Minh Phu Hau Giang Seafood Corp.; and Minh Phu Hau Giang Seafood Processing Co., Ltd. (collectively, Minh Phu). *See* Notice of Determination as to Evasion in EAPA Case Number (No.) 7356 (Oct. 13, 2020) (Public (Pub.) Document (Doc.) Number (No.) 221) (Determination), at 1. The request for administrative review was submitted by Minh Phu Group (MPG), including Minh Phu Seafood Joint Stock Company and its affiliated importer MSeafood. Administrative Review Determination (Feb. 11, 2021) (Pub. Doc. No. 233) (Admin. Review), at 1.
[4] *See* Determination; *see also* Admin. Review.
[5] *See* Remand Order.

and Rulings (R&R), prior to its initial *de novo* review;[6] (2) reconsider or provide further explanation regarding confidential treatment and public summarization of allegedly confidential information and ensure compliance with the public summaries requirement in 19 C.F.R. § 165.4;[7] and (3) make a determination as to evasion that is based on a review of the entire administrative record and in compliance with CBP's EAPA regulations.[8]

As explained below, the CBP Office of Trade – Trade Remedy Law Enforcement Directorate (TRLED) affirms its determination that MSeafood entered covered merchandise into the customs territory of the United States through evasion. However, after reviewing the information previously omitted from its original *de novo* review, as well as additional information placed on the administrative record as part of the remand proceeding, R&R affirms its finding that there is no such evasion. In compliance with the Remand Order, and considering the requirements of 19 C.F.R. § 165.4, CBP placed revised public versions, including public summaries, of business confidential documents on the administrative record, and, after requiring AHSTEC and MSeafood to do the same and reconsider their requests for confidential treatment of information in their original submissions, provided both parties an opportunity to submit rebuttal information and written arguments.

## II.     BACKGROUND

On October 13, 2020, TRLED issued an affirmative determination of evasion finding that MSeafood's imports of shrimp were entered into the United States through evasion. Based on the substantial evidence on the record TRLED found that MSeafood imported merchandise subject

---

[6] *See id.* at 12, 13-17.
[7] *Id.* at 21.
[8] *Id.* at 22.

to the AD order on shrimp from India by misrepresenting the country of origin as Vietnam.[9] On February 11, 2021, R&R reversed this determination in its administrative review.[10]

The Ad Hoc Shrimp Trade Enforcement Committee (AHSTEC) appealed the administrative review determination. In challenging the administrative review and as relevant for purposes of this remand, AHSTEC argued, in pertinent part,[11] that CBP, in contravention of 19 C.F.R. § 165.21, did not serve copies of Requests for Information and other record documents on all parties to the investigation and that CBP failed to properly maintain an administrative record.[12] AHSTEC further asserted that TRLED and R&R "failed to reject submissions made by the Minh Phu Group (including MSeafood) that did not contain a summary of the business confidential information in sufficient detail to permit a reasonable understanding of the substance of the information, or in the alternative, a full explanation of the reasons as to why summarization was not possible."[13] Finally, AHSTEC alleged that R&R failed to comply with 19 C.F.R. § 165.41(f) because R&R "provided no explanation as to why the agency accepted the submission of new factual evidence as part of the request for an administrative review{.}"[14] Based on these arguments, in part, AHSTEC claimed that CBP's determinations were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.[15]

---

[9] Determination.

[10] Admin. Review. Although the Determination was based, in part, on adverse inferences applicable to the foreign manufacturer, R&R clarified that the administrative record did not support the application of adverse inferences to MSeafood. *See* Determination at 9-10; *see also* Admin. Review at 8, 10.

[11] The Court has not yet considered the merits of R&R's substantive findings. Remand Order at 22. Therefore, TRLED will not address Counts One and Two of the Amended Complaint. *See* Amended Complaint, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade June 9, 2021), ECF No. 26 at ¶¶ 15-23.

[12] *Id.* at ¶¶ 25-27.

[13] *Id.* at ¶ 29.

[14] *Id.* at ¶¶ 32.

[15] *See, e.g., id.* at ¶¶ 27, 30, 33.

After filing the administrative record with the Court, CBP learned that several documents were inadvertently omitted from the court filing, and as such, CBP supplemented the administrative record.[16] However, after providing the supplemental documents, CBP became aware that certain documents were inadvertently not transmitted to R&R during the administrative review process and thus were not included in R&R's original *de novo* review.[17]

The Court remanded the matter to CBP and directed the agency to: (1) forward the entire administrative record, including any and all documents collected during the investigation and not previously transmitted, to R&R; (2) reconsider or provide further explanation regarding confidential treatment and public summarization of allegedly confidential information to ensure compliance with the public summaries requirement in 19 C.F.R. § 165.4; and (3) make a determination as to evasion that is based on a review of the entire administrative record and in compliance with CBP's EAPA regulations.[18]

## III.    REMAND ISSUES

### A.  Documentation Inadvertently Omitted from R&R's *De Novo* Review

Pursuant to EAPA, an importer found to have entered covered merchandise into the United States through evasion under 19 U.S.C. § 1517(c) may request a *de novo* review by R&R.[19] Any such request for administrative review must be based on facts set forth in the administrative

---

[16] *See* Defendant's Consent Motion to Correct the Administrative Record Indices and Extend Subsequent Deadline, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade June 15, 2021), ECF No. 27.
[17] *See* Remand Order at 13.
[18] Remand Order.
[19] *See* 19 U.S.C. § 1517(f)(1); *see also* 19 C.F.R. § 165.45.

record.[20] Likewise, any response to a request for administrative review is confined to the factual information already contained in the administrative record.[21]

In compliance with the Remand Order, TRLED transmitted to R&R the documents that were part of the administrative record during the EAPA investigation, but which had been inadvertently omitted when the administrative record was originally transferred to R&R's for its *de novo* review.[22] Among the documents previously omitted from R&R's review were: (1) sales reports; (2) Requests for Information (CBP Forms 28) sent to importer MSeafood and to manufacturer Minh Phu Joint Seafood Joint Stock Company; (3) inventories of food for raising shrimp and for shrimp seed; (4) lists of employees, direct labor working hours, and payrolls; (5) AHSTEC Part 165 Investigation submission of new factual information (NFI); and (6) extension requests and responses from TRLED.[23]

As part of the remand proceeding, TRLED also transmitted to R&R additional submissions from AHSTEC, as well as the Minh Phu Seafood Joint Stock Company (Minh Phu) and MSeafood (hereinafter, collectively Minh Phu Group or MPG).[24] R&R reviewed the additional remand submissions, including AHSTEC's Written Argument in Response to Revised Public Versions of the documents placed on the administrative record, dated August 22, 2022, and the Minh Phu and MSeafood Response to Alleger's Arguments, dated September 6, 2022.[25] R&R

---

[20] 19 C.F.R. § 165.41(f).

[21] *See, e.g.,* 19 C.F.R. § 165.42.

[22] *See* Admin. Review; *see also* Remand Redetermination for Enforce and Protect Act (EAPA) Consolidated Case Number 7356 (H327030) (Nov. 21, 2022), attached as an addendum. (R&R Remand Redetermination).

[23] *See* Confidential (Conf.) Document (Doc.) Numbers (Nos.) 220-330 and Pub. Doc. Nos. 234-254, which were filed as part of the supplemental administrative record. *See also* R&R Remand Redetermination.

[24] *See* Admin. Review at 1 (the request for administrative review was filed by Minh Phu Group, including Minh Phu Joint Stock Company and its affiliated importer MSeafood Corporation); *see also* R&R Remand Redetermination at 2.

[25] *See* R&R Remand Redetermination at 2, 4.

also reviewed revised public versions of documents previously placed on the administrative record.[26]

After reviewing the previously omitted documents and additional information submitted as part of the remand proceeding, R&R continued to find no evasion as to the Minh Phu Group.[27] The true and correct copy of R&R's findings on remand is attached as an addendum.

## B.  CBP Compliance with 19 C.F.R. § 165.4

Pursuant to CBP regulations, an interested party may claim confidential treatment for information it submits in connection with an investigation initiated in accordance with 19 U.S.C. § 1517.[28] Such treatment will be granted as long as the request and submission satisfy the provisions of 19 C.F.R. § 165.4(a) and the information consists of trade secrets and commercial or financial information obtained from any person which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4).[29] Certain information cannot be protected as confidential, including the name of the party to the investigation submitting the information, the name and address of the importer against whom an allegation is made, a description of the covered merchandise, and the applicable AD/CVD orders.[30] To the extent that business confidential treatment is sought, the party claiming such treatment must indicate precisely which information must be protected by enclosing the relevant information within single brackets; the party must also clearly state that its submission contains business confidential information and provide an explanation of why any bracketed information is entitled to such treatment.[31] Moreover, a party

---

[26] *Id.* at 2.
[27] *Id.* at 4-5.
[28] *See* 19 C.F.R. § 165.4.
[29] *See* 19 C.F.R. § 165.4(a).
[30] *See* 19 C.F.R. § 165.4(c).
[31] 19 C.F.R. § 165.4(a)(1).

must submit a public version, which is clearly marked, of any submission for which it claims business confidential treatment.[32] This public version must contain a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the information.[33] If summarization is not possible, the submitting party must provide an explanation to support as much.[34]

As part of its remand proceedings, CBP reviewed documents it previously placed on the administrative record to determine whether revisions to bracketing of confidential information were necessary, and to revise the public versions of such documents to include public summaries to comply with the requirements of 19 C.F.R. § 165.4(a)(1) and (a)(2). CBP requested that the parties to the remand proceeding (1) review business confidential documents they previously submitted and to provide a justification as to why any bracketed information consisted of trade secrets and commercial or financial information; and (2) provide any revised public versions, including public summaries, or for that confidential information that could not be summarized, an explanation. For any information previously omitted from the public record in this context, CBP afforded the parties an opportunity to submit rebuttal information and written arguments. The process for this portion of the remand proceeding is described below along with TRLED's remand re-determination as to evasion.

---

[32] 19 C.F.R. § 165.4(a)(2).
[33] *Id.*
[34] *Id.*

### 1. Remand Procedure

On July 1, 2022, CBP issued a letter[35] to AHSTEC and MSeafood, the parties to this remand proceeding, advising that CBP was reopening the administrative record for a limited period of time to permit the parties to submit revised business confidential and corresponding public versions of certain documents the parties had previously placed on the administrative record. In order to comply with the Court's order that TRLED consider AHSTEC's argument regarding the agency's compliance with 19 C.F.R. § 165.4(a), CBP requested that AHSTEC and MSeafood review business confidential documents each entity previously submitted for placement on the administrative record and provide a justification as to why any bracketed information consisted of trade secrets and confidential or commercial information subject to protection under 5 U.S.C. § 552(b)(4).[36] CBP further advised the parties that if they wished to revise any business confidential documents, they must specify any changes to the previous bracketing and provide a justification, along with the applicable public versions of those documents and appropriate public summaries.[37] The parties were reminded that any revised documents should contain public summaries of any bracketed business confidential information to include sufficient detail to permit a reasonable understanding of the substance of the bracketed information or, to the extent that public summarization was not possible, the parties were to provide an explanation of the reasons supporting such claim.[38] CBP further advised that new certifications pursuant to 19 C.F.R. § 165.4(d) were also required to the extent any revisions to the request for confidential

---

[35] *See* Letter from Brian M. Hoxie to Counsel for AHSTEC and Counsel for MSeafood, Re: AHSTEC v. United States, Court No. 21-129 (July 1, 2022) (July 1, 2022 Letter).
[36] *Id.* Although the July 1, 2022 Letter references 5 U.S.C. § 552(a)(b), this is an inadvertent error and given that TRLED also referenced 19 C.F.R. § 165.4(a) it is clear that CBP meant to reference 5 U.S.C. § 552(b)(4) in this context.
[37] *See* July 1, 2022 Letter.
[38] *Id.*; *see also* 19 C.F.R. § 165.4(a)(2).

treatment were made.[39] The parties were required to submit the revised documents no later than July 11, 2022 at 5:00 p.m. Eastern Daylight Time (EDT).[40] Finally, CBP stated that, as part of the remand proceedings, it would provide revised business confidential and public versions of the documents placed on the administrative record to the parties and permit an opportunity to submit rebuttal information and written arguments relevant to the revised versions.[41]

On July 5, 2022, Minh Phu Group submitted a request for a two-week extension to submit revised confidential and public versions of its record documents in accordance with CBP's July 1, 2022 Letter.[42] On July 8, 2022, TRLED responded to Minh Phu Group's request for an extension and granted the parties a partial extension to no later than 5:00 p.m. EDT on July 18, 2022 to respond to CBP's July 1, 2022 Letter.[43]

On July 12, 2022, Minh Phu Group requested a second two-week extension to comply with the July 1, 2022 Letter.[44] On July 14, 2022, TRLED granted a second partial extension to the parties requiring submissions in response to the July 1, 2022 Letter no later than July 25, 2022 at 5:00 p.m. EDT.[45]

On July 14, 2022, AHSTEC submitted its revised business confidential and public version documents which included public summaries of business confidential information.[46]

---

[39] *See* July 1, 2022 Letter.

[40] *Id.*

[41] *See id.*

[42] *See* Letter from Counsel for Minh Phu Group to Brian M. Hoxie, Re: EAPA Case No. 7356: Minh Phu and MSeafood Revised Confidential and Public Versions Extension Request (July 5, 2022).

[43] *See* Email from Scott Hoefke to Counsel for MPG and Counsel for AHSTEC Re: EAPA Task Extension has been requested. (July 8, 2022; 3:47 PM EDT).

[44] *See* Letter from Counsel for Minh Phu Group to Brian M. Hoxie, Re: EAPA Case No. 7356: Minh Phu and MSeafood Revised Confidential and Public Versions Extension Request (July 12, 2022).

[45] *See* Email from Scott Hoefke to Counsel for MPG and Counsel for AHSTEC Re: EAPA 7356 Remand – Extension of deadlines (July 14, 2022; 3:09 PM EDT).

[46] *See* Letter from Counsel for AHSTEC to Scott Hoefke, Re: EAPA Case No. 7356 – Revisions to Business Confidential and Public Versions of September 30, 2019 Filing ("AHSTEC – EAPA Allegation Second Supplemental Submission – 7356)") – Business Confidential Version (July 14, 2022); *see also* Letter from Counsel

On July 25, 2022, Minh Phu Group submitted its purported revised business confidential and public version documents which included public summaries of business confidential information. On July 28, 2022, TRLED rejected Minh Phu Group's submission and requested that MPG refile its business confidential and public versions of the documents.[47] In rejecting the submission, CBP advised that the agency had determined the business confidential and public versions contained numerous errors, including: (1) the sales documents and other company documents in each appendix were overly bracketed and lacked adequate public summaries, (2) business confidential information was redacted in the narrative sections of each appendix and did not have the requisite corresponding public summaries, and (3) Minh Phu Group did not provide a revised public version of its September 14, 2020 MPG Written Argument with an adequate public summary.[48] CBP provided an opportunity for MPG to resubmit the business confidential and public versions of the relevant documents no later than 5:00 p.m. EDT on August 1, 2022.[49]

Also, on July 28, 2022, Minh Phu Group requested an additional extension to provide revised business confidential and public versions in response to CBP's notice of rejection.[50] On July 29, 2022, TRLED granted the extension.[51] In granting the extension, TRLED advised that MPG's responses were due no later than 5:00 p.m. EDT on Thursday, August 4, 2022.[52] TRLED also

---

for AHSTEC to Scott Hoefke, Re: EAPA Case No. 7356 – Revisions to Business Confidential and Public Versions of September 30, 2019 Filing ("AHSTEC – EAPA Allegation Second Supplemental Submission – 7356)") – Public Version (July 14, 2022) (collectively, AHSTEC July 14, 2022 Submission).

[47] *See* Email from Scott Hoefke to Counsel for MPG and Counsel for AHSTEC Re: 7356 Remand: AHSTEC v. United States, CIT No. 21-129 (July 28, 2022; 11:47 AM EDT) (July 28, 2022 CBP Email).

[48] *Id.*

[49] *Id.*

[50] *See* Letter from Counsel for MPG to Brian M. Hoxie, Re: EAPA Case No. 7356: Minh Phu and MSeafood Revised Confidential and Public Versions Resubmission Extension Request (July 28, 2022).

[51] *See* Email from Scott Hoefke to Counsel for MPG and Counsel for AHSTEC Re: 7356 Remand: AHSTEC v. United States, CIT No. 21-129 {ref:_00Dt04XM5._500t010GcHM:ref} (July 29, 2022; 3:23 PM EDT).

[52] *Id.*

advised that it would not grant any further extensions absent the presence of extraordinary circumstances.[53] On August 4, 2022, MPG filed its revised submission.[54]

On August 8, 2022, CBP notified the parties that they were permitted to submit rebuttal information in response to revised public versions of documents placed on the administrative record.[55] The deadline for the submission of new factual information was August 15, 2022 at 5:00 p.m. EDT.[56] CBP advised that the submission of this information was "an opportunity for parties to the investigation to submit information they would have submitted if the parties had access to the information included in the revised public versions of these documents during the investigation."[57] CBP further clarified that the agency would not accept any information or comments which were not related to the revised public versions of documents.[58] In the same email, CBP also set a deadline for submission of written arguments as no later than August 22, 2022 at 5:00 p.m. EDT, and CBP stated that such arguments, in the remand context, were "an opportunity for the parties to the investigation to submit arguments in response to the revised public versions of documents placed on the administrative record{}" and that "{a}ny written arguments must cite to the specific factual information included in the revised public versions of the documents placed on the administrative record."[59] CBP reiterated that it would not accept any submission unrelated to the revised public versions.[60] Finally, CBP reminded the parties that

---

[53] *Id.*; *see also* 19 C.F.R. § 165.5(c)(1).
[54] *See* Letter from Counsel for MPG to Brian M. Hoxie, Re: EAPA Case No. 7356: MPG Re-Revised Confidential and Public Versions (Aug. 4, 2022).
[55] *See* Email from Scott Hoefke to Counsel for Minh Phu Group and Counsel for AHSTEC, Re: AHSTEC v. United States, CIT No. 21-129 – Remand for EAPA 7356 {ref:_00Dt04XM5._500t010GcHM:ref} (Aug. 8, 2022; 12:50 PM EDT) (Aug. 8, 2022 Email).
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

they could request confidential treatment pursuant to 19 C.F.R. § 165.4(a), but that the submission would be required to be marked as such and accompanied by a public summary.[61]

On August 15, 2022, AHSTEC submitted rebuttal information.[62] The submission included information obtained from the U.S. Patent and Trademark Office (PTO) Trademark Electronic Search System (TESS).[63] MPG did not submit rebuttal information.

On August 22, 2022, AHSTEC filed written arguments.[64] On September 6, 2022, MPG submitted its response to AHSTEC's written arguments.[65]

On October 20, 2022, CBP provided a copy of its draft remand redetermination to the parties.[66] CBP advised the parties that they could provide comments on the draft remand redetermination no later than 5:00 p.m. Eastern Standard Time (EST) on November 3, 2022.[67] CBP further advised that the business confidential versions of documents were available for review in CBP's EAPA Case Management (CMS) Portal pursuant to the amended judicial protective order (JPO).[68] Both parties submitted their written comments by the stated deadline.[69]

---

[61] *Id.*

[62] *See* Letter from Counsel for AHSTEC to Scott Hoefke, Re: EAPA Case No. 7356 – Rebuttal Information Pertinent to Revised Public Versions (Aug. 15, 2022), including Ex. 1 (AHSTEC Aug. 15 Letter).

[63] *Id.*

[64] *See* Letter from Counsel for AHSTEC to Scott Hoefke, Re: EAPA Case No. 7356 (REMAND) – Written Argument in Response to Revised Public Versions (Aug. 22, 2022) (AHSTEC Written Argument). Note, any page reference concerning the AHSTEC Written Argument refer to the page number of the "Ad Hoc Shrimp Trade Enforcement Committee Written Argument in Response to Revised Public Versions" and not the page number of cover letter transmitting the argument.

[65] *See* Letter from Counsel for MPG to Brian M. Hoxie, Re: EAPA Case No. 7356 (Remand): Minh Phu and MSeafood Response to Alleger's Argument (Sept. 6, 2022) (MPG Response).

[66] Email from Tobias Vandall to Counsel for MPG and Counsel for AHSTEC Re: AHSTEC v. United States, CIT No. 21-129 (Remand) (Oct. 20, 2022; 4:08 PM EDT) (October 20, 2022 CBP Email). Note, while CBP referred to the time as "EST" in the email, the time should have been reflected as EDT.

[67] *Id.*

[68] *Id.*; *see also* Order, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade June 9, 2022), ECF No. 62; *see also* Amended Protective Order, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade June 9, 2021), ECF No. 63.

[69] *See* Letter from Counsel for MPG to Chris Magnus, Re: EAPA Case No. 7356 (Remand): Minh Phu and MSeafood Comments on Draft Remand Determination (Nov. 3, 2022) (MPG Comments); *see also* Letter from Counsel for AHSTEC to Scott Hoefke, Re: EAPA Case No. 7356 (REMAND) – Comments on Draft Remand

## 2. Analysis

CBP complied with the Court's Remand Order in conducting the remand proceeding. The statute and applicable regulations do not provide for a mechanism, such as an administrative protective order (APO), for disclosure of confidential business information to interested parties.[70] As such, CBP is not authorized to disclose business confidential information to interested parties or their authorized representatives. Indeed, the Court did not order CBP to release business confidential information.[71] However, in this particular matter, the JPO was amended to cover CBP's administrative remand proceedings.[72] On remand, the Court directed CBP to adhere to its regulations in determining compliance with the provisions of 19 C.F.R. § 165.4, and specifically, the provisions applicable to public summaries noting that CBP failed "to adequately explain why it accepted Minh Phu Group's assertions regarding confidential information or how CBP evaluated the sufficiency of pubic summarization or explanation of the inability of the Minh Phu Group to publicly summarize the purportedly confidential documents{.}"[73] The Court remanded CBP's decisions for the agency to explain or reconsider the treatment of confidential information and how the agency evaluated the sufficiency of public summarization or any rationale associated with a claimed inability to publicly summarize

---

Redetermination – Public Version (Nov. 3, 2022) and Letter from Counsel for AHSTEC to Scott Hoefke, Re: EAPA Case No. 7356 (REMAND) – Comments on Draft Remand Redetermination – Business Confidential Version (Nov. 3, 2022) (collectively, AHSTEC Comments). Note, any page reference concerning the AHSTEC Comments refer to the page number of the "Ad Hoc Shrimp Trade Enforcement Committee Comments on Draft Remand Redetermination" and not the page number of cover letter transmitting the comments.
[70] *See generally*, 19 U.S.C. § 1517; 19 C.F.R. Part 165.
[71] *See* Remand Order.
[72] *See* Order, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade June 9, 2022), ECF No. 62; *see also* Amended Protective Order, Ad Hoc Shrimp Trade Enforcement Committee v. United States, No. 21-00129 (Ct. Int'l Trade June 9, 2021), ECF No. 63.
[73] *See* Remand Order at 17.

confidential information.[74] CBP adhered to the applicable regulations and satisfied the conditions

of the Remand Order.

CBP promulgated 19 C.F.R. § 165.4 with a goal to protect business confidential information

while simultaneously ensuring transparency of the investigation such that an alleged evader is

notified of the allegation and parties to the investigation are able to participate in the

proceeding.[75] While CBP's regulations allow parties to claim confidential treatment for

information submitted to CBP, parties must also submit a public version, including a public

summary of such confidential information, as appropriate.[76] As part of the remand process, CBP

complied with its regulations by requiring the parties to submit revised business confidential and

public versions of administrative record documents that complied with 19 C.F.R. § 165.4(a),

allowing parties to submit information they would have submitted if they had access to the

revised public versions during the original investigation, and permitting the parties to submit

rebuttal information and written arguments based on the revised versions. On remand, CBP finds

that the parties complied with the provisions of 19 C.F.R. § 165.4(a)(1) concerning the treatment

of business confidential information. CBP also finds that the parties satisfied the requirements of

19 C.F.R. §165.4(a)(2) by submitting revised public versions of information previously placed

on the administrative record, including public summaries.[77]

**MPG Submissions**

---

[74] *Id.*

[75] Investigation of Claims of Evasion of Antidumping and Countervailing Duties, U.S. Customs and Border Protection, 81 Fed. Reg. 56,477, 56,479 (Aug. 22, 2016).

[76] *See* 19 C.F.R. § 165.4; *see also* Investigation of Claims of Evasion of Antidumping and Countervailing Duties, 81 Fed. Reg. at 56,479.

[77] 19 C.F.R. § 165.4(a)(2) requires that the public summary of confidential business information contain "sufficient detail to permit a reasonable understanding of the substance of the information."

MPG submitted revised confidential and public versions of record documents after CBP rejected MPG's July 25, 2022 submission.[78] MPG advised that it "(1) reduced the bracketing and included additional public summaries in the Appendices' exhibits, (2) included additional public summaries in the narratives of the Appendices, and (3) included the public version of MPG's September 14, 2020 Written Argument with additional public summaries, to the best of its ability."[79] MPG also specified the number of pages omitted from public versions of documents.[80] MPG provided eight appendices which included revised versions of record documents, including: (1) the January 31, 2020 MPG Voluntary Response Resubmission (Appendix (Appx.) No. I), for which MPG provided only a revised public version of the record document (unbracketing certain information, justifying any bracketed information retained from the original record submission, and providing additional public summaries which "included the headings to Excel table printouts…" and "{w}here printed Excel tables run multiple pages, MPG has inserted a replacement page describing the {bracketed} information and providing additional justification…", incorporating any bracketed information in the revised exhibit list and providing further public summaries of each exhibit in the narrative), (2) the February 5, 2020 MPG Bonding letter (Appx. II), for which MPG revised only the public version (no revisions to bracketing but providing a more detailed public summary and justification for business confidential treatment of the attachment), (3) the March 19, 2020 MSeafood RFI Response (Appx. III), for which MPG revised both the business confidential and public versions of record documents (unbracketing certain information, providing additional public summaries and

---

[78] *See* Letter from Counsel for MPG to Brian M. Hoxie, Re: EAPA Case No. 7356: MPG Re-Revised Confidential and Public Versions (Aug. 4, 2022), including Attachment I and Appendices I-VIII (collectively, Aug. 4 MPG Submission); *see also* July 28, 2022 CBP Email.
[79] Aug. 4 MPG Submission.
[80] *Id.*

updating replacement pages of the business confidential documents to describe bracketed information and provide additional justification, and including such justification and public summarization in the revised exhibit list and narrative), (4) the March 23, 2020 MPG RFI Response (Appx. IV), for which MPG revised both the business confidential and public versions (unbracketing certain information, providing additional public summaries by way of including headings for Excel tables to certain exhibits, and updating bracketing for narrative descriptions to an exhibit, inserting a replacement page for those Excel tables running multiple pages to describe the bracketed information and providing a justification to support business confidential treatment, and including such justification and additional summaries in the revised exhibit list and narrative), (5) the May 1, 2020 MPG Submission of Voluntary Factual Information (Appx. V), for which both revised business confidential and public versions were provided (no revisions to bracketing but providing additional public summaries and justification for business confidential treatment of Exhibits 1-3 for which the public summaries were included in replacement pages for Excel tables running multiple pages and included in the revised exhibit list and narrative), (6) the June 3, 2020 MSeafood Supplemental RFI Response (Appx. VI), for which both revised business confidential and public versions were provided (no revisions to bracketing but providing additional public summaries and justification for confidential treatment of Exhibits 24-27 included in the revised exhibit list and narrative), (7) the June 11, 2020 MPG Supplemental RFI Response (Appx. VII), for which both revised confidential and public versions were submitted (no revisions to bracketing but providing additional public summaries and justification for confidential treatment of Exhibits 23-26, 28, 30, and 33-48 included in the revised exhibit list and narrative), and (8) the September 14, 2020 MPG Written Argument

(Appx. VIII) for which only a revised public version was submitted (no revisions to bracketing but providing additional public summaries).[81]

On remand, CBP determined that MPG initially provided deficient revised business confidential and public versions of documents placed on the administrative record during the original investigation, and consequently, rejected MPG's original July 25, 2022 submission.[82] However, after MPG resubmitted the documents and corrected the errors that CBP identified,[83] CBP determined that MPG provided an adequate explanation requesting business confidential treatment for sales and company documents in Appx. I-VIII, as well as certain pages of the narrative in these appendices. CBP also accepted MPG's re-revised public version of its September 14, 2020 MPG Written Argument after MPG included an adequate public summary.[84] In CBP's view, the public versions with public summaries permitted a reasonable understanding of the underlying substance of the information.[85] Indeed, in its submission dated August 15, 2022, AHSTEC agrees that Minh Phu Group's revised public summaries are adequate.[86]

CBP also accepted MPG's explanation justifying the continued and revised confidential treatment of its documents.[87] In accordance with the applicable regulation, CBP will afford business confidential treatment to information that "consists of trade secrets and commercial or

---

[81] *Id.*
[82] July 28, 2022 CBP Email (describing errors in MPG's July 25, 2022 submission).
[83] Aug. 4 MPG Submission.
[84] *Id.* at Appx. VIII.
[85] *See* 19 C.F.R. § 165.4(a)(2).
[86] *See* AHSTEC Aug. 15 Letter, at 5-6 ("The rebuttal information submitted here as Exhibit 1 confirms that brand names are, nevertheless, recorded in MPG's sale records as part of the 'description' of the goods sold. Accordingly, the newly revised public summaries demonstrate that the records maintained by MPG and filed with CBP in this proceeding provide a basis for testing MPG's characterizations of the role of brand names in preventing co-mingling of imported and domestically-sourced shrimp in production for shipments to the United States, particularly in light of MPG's explanation as to how a shipment of shrimp including Indian-origin shrimp was exported to the United States." (citations omitted)); *see also* AHSTEC Written Argument and AHSTEC Comments at 22-23.
[87] *See* Aug. 4 MPG Submission.

financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4)."[88] In turn, 5 U.S.C. 552(b)(4) exempts from disclosure information constituting "trade secrets and commercial or financial information obtained from a person {that is} privileged or confidential."[89] As an initial matter, CBP has limited information that would allow it to question claims to confidential treatment by a third party and relies on the justification provided by the parties when determining whether to grant a claim to such confidential treatment under 19 C.F.R. § 165.4(a). Upon providing revised business confidential versions after CBP's initial rejection of "overly bracketed"[90] information on remand, CBP determined that MPG provided sufficient explanation as to why the information it sought to withhold as confidential qualified as "trade secrets and commercial or financial information."[91] As a result, CBP granted MPG's request for confidential treatment.

### *AHSTEC Submissions*

On remand, AHSTEC submitted revised business confidential and public versions of its second supplemental submission, dated September 30, 2019, which had been submitted in support of the allegation it filed.[92] AHSTEC explained that that it provided revised business confidential and public versions of Exhibits 3 and 4 of its AHSTEC Second Supplemental Submission.[93] AHSTEC clarified that the remainder of its AHSTEC Second Supplemental

---

[88] 19 C.F.R. § 165.4(a).
[89] 5 U.S.C. § 552(b)(4).
[90] *See* July 28, 2022 CBP Email.
[91] *See* Aug. 4 MPG Submission.
[92] *See* AHSTEC July 14, 2022 Submission, at 1-2 (referencing Letter from Counsel for AHSTEC to U.S. Customs and Border Protection, "Voluntary Submission of Supplemental Information," EAPA Case No. 7356 (Sept. 30, 2019) ("AHSTEC Second Supplemental Submission"). *See also* Conf. Doc. No. 215 AHSTEC - EAPA Allegation Second Supplemental Submission - (7356) and Pub. Doc. No. 7, AHSTEC - EAPA Allegation Second Supplemental Submission - (7356).
[93] *See* AHSTEC July 14, 2022 Submission at 2.

Submission remained unchanged compared to how the submission was initially provided to CBP.[94]

AHSTEC advised that its counsel reviewed the business confidential records that AHSTEC previously submitted and after reviewing, determined that Exhibits 3 and 4 contained "significant portions of the materials included therein should have been accompanied by substantive public summarization."[95] AHSTEC also withdrew "its request that both exhibits be afforded business proprietary treatment in their entirety{}" and withdrew "its claim that neither exhibit was susceptible to public summarization."[96] Rather, AHSTEC, on remand, identified "on a page-by-page basis, specific business confidential information{}" and advised that "{t}he corresponding revised public versions limit redactions to just the identified business confidential information which cannot be publicly summarized further in greater detail without revealing information regarding the identity of the importer, the identity of the suppliers, and the specific nature of the commercial transactions that are the basis of these two exhibits."[97] Accordingly, AHSTEC argued that any remaining bracketed information in its revised versions of Exhibits 3 and 4 was business confidential information, consistent with 5 U.S.C. § 552(b)(4), because it "'consists of trade secrets and commercial or financial information obtained from any {sic} person...' that is confidential."[98] AHSTEC further advised it revised the business confidential versions of the exhibits in accordance with 19 C.F.R. § 165.4(a)(1) and that the bracketed information cannot be publicly disclosed because it would identify the subject of a National Marine Fisheries Service (NMFS) Seafood Import Monitoring Program (SIMP) audit, the

---

[94] *Id.* at 2,7.
[95] *Id.* at 3.
[96] *Id.*
[97] *Id.*
[98] *Id.*; *see also* 5 U.S.C. § 552(b)(4).

subject's suppliers, the suppliers' internal production and tracing operations, and the commercial terms between the subject of the NMFS SIMP audit and its suppliers.[99]

Concerning Exhibit 3, AHSTEC advised that claimed business confidential treatment for entry line number information, SIMP data specific to that entry line information, supplier information, U.S. consignee/purchaser information, and information specific to the transaction at issue, a certificate of compliance, internal production information, information from a commercial invoice (including specific characteristics of the goods sold, as well as delivery, buyer and seller information), information from a U.S. Department of State, DS-2031, Shrimp Exporter's/Importer's Declaration (including specific characteristics of the goods sold, their origin, and the exporter and importer of the goods), a bill of lading for the target shipment of the NMFS SIMP audit (including specific characteristics of the goods sold, as well as delivery, buyer and seller information), a packing list for the audited shipment (including specific characteristics of the goods sold, as well as delivery, buyer and seller information), and the entry line number and date of entry from a letter from NMFS to the importer advising of the audit finding.[100]

Regarding Exhibit 4, AHSTEC claimed business confidential treatment for information including the entry line number from a letter from NMFS to the importer advising of the selection of a specific entry number selected for an audit under SIMP, government issued "licenses" for shrimp farms, "Raw Material Intake and Quality Check Reports" (because generic information was largely maintained in these forms, AHSTEC provided the column headings and bracketed only the specific production information relevant to a specific entry of shrimp), the

---

[99] *See* AHSTEC July 14, 2022 Submission at 3-4.
[100] *Id.* at 4-6.

"Catch Certificate for Traceability – Harvest Landing" (including supplier information, U.S. consignee/purchaser information, and information specific to the transaction at issue), the commercial invoice (including specific characteristics of the goods sold, as well as delivery, buyer and seller information), a bill of lading for the target shipment of the NMFS SIMP audit (including specific characteristics of the goods sold, as well as delivery, buyer and seller information), a certificate of origin (including supplier, purchaser, goods sold, the terms of sale, and the delivery information), information from a U.S. Department of State, DS-2031, Shrimp Exporter's/Importer's Declaration (including specific characteristics of the goods sold, their origin, and the exporter and importer of the goods), a packing list for the audited shipment (including specific characteristics of the goods sold, as well as delivery, buyer and seller information), a code list specific to the supplier (including the buyer and specific nature of goods purchased), and a "Certificate of Health/Sanitary Certificate" that accompanied the subject shipment of shrimp (including information regarding the specific sale that was the subject of the NMFS SIMP audit).[101]

In accordance with 19 C.F.R. § 165.4(a)(2), AHSTEC also submitted revised public versions of Exhibits 3 and 4, including[102] public summaries for all of this business confidential information.[103] After reviewing AHSTEC's submissions, CBP found that AHSTEC's revised bracketing and public summaries for Exhibits 3 and 4, as well as its continued claim for business confidential treatment of the remainder of the AHSTEC Second Supplemental Submission, met the requirements of 19 C.F.R. § 165.4.

---

[101] *See* AHSTEC July 14, 2022 Submission at 6-7.
[102] *Id.* at 4-7.
[103] *See* AHSTEC July 14, 2022 Submission.

*Information Placed on the Administrative Record by CBP*

On remand, CBP reviewed its treatment of confidential information contained within the business confidential documents previously placed on the administrative and supplemental administrative records filed with the Court. CBP reviewed the documents considering the business confidential information submitted by the importers, supplier, and other relevant parties and determined that no changes to the bracketing of the agency's documents were required. The confidential information within these documents was properly bracketed when initially placed on the record. Generally speaking, the bracketed information contained in these documents was pertinent to importer-specific entry data from CBP systems, including entry and entry summary date, country, and Harmonized Tariff Schedule of the United States classification numbers; foreign export information (such as number of shipments and export sales); portions of entry numbers; container, bill, and conveyance information; and manufacturer/seller/shipper and confidential importer of record identification information (such as importer of record number). CBP withheld such information, and continued to do so on remand, because a submitting party requested business confidential treatment, or the data was business confidential information belonging to importers sourced from CBP systems. As such, CBP complied with 19 C.F.R. § 165.4(a).

CBP also reviewed the public versions of documents previously placed on the administrative record and provided revised public summaries as appropriate. CBP reviewed the following Public Doc. Nos.: 5, 6, 9, 10, 12,[104] 14, 15, 20, 67, 220 through 223, 225, 226, 228, 231 through

---

[104] On the original administrative record, CBP filed two different documents using Pub. Doc. No. 12. CBP reviewed both versions of Pub. Doc. No. 12 (one version is a TRLED Memorandum to File Adding Certain Documents to the Administrative Record (Dec. 20, 2019), and the other version is the TRLED Notice of Initiation and Interim Measures – EAPA Case 7356 (Jan. 14, 2020)) during its remand proceedings.

233, 237, 247, 250, and 252 through 254. On remand, CBP revised the public summaries for eight documents including Public Doc. Nos. 12,[105] 14, 15, 220, and 221. On remand, CBP also discovered two documents that were inadvertently omitted from the administrative and supplemental administrative records filed with the Court.[106] After reviewing these documents, CBP provided public summaries for both. CBP will file these documents as part of the remand record by the required deadline.

CBP is required to provide a public summary of business confidential information for any documents it places on the administrative record which contain business confidential information, and CBP complied with its regulations on remand.[107] The public summaries that CBP provided for the documents listed above contain "sufficient detail to permit a reasonable understanding of the substance of the information."[108] For example, when CBP first placed the Notice of Determination as to Evasion on the administrative record, CBP failed to provide a public summary.[109] However, on remand, CBP reviewed the document line by line, comparing to the claims for business confidential treatment made by interested parties in corresponding source submissions and provided public summaries which clearly described the information contained within any brackets. CBP indicated that the bracketed information contained information for the source of certain data, numbers identifying the amount of export shipments and export value,

---

[105] *See id.* On remand, CBP provided public summaries for both versions of Pub. Doc. No. 12.
[106] *See* Letter from CBP to Counsel for MSeafood, Re: Supplemental Request for Information to Importer concerning the Enforce and Protect Act investigation of whether MSeafood Corporation has evaded its Antidumping Duty liability pursuant to the Antidumping Order A-533-840 on frozen warmwater shrimp and prawns from India with entries of merchandise into the United States (Supplemental Importer Request for Information (RFI)) (May 20, 2020); *see also* Letter from CBP to Counsel for MSeafood, Re: Supplemental Request for Information to Importer concerning the Enforce and Protect Act investigation of whether MSeafood Corporation has evaded its Antidumping Duty liability pursuant to the Antidumping Order A-533-840 on frozen warmwater shrimp and prawns from India with entries of merchandise into the United States (Manufacturer/Supplier RFI) (May 20, 2020).
[107] 19 C.F.R. §165.4(e).
[108] 19 C.F.R. § 165.4(a)(2).
[109] *Compare* TRLED Notice of Determination as to Evasion (public summary served on July 27, 2022) *with* Pub. Doc. No. 221; *see also* Conf. Doc. No. 217.

location to which goods were exported, items used as raw materials, names of shipping companies, dates of importation, information concerning a production facility, and description of business dealings. The public summaries and the context surrounding the brackets are sufficient to permit a reasonable understanding of the substance of information.

On the other hand, CBP did not revise the public summaries for Public Doc. Nos. 6 and 233 previously submitted to the Court as part of the initial and supplemental administrative record filings. Public summaries were not required for Public Doc. Nos. 5, 9, 10, 20, 67, 222, 223, 225, 226, 228, 231, 232, 237, 247, 250, and 252 through 254 since they were public in their entirety. As described above, CBP's public summaries in its revised public versions are sufficiently detailed to permit a reasonable understanding of the substance of the redacted information, and therefore, CBP has met the requirements of 19 C.F.R. §165.4(a)(2).

## IV.    REBUTTAL INFORMATION AND WRITTEN ARGUMENTS

As part of the remand proceedings, CBP advised the parties of the opportunity to submit rebuttal information to the extent the revised public versions of documents contained information to which the parties did not have access to during the investigation.[110] CBP required the parties to submit rebuttal information no later than 5:00 p.m. EDT on Monday, August 15, 2022.[111] Any written arguments were due no later than 5:00 p.m. EDT on Monday, August 22, 2022.[112] On remand, AHSTEC submitted rebuttal information while MPG did not.[113] On August 22, 2022,

---

[110] *See, e.g.,* July 1, 2022 Letter; *see also* Aug. 8, 2022 Email.
[111] Aug. 8, 2022 Email.
[112] *Id.*
[113] *See* AHSTEC Aug. 15 Letter.

AHSTEC submitted a written argument.[114] On September 6, 2022, MPG submitted a response to AHSTEC's written argument.[115]

In its written argument, although AHSTEC claimed the revised public versions of MPG's submissions were "still heavily redacted," AHSTEC acknowledged that MPG did provide "public summaries on the administrative record sufficient to demonstrate that MPG's claims may be tested through the company's own reporting" and MPG's "revised public versions make clear that brand name is recorded by MPG as part of the 'description' of its goods sold."[116] AHSTEC acknowledged that "to the extent that the brand name of sales is also reported in the 'description' of MPG's sales to other markets, these brand names can be compared to the brand names used for sales to the United States to demonstrate that there does not exist, consistent with MPG's claims, any overlap."[117] That said, AHSTEC alleges "{t}he utility of the revised public versions now available on this record by the timing of these submissions, insofar as they have been provided after the completion of the investigation and, as such, {is} too late for AHSTEC to prepare and submit deficiency comments requesting that CBP obtain further clarification or information regarding the categories of information contained in MPG's filings."[118] AHSTEC simultaneously acknowledged, however, that MPG's "revised public versions now make clear that certain claims made by MPG regarding the sufficiency of its internal control system may be tested for reliability against the information already submitted by the company."[119] AHSTEC

---

[114] *See* AHSTEC Written Argument.

[115] *See* MPG Response.

[116] *See* AHSTEC Written Argument at 2-3.

[117] *Id.* at 4.

[118] *Id.* at 2.

[119] *Id.* at 2-3, 15, 17-18. AHSTEC also acknowledged that "MPG's revised public versions now include a legible public summary of the headings for the spreadsheets submitted as Exhibit 36 of the company's June 11, 2020 submission to CBP" albeit the font remains "very small." *Id.* at 18; *see also id.* at 19 (pertaining to the recording and reporting of Exhibit 19 of MPG's March 23, 2020 submission and noting that to the extent Exhibit 19 was consistent with Exhibit 36 in the June 11, 2020 submission "then information regarding the brand names used in export sales should have been included{}").

encouraged CBP, during the remand proceedings to "use the information on the record regarding brand names to test and analyze the claims MPG has made regarding its internal control systems{}" and acknowledged that "{t}o the extent that this information supports MPG's characterizations, this evidence would presumably support a negative evasion determination."[120] On the other hand, AHSTEC also noted that "should the information contained in MPG's records contradict the company's narrative descriptions of the robust nature of its internal controls, this evidence would appear to further support {TRLED}'s conclusion that MPG 'did not act to the best of its abilities in this EAPA investigation, justifying the application of adverse inferences under 19 {U.S.C. §} 1517(c)(3).'"[121] AHSTEC further acknowledged that MPG's revised public versions indicate that there is significant information on the record regarding an alleged transshipment of Indian-origin shrimp to the United States.[122] AHSTEC concluded by noting that as a result of the remand proceedings, "the administrative record now contains reasonably complete information regarding the *categories* of reporting made by {MPG}{}" and though the majority of MPG's information remains heavily bracketed or omitted from the public record, "the information in the revised public versions indicates that the company's characterizations of the reliability of its internal control systems can be tested based on the information already in the record."[123]

---

[120] *Id.* at 4; *see also id.* at 4-5 (encouraging CBP to analyze and describe a shipment of allegedly transshipped Indian-origin shrimp during the POI in the context of other export sales to evaluate MPG's "accounting reconciliation"), and *id.* at 20.

[121] *Id.* at 4 (citing Determination at 7); *see also id.* at 20.

[122] *Id.* at 20-21 (noting that, with regard to the revised version Exhibit 36 in the June 11, 2020 submission, "to the extent that this exhibit is a complete accounting all sales containing imported shrimp this sale should have been included{}" but if it "was not included by MPG among sales containing the same characteristic…, then its omission does not appear to be explained in the public versions of the company's filings.").

[123] *Id.* at 21-22 (emphasis in the original) (AHSTEC, on remand, stated "CBP should revise and supplement its analysis of the administrative record to address information regarding brand names{}" and "should revise and supplement its analysis of the administrative record to address information regarding the specific details of this sale {of allegedly transshipped Indian-origin shrimp to the United States} particularly in light of the information reported for other sales of goods involving imported shrimp.").

In its response to AHSTEC's written argument, MPG claims that "AHSTEC's Remand Argument violates TRLED's instructions to only address revised public summaries."[124] MPG further claimed that AHSTEC failed to raise any argument regarding a certain exhibit and failed to comment entirely on another exhibit.[125] Therefore, MPG claims that AHSTEC waived certain arguments.[126] As such, MPG encourages CBP to reject AHSTEC's written argument.[127] In addition, MPG notes that "the writing of brand names on a label at the sizing stage" is "simply one control amongst many at a single stage of production to help minimize the risk of accidental comingling" including the "XH designation for imported shrimp" which is a "designation that persists at all production stages and can be tied from sizing through export" and for which "MPG demonstrated the robustness and accuracy of this…designation."[128] MPG requests that CBP affirm R&R's decision on remand.[129]

TRLED declines to reject AHSTEC's written argument because AHSTEC does address certain issues covered by the remand proceeding, specifically revised public versions. To be sure, AHSTEC even concedes that the revised public versions provide "a small window into the nature of the information collected and produced by {MPG} in completing a sale of frozen warmwater shrimp."[130] Moreover, TRLED disagrees with MPG's assertion that the record information, incorporating information provided in the remand proceeding, is sufficient to reverse its

---

[124] MPG Response at 3.
[125] *Id.* ("Not only did AHSTEC fail to raise *any* argument regarding the headings of Exhibit 36 during the investigation, *but it declined to comment entirely* on the June 11, 2020 supplemental RFI response that included Exhibit 36 when it was submitted. As a result, AHSTEC has waived its arguments with respect to Exhibit 36.") (emphasis in original). *See also id.* at 4-6 (advising that the headings of Exhibit 36 were provided to AHSTEC in their entirety as part of the original investigation).
[126] *Id.* at 4.
[127] *Id.* at 6.
[128] *Id.* at 4; *see also id.* at 7-8 ("{T}he determinative and controlling factor for the segregation of imported shrimp is the XH designation, and the most important factor for SIMP reporting is the identity of the farm{}" and "MPG's tracing system…is to segregated imported shrimp upon importation, and to keep imported shrimp segregated throughout the production process.").
[129] *Id.* at 12.
[130] *See* AHSTEC Written Argument at 2.

determination considering the overall record evidence. The importer has not offered any persuasive evidence or credible substantiation that the use of brand names prevented the comingling of Indian- and Vietnamese-origin shrimp in its exports to the United States. TRLED continues to find that MPG's overall tracing system is insufficient in light of the totality of other record evidence inasmuch as MPG failed to substantiate its purported internal tracing system beyond its own claims by, for example, failing to provide any unbiased, third-party evidence concerning the reliability of its internal controls. Further, MPG has a history of importing Indian-origin shrimp into Vietnam for processing and continued this conduct during the period of investigation (POI).[131] MPG also stores and processes Indian-origin shrimp in the same locations and facilities it uses for processing Vietnamese-origin shrimp.[132] MPG's inability to directly trace imported shrimp throughout the production process from specific import bills of lading to specific export sales demonstrates the inherent weakness of its tracing system to separate shrimp subject to the AD order from those not subject to the order. Importantly, MPG conceded that, during the POI, one of its affiliates exported comingled Indian-origin and Vietnamese-origin shrimp into the customs territory of the United States.[133] Therefore, notwithstanding CBP's acceptance of MPG's revised business confidential and public version documents, TRLED affirms its determination of evasion based on substantial evidence.

## V.     COMMENTS FROM PARTIES

As part of the remand proceedings, on October 20, 2022, CBP issued a draft remand redetermination and afforded the parties an opportunity to comment.[134] Both parties provided

---

[131] *See* Determination at 4.
[132] *Id.* at 5.
[133] *Id.* at 7-8.
[134] *See* October 20, 2022 CBP Email.

comments by the required deadline.[135] MPG's Comments supported CBP's overall remand procedures but endorsed R&R's findings on remand.[136] Although AHSTEC's Comments indicated support of TRLED's procedures and findings on remand, AHSTEC argued that R&R's "draft remand redetermination require{d} reconsideration and revision."[137]

### MPG Comments

MPG asserted that TRLED complied with the Remand Order inasmuch as TRLED forwarded "the entire administrative record to R&R reconsidering confidential treatment and public summarization of submissions on the record to ensure compliance with 19 C.F.R. § 165.4…"[138] However, MPG did not agree with TRLED's affirmation on remand of its evasion determination.[139]  Rather, "MPG agree{d} with and endorse{d} R&R's conclusion that the record continues to be devoid of substantial evidence of evasion by MPG."[140] As such, MPG "urge{d} R&R to adopt its Draft Remand Redetermination without amendment."[141]

TRLED agrees with MPG's assertion that CBP complied with the Remand Order. Indeed, CBP reviewed requests for confidential treatment of information placed on the administrative record and permitted the parties the opportunity to reconsider such treatment and submit any relevant comments.[142] CBP also reviewed the public versions and public summaries on the administrative record affording the parties an opportunity to revise any previous versions.[143] The parties were further permitted to submit rebuttal information and written arguments in response

---

[135] *See* MPG Comments; *see also* AHSTEC Comments.
[136] MPG Comments at 2-3.
[137] AHSTEC Comments at 2.
[138] MPG Comments at 2.
[139] *Id*.
[140] *Id*. at 3.
[141] *Id*.
[142] July 1, 2022 Letter.
[143] *Id.*

to any information previously omitted from the administrative record.[144] Finally, TRLED

forwarded to R&R the revised documents, rebuttal information, comments from the parties, and

documents previously omitted from R&R's *de novo* review.[145]

However, MPG disagreed with TRLED's determination of evasion, and specifically,

objected to TRLED's application of adverse inferences.[146] Generally, CBP may apply adverse

inferences, in its discretion, if the alleger, "the importer, or the foreign producer or exporter of

the covered merchandise fails to cooperate and comply to the best of its ability with a request for

information made by" the agency.[147] TRLED recognizes that MPG cooperated with the remand

proceeding to the best of its ability, and therefore, adverse inferences are not applicable.

However, notwithstanding whether adverse inferences are applicable, and as explained above,

even on remand MPG did not offer any persuasive and credible substantiation that the use of

brand names prevented the comingling of shrimp subject to the relevant AD Order with non-

subject shrimp. MPG also failed to provide independent verification of its internal tracing system

and has historically imported Indian-origin shrimp to Vietnam for processing including during

the POI. Further, MPG's system allows for the storage and processing of Indian-origin and

Vietnamese-origin in the same location. MPG remains unable to directly trace imported shrimp

thorough the production process from specific bills of lading to specific export sales, and while

TRLED no longer finds adverse inferences applicable in this context, TRLED continues to find

that MPG's "inability to trace specific imports of Indian-origin shrimp through the production

facility to specific sales is problematic in that it is crucial to CBP's understanding of whether

---

[144] *Id.*
[145] *See* R&R Remand Redetermination at 1-2.
[146] *Id.* at 2; *see also* Determination at 9-10 (regarding the application of adverse inferences).
[147] 19 C.F.R. 165.6(a); *see also* 19 U.S.C. § 1517(c)(3).

comingling or mislabeling of Indian-origin shrimp was happening."[148] These factors continue to convince TRLED that MPG's practices indicate "that {MPG} has been co-mingling Indian-origin shrimp with Vietnamese-origin shrimp on imports to the United States."[149] Therefore, TRLED continues to maintain that that substantial evidence of evasion exists and declines to reverse its initial determination.

### AHSTEC Comments

AHSTEC objected to R&R's portion of the draft remand redetermination.[150] TRLED declines to address any arguments AHSTEC directs to R&R's findings given that R&R provides its remand analysis separately attached hereto as an addendum. AHSTEC recognizes TRLED conducted the remand proceedings "consistent" with the Remand Order.[151] Further, AHSTEC confirmed that while MPG's submissions of previously-submitted public version documents are "'still heavily redacted,' the lengthy process undertaken by {MPG} to revise its previously submitted public versions did result in the significant release of additional information on the public record.'"[152] AHSTEC also recognized that "consistent with the Court's instructions, TRLED reviewed the submissions of the interested parties, as well as the documents produced by the agency, for compliance with the requirements of 19 C.F.R. § 165.4 and explained why the revised submissions ultimately placed on the record during the remand proceedings were consistent with that regulation."[153]

### CBP Complied with the Remand Order Regarding Information Subject to 19 C.F.R. § 165.4

---

[148] Determination at 7.
[149] *Id.* at 10.
[150] *See* AHSTEC Comments at 2.
[151] *Id.* at 14.
[152] *Id.* at 22-23.
[153] *Id.* at 23.

In requiring the parties, on remand, to review their claims for business confidential treatment and provide a justification for any revised bracketing, along with applicable public versions, and affording the parties an opportunity to submit information and arguments responsive to any information previously omitted from the public record,[154] CBP complied with the Remand Order. Importantly, CBP does not have an APO mechanism and nothing within the EAPA statute requires that CBP have an APO procedure in place.[155] However, CBP must comply with its regulations concerning the treatment of business confidential information. On remand, CBP did comply with its regulations, including 19 C.F.R. § 165.4.

Because there is no APO mechanism, and to comply with the Trade Secrets Act,[156] CBP must be cautious in exercising its discretion whether to reject a submission if there is a possibility the information is trade secrets or commercial or financial information. Notably, on remand, CBP rejected Minh Phu Group's initial remand submission and requested that MPG refile its business confidential and public versions of the documents.[157] MPG refiled revised versions of the documents with revised requests for business confidential treatment,[158] which CBP accepted because the bracketed information consisted of "trade secrets and commercial or financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4)."[159] Thus, with regard to the treatment of business confidential information, CBP adhered to its regulations on remand.

---

[154] *See* July 1, 2022 Letter.
[155] *See* 19 U.S.C. 1517.
[156] *See, e.g.,* 18 U.S.C. § 1905.
[157] *See* July 28, 2022 CBP Email.
[158] Letter from Counsel for MPG to Brian M. Hoxie, Re: EAPA Case No. 7356: MPG Re-Revised Confidential and Public Versions (Aug. 4, 2022).
[159] 19 C.F.R. § 165.4(a).

However, in the Remand Order, the Court also observed that AHSTEC challenged, in part, "TRLED's alleged failure to follow CBP's regulations requiring public summary of confidential documents or explanations of why such summary is impossible."[160] The Court advised that "it is unclear how TRLED enforced compliance with the requirements to provide public summaries or explanations of why such summaries could not be provided…and fail{ed} to clarify the standard CBP must meet in administering its regulations relating to the public summarization of allegedly confidential information, and…fails to explain how TRLED met that standard in light of seemingly inconsistent treatment of information that is in certain places alleged to be not suitable for public summarization and in others apparently publicly summarized."[161] CBP's regulations require that any business confidential information placed on the administrative record be accompanied by a public summary of any business confidential information or an explanation why summarization is not possible.[162] Any public version of business confidential information placed on the record must "contain a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the {bracketed} information."[163] On review of the parties' submissions on remand, including MPG's submission in response to CBP's August 4, 2022 rejection of its revised business confidential and public version documents, CBP determined the parties' public versions were adequate inasmuch as the parties provided public summaries sufficient "to permit a reasonable understanding of the substance of the information."[164]  Finally, as described above, CBP also reviewed its own documents and revised

---

[160] Remand Order at 12.
[161] Remand Order at 12.
[162] 19 C.F.R. § 165.4(a)(2).
[163] *Id.*
[164] *Id.*

the bracketing as necessary and ensured compliance with the requirements for public summaries of business confidential information.[165]

---

[165] 19 C.F.R. § 165.4(e).

## VI.     CONCLUSION

In accordance with the Court's remand order, CBP analyzed various issues including

compliance with the relevant regulations governing the treatment of business confidential

information and public summaries. TRLED placed revised public versions of business

confidential documents on the administrative record. After doing so, CBP permitted Minh Phu

Group and AHSTEC an opportunity to submit rebuttal information and additional arguments.

Further, TRLED transmitted all documents and information previously omitted from the record,

as well as any information and arguments submitted on remand, to R&R for review. Upon

review of the documents and arguments submitted, TRLED affirms its determination of evasion,

but R&R affirms its decision to reverse TRLED's determination.

BRIAN M HOXIE
Digitally signed by
BRIAN M HOXIE
Date: 2022.11.21
16:56:18 -05'00'

Brian M. Hoxie
Director – Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
Office of Trade, U.S. Customs & Border Protection

**ADDENDUM**



U.S. Customs and
Border Protection

**November 21, 2022**

**Public Version**

OT:RR:BSTC:PEN H327030 SJS
            x-Ref  H314879 SJS

Donald B. Cameron, Jr.
William H. Barringer
Mary S. Hodgins
Jordan L. Fleischer
Morris, Manning & Martin LLP
Counsel for MSeafood Corp. and Minh Phu Group
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005

Nathan Rickard
Picard Kentz & Rowe
Counsel for Ad Hoc Shrimp Trade Enforcement Committee
1750 K Street, N.W., Suite 800
Washington, D.C. 20006

Re:    Remand Redetermination for Enforce and Protect Act ("EAPA") Consolidated
       Case Number 7356; Minh Phu Group; 19 U.S.C. § 1517

Dear Mr. Cameron, Mr. Barringer, Ms. Hodgins, Mr. Fleischer, and Mr. Rickard:

This is the remand redetermination made pursuant to the remand order dated May 23,
2022, in *Ad Hoc Shrimp Trade Enforcement Committee v. United States, et al.*[1]

On remand, U.S. Customs and Border Protection ("CBP"), Office of Trade ("OT"),
Regulations and Rulings ("R&R"), has received and reviewed from the Trade Remedy
Law Enforcement Directorate ("TRLED") of OT the documents collected during the
EAPA investigation and initially omitted from the record prior to R&R's original *de novo*
review (H314879), dated February 11, 2021 ("R&R February 11 FAD").[2]  Further, R&R

---

[1] *See* Remand Order, Ad Hoc Shrimp Trade Enforcement Comm. v. United States, No. 21-00129, (Ct. Int'l
Trade May 23, 2022), ECF No. 56 (Order).
[2] *See* Confidential Document Nos. 220-330 and Public Document Nos. 234-254, which were filed as part of
the supplemental administrative record.  These documents which were previously omitted from the record
transferred to R&R as part of the original *de novo* review consist primarily of: (1) Sales Reports; (2)
Requests for Information to importer MSeafood and to manufacturer Minh Phu Joint Seafood Joint Stock
Company; (3) Inventories of food for raising shrimp and for shrimp seed; (4) Lists of Employees, Direct

**Public Version**

has reviewed and considered the submissions from the Ad Hoc Shrimp Trade Enforcement Committee ("AHSTEC"), as well as the Minh Phu Seafood Joint Stock Company ("Minh Phu") and MSeafood Corporation ("MSeafood") (collectively "Minh Phu Group" or "MPG") made during the remand period, including AHSTEC's Written Argument in Response to Revised Public Versions of the documents placed on the administrative record, dated August 22, 2022, and the Minh Phu and MSeafood Response to Alleger's Arguments, dated September 6, 2022. The parties were also afforded an opportunity to provide written comments on a draft remand redetermination. R&R has reviewed and considered the parties' comments.

We note that CBP's remand proceedings herein are subject to a judicial protective order.[3] In addition to requiring R&R to consider the record items that had previously been omitted, the Court's remand order also directed CBP to provide further explanation regarding the confidential treatment and public summarization of allegedly confidential information.[4] The Court's order on this point appears to be directed to TRLED,[5] and TRLED has addressed the agency's compliance with 19 C.F.R. § 165.4 in its portion of the remand redetermination. Nonetheless, to ensure full compliance with the Court's order, we note that R&R has also considered the regulatory requirements of 19 C.F.R. § 165.4, and we agree with TRLED's treatment and public summarization of confidential information on remand.

The R&R February 11 FAD is incorporated by reference as if fully set forth herein.[6]

Upon review of the previously omitted documents, the revised public versions of the documents, and the new submissions of the parties, R&R continues to find that substantial evidence on the administrative record in this matter supports the February 11 determination made by R&R that the Minh Phu Group did not engage in evasion by entering into the U.S. customs territory Indian-origin frozen warmwater shrimp and prawns and misrepresenting the country of origin as Vietnam.

For one, a review of the previously omitted (Confidential Docs. 229 and 330) eight sample traces provided in Exhibit 20 of Minh Phu's RFI Response,[7] and in Exhibits 14-21 of MSeafood's RFI response,[8] demonstrates provenance tracing of the Vietnamese-origin shrimp and prawns from purchase order to entry into the customs territory of the

---

Labor Working Hours, and Payrolls; (5) AHSTEC Part 165 Investigation submission of New Factual Information (NFI); and (6) Extension Requests and responses from TRLED.

[3] *See* Amended Protective Order, Ad Hoc Shrimp Trade Enforcement Comm. v. United States, No. 21-00129 (Ct. Int'l Trade May 23, 2022), ECF No 63 at ¶ 2.

[4] *See* Remand Order, Ad Hoc Shrimp Trade Enforcement Comm. v. United States, No. 21-00129, (Ct. Int'l Trade May 23, 2022), ECF No. 56 (Order), at 20-22.

[5] *Id.*

[6] February 11, 2021 Final Administrative Determination in EAPA Case Number 7356 (H314879), by Regulations & Rulings, Office of Trade, available as Confidential Document No. 219 and Public Document No. 233.

[7] Confidential Document No. 330, Minh Phu Seafood Joint Stock Company RFI Response, Exhibit 20, Sample Traces #1-8 at 5,380-6,669.

[8] Confidential Document No. 229, MSeafood RFI Response, Exhibits 14-21 Sample Traces # 1-8. *See also* Confidential Document No. 62, MSeafood Supplemental RFI Response.

**Public Version**

United States.  The Minh Phu Group claims it implemented its tracing system in 2016 (prior to the beginning of the period of investigation) to trace the provenance of its merchandise.  Furthermore, the Minh Phu Group claims that, as of January 1, 2019, Minh Phu has been using its tracing system to comply with the National Oceanic and Atmospheric Administration ("NOAA") Seafood Import Monitoring Program ("SIMP"), as demonstrated by the four SIMP audits submitted as part of the record.[9]  SIMP compliance requires the submission of records regarding the chain of custody of the shrimp and prawns from harvest at farms located in Vietnam to the point of entry into the United States.  As the Minh Phu Group has asserted, "to date, SIMP authorities have not found any discrepancies between the information provided in the SIMP reports and the origin of the shrimp resulting from Minh Phu's system of tracing (any small discrepancies noticed in the Audit Results were minor and due to inadvertent entry errors)."[10]  Our review of the four SIMP audits indicated that the Minh Phu Group was able to provide provenance tracing of the shrimp and prawns contained in each audited entry from harvest at farms located in Vietnam to point of entry into the U.S. customs territory.[11]  In our view, these sample traces and the SIMP audits included on the record represent an attempt by the Minh Phu Group to cooperate with the EAPA investigation and respond to RFIs to the best of MPG's ability, given the practical difficulties associated with provenance tracing for this particular type of merchandise (*i.e.,* tracing shrimp and prawns throughout the various stages of the production process).[12]  Therefore, the application of adverse inferences pursuant to 19 U.S.C. § 1517(c)(3) to arrive at the conclusion that the Minh Phu Group regularly engaged in evasion during the period of investigation is not warranted.

Moreover, the Minh Phu Group also submitted records regarding the inventory of food for raising shrimp and for shrimp seed to support its assertion that the Minh Phu Group was able to procure enough shrimp and prawns in Vietnam to account for its sales of Vietnamese-origin frozen warmwater shrimp and prawns to the United States.[13]

We acknowledge the evidence relied upon by TRLED's initial determination as to evasion,[14] demonstrating that the Minh Phu Group did import Indian-origin shrimp to Vietnam before and during the period of investigation.  However, the Minh Phu Group provided the explanation that this Indian-origin shrimp is used to fulfill orders to other countries, and not in the United States, since the United States is not the Minh Phu

---

[9] Confidential Document No. 229, MSeafood RFI Response, Exhibit 3, Sample NOAA Audit Reports at 55-251.

[10] Public Document No. 244, MSeafood RFI to Importer Questionnaire Response, Answer to General Information, Question 11, at 8-9.

[11] *See* Confidential Document 229, Exhibit 3, Sample NOAA Audit Reports at 55-251.

[12] *See* Confidential Document 330, Minh Phu Seafood Joint Stock Company RFI, Answer to Pertinent Production, Sales, Purchases/Procurement, and Documentation Requests, Question 4(f) at 29-33.  *See also* Confidential Document 213, MPG Supplemental RFI Response, Answer to Accounting/Purchase/Sales Activities, Question 11 at 13-18.

[13] Confidential Document Nos. 270-279, Exhibit 16, Inventories of food for raising shrimp and for shrimp seed.  *See also* Public Document No. 246, Minh Phu Seafood Joint Stock Company RFI, Answer to Question 4(e) at 29 ("MPSJSC has sufficient domestic supply to satisfy the requirements of the U.S. market.") and Confidential Document No. 214, Minh Phu Written Argument, September 14, 2020.

[14] *See* Confidential Document No. 217, Notice of Determination of Evasion by TRLED, October 13, 2020.

**Public Version**

Group's only market.[15]  The Minh Phu Group provided Exhibit 36[16] as part of the record to demonstrate export sales to non-U.S. countries.  As such, substantial evidence on the record does not refute the Minh Phu Group's argument and supporting documentation that the imports of Indian-origin shrimp are being sold exclusively to other countries outside of the U.S. customs territory, with the exception of the export sale to [ DESTINATION ] brought to CBP's attention by the Minh Phu Group during the period of investigation and identified by the use of Minh Phu's tracing system.  Further review of the record, including information submitted on remand, does not change our position with respect to the single export sale to [ DESTINATION ].

Furthermore, R&R reviewed rebuttal information submitted by AHSTEC during the remand proceedings and concluded that reversal of the February 11 FAD is not warranted.  The administrative record as a whole is still devoid of substantial evidence to support a factual determination that the Minh Phu Group entered covered merchandise into the U.S. customs territory during the period of investigation through evasion by comingling Indian-origin shrimp and prawns with Vietnamese-origin shrimp and prawns. In AHSTEC's written argument in response to revised public versions of documents, AHSTEC accurately identifies that "the revised public versions now make clear that certain claims made by MPG regarding the sufficiency of its internal control system may be tested for reliability against the information already submitted by the company."[17] AHSTEC specifically argues that the brand names, accounted for in the product description field of the Minh Phu Group's records, should be examined.  The Minh Phu Group counterargued by maintaining that the "XH" designation is the most important factor throughout the production process to segregate imported and domestic shrimp and that "certain brand names are sent to multiple markets, therefore it is not as simple as AHSTEC would suggest to track the shrimp using brand names."[18]  Nevertheless, during our remand review, we compared brand names along with other information in Exhibit 36 and we were unable to find a discrepancy to support the argument that Indian-origin comingled shrimp is being transshipped to the U.S. customs territory.  While AHSTEC concedes that two specific brand names ([   BRAND A   ]$^{19}$ and [   BRAND B   ]$^{20}$) containing imported Indian-origin shrimp may be destined to non-U.S. markets, AHSTEC asserts that one specific brand name [ BRAND C ] listed on the production documents of Exhibit 30 containing comingled shrimp does not appear to have "a

---

[15] *See* Public Document No. 246, Minh Phu Seafood Joint Stock Company RFI, Answer to Question 4(e). *See also* Confidential Document No. 214, Minh Phu Written Argument, September 14, 2020.
[16] *See* Confidential Doc. 213, MSeafood Response to Supplemental Importer Request for Information, Exhibit 36, re-revised version submitted as Appendix VII (Business Proprietary Version).
[17] AHSTEC Written Argument in Response to Revised Public Versions, dated August 22, 2022 (Public Document), at 3.
[18] Minh Phu and MSeafood Response to Alleger's Written Argument, dated September 6, 2022 (Public Document), at 9-10.
[19] *See* Confidential Appendix VII, June 11, 2020 MPG Supplemental RFI Response (Business Proprietary Version), Exhibit 30 at 426, and Exhibit 36 at 835.
[20] *See* Confidential Appendix VII, June 11, 2020 MPG Supplemental RFI Response (Business Proprietary Version), Exhibit 30 at 428, and Exhibit 36 at 845.

**Public Version**

corresponding entry within Exhibit 36… that is readily discernible."[21]  However, the brand name, [ BRAND C ], does appear in Exhibit 36 for an export sale to [ DESTINATION ][22] and the information for the export sale listed in Exhibit 36[23] appears to match the information included in the production documents of Exhibit 30,[24] which listed imported Indian-origin shrimp comingled with Vietnamese-origin shrimp. Thus, this evidence supports the Minh Phu Group's contention that its tracing system was sufficient at ensuring that imported Indian-origin shrimp is used to fulfill orders only to other countries outside of the U.S. customs territory.

While some record evidence does raise reasonable suspicion and concern regarding the possibility of the Minh Phu Group's comingling imported shrimp and prawns from India with domestically produced shrimp and prawns in Vietnam, we reiterate that the record evidence produced by the Minh Phu Group to substantiate the country of origin of its shrimp entered into the United States has not been shown to be unreliable, and based on our review, the record evidence does not illustrate any other instances[25] of exports of Indian-origin shrimp and prawns to the United States occurring during the period of investigation.  The record must contain substantial evidence of evasion.  When the record herein is considered as a whole, one instance of a minimal quantity of Indian-origin product entering the United States, which was discovered and revealed by MPG itself, does not constitute substantial evidence.  As such, the totality of the evidence remains insufficient to support a determination of evasion.

Thus, substantial evidence still supports a negative final determination of evasion as to the Minh Phu Group, and based upon our *de novo* review on remand of the entire administrative record in this case, including the documents previously omitted from the

---

[21] Ad Hoc Shrimp Trade Enforcement Committee Comments on Draft Remand Redetermination (November 3, 2022) at 32-33.
[22] Confidential Appendix VII, June 11, 2020 MPG Supplemental RFI Response (Business Proprietary Version), Exhibit 36 at 844.
[23] *Id.*
[24] Confidential Appendix VII, June 11, 2020 MPG Supplemental RFI Response (Business Proprietary Version), Exhibit 30 at 428.  See also *id.* Exhibit 30 at 439.
[25] The only instance of comingling that was revealed on the record was the one export sale to [ DESTINATION ].  This sale was addressed in the February 11 FAD on pages 9-10.  The export sale contained [ QUANTITY ] of Indian-origin shrimp out of a total of [ QUANTITY ] of shrimp and the rest of the shrimp in the sale was from Vietnam.  *See* Confidential Document No. 219, MSeafood Supplemental RFI, Exhibit 30.  The Minh Phu Group discovered this export sale when submitting its supplemental RFI and by using its own tracing system.  *See* Confidential Document No. 213, MSeafood Supplemental RFI, Answer to Question 8.  The Minh Phu Group explained that a production employee at the time did not realize that [ DESTINATION ] was a part of the U.S. customs territory.  *Id.*  The sale shows up in Exhibit 36, with other sales to non-U.S. markets as [   DESTINATION   ] where the "destination port" information is listed in the format of City, Country.  There is no evidence that this mistake was made as to any other shipments.  If anything, this single mistake—for which the Minh Phu Group was able to trace origin down to the [ QUANTITY ]—highlights the reliability of the Minh Phu Group's tracing system.  The evidence on the record seems to suggest that the error was one of fact, rather than the result of a transcription or other similar error.  Thus, we do not rely on the clerical error statutory exception in reaching our conclusion.  Rather, in our view, a single [ QUANTITY ] error, by one production worker, does not amount to a pattern of negligent conduct as described in 19 U.S.C. § 1517(a)(5)(B), nor does it demonstrate substantial evidence of evasion.

**Public Version**

record and the submissions by AHSTEC and the Minh Phu Group during the remand proceedings, the October 13 Determination of Evasion by TRLED under 19 U.S.C. § 1517(c) (as supplemented by TRLED with its determination on remand) remains REVERSED.


Sincerely,



Paul Pizzeck

Digitally signed by Paul Pizzeck
Date: 2022.11.21 15:45:25
-05'00'

Paul Pizzeck
Chief, Penalties Branch, Regulations & Rulings
Office of Trade
U.S. Customs & Border Protection



Approved by:

ALICE A
KIPEL

Digitally signed by
ALICE A KIPEL
Date: 2022.11.21
16:03:17 -05'00'

Alice A. Kipel
Executive Director, Regulations & Rulings
Office of Trade
U.S. Customs & Border Protection