**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| AD HOC SHRIMP TRADE ENFORCEMENT COMMITTEE,      ) | |
| Plaintiff,    ) | |
| v.    ) | **PUBLIC VERSION** |
| UNITED STATES,    ) Defendant,    ) | Court No. 21-00129 |
| and    ) | |
| MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION,    ) Defendant-intervenors.    ) | |

**DEFENDANT'S RESPONSE TO COMMENTS**
**<u>REGARDING THE REMAND REDETERMINATION</u>**

<div style="text-align: right;">

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

</div>

<table>
<tr>
<td>

OF COUNSEL
JENNIFER L. PETELLE
Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel
   Enforcement and Compliance




February 2, 2023

</td>
<td>

KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel:  (202) 305-7571
Fax: (202) 514-8264
Email: kara.m.westercamp@usdoj.gov
Attorneys for Defendant

</td>
</tr>
</table>

## **TABLE OF CONTENTS**

**PAGE**

BACKGROUND ................................................................................................2

    I.    Administrative Determination Under Review .......................................2

    II.    Determinations Before CBP ..............................................................2

        A.    Initiation Of Investigation ........................................................2

        B.    TRLED Issued A Finding Of Affirmative Evasion And MPG's Appeal ....3

        C.    On Appeal, ORR Reversed TRLED's Finding Of Affirmative Evasion.....5

    III.    The Court's Remand Order .................................................................7

    IV.    CBP's Remand Redetermination ........................................................9

        A.    TRLED Transmitted The Entire Record To ORR For Its *De Novo* Review ..................................................................................9

        B.    Pursuant To 19 C.F.R. § 165.4, TRLED Thoroughly Reviewed Requests For Confidential Treatment And The Public Summaries Of Redacted Information ..........................................................10

        C.    TRLED Continued To Make An Affirmative Evasion Determination .....13

        D.    ORR Continued To Reverse TRLED's Evasion Determination ..............15

ARGUMENT ................................................................................................19

    I.    Standard Of Review .......................................................................19

    II.    CBP's Remand Redetermination Complies With The Court's Remand Order.....19

    III.    CBP's Treatment Of Business Confidential Information Is Lawful.....................22

    IV.    ORR Correctly Determined That There Was Not Substantial Evidence Of Evasion..............................................................................26

CONCLUSION ..............................................................................................28

i

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Ad Hoc Shrimp Trade Enforcement Comm. v. United States*,
    578 F. Supp. 3d 1310 (Ct. Int'l Trade 2022) ............................................................. *passim*

*All One God Faith, Inc. v. United States*,
    589 F. Supp. 3d 1238 (Ct. Int'l Trade 2022) ..................................................................27

*Aspects Furniture Int'l Inc. v. United States*,
    No. 20-03824, 2022 WL 17249645 (Ct. Int'l Trade Nov. 28, 2022) ................................27

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) .....................................................................................................19

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) .....................................................................................................19

*Diamond Tools Tech. LLC v. United States*,
    No. 20-00060, 2022 WL 17730761 (Ct. Int'l Trade Dec. 16, 2022) ................................27

*Downhole Pipe & Equip., L.P. v. United States*,
    776 F.3d 1369 (Fed. Cir. 2015) ...............................................................................19, 29

*Intercargo Ins. Co. v. United States*,
    83 F.3d 391 (Fed. Cir. 1996) .......................................................................................25

*Leco Supply, Inc. v. United States*,
    No. 21-00136, Slip Op. 23-8 (Ct. Int'l Trade Feb. 1, 2023) ...........................................24

*Prime Time Com., LLC. United States*,
    No. 21-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022) ...........................................25

*Voge v. United States*,
    844 F.2d 776 (Fed. Cir. 1988) .......................................................................................8

**STATUTES**

5 U.S.C. § 522 .............................................................................................................10

18 U.S.C. § 1905 ..........................................................................................................24

19 U.S.C. § 1517 .................................................................................................. *passim*

**<u>REGULATIONS</u>**

19 C.F.R. § 165.4 ................................................................................................................ *passim*

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| AD HOC SHRIMP TRADE ENFORCEMENT COMMITTEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) | Court No. 21-00129 |
| Defendant, | ) ) | |
| and | ) ) | |
| MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION, | ) ) ) | |
| Defendant-intervenors. | ) ) | |

## DEFENDANT'S RESPONSE TO COMMENTS
## REGARDING THE REMAND REDETERMINATION

Defendant, the United States, respectfully submits its comments in support of the U.S.

Customs and Border Protection (CBP) remand redetermination filed in accordance with this

Court's decision and remand order in *Ad Hoc Shrimp Trade Enforcement Committee v. United*

*States*, 578 F. Supp. 3d 1310 (Ct. Int'l Trade 2022) (*AHSTEC* or Remand Order).  Remand

Redetermination Pursuant to Court Order, May 23, 2022, EAPA Case No. 7356, ECF No. 68

(Remand Redetermination).  Plaintiff, Ad Hoc Shrimp Trade Enforcement Committee

(AHSTEC), filed comments in opposition to CBP's remand redetermination.  Plaintiff AHSTEC

Comments on Remand Redetermination, ECF No. 76 (AHSTEC Cmts.).

For the reasons set forth below, we respectfully request that the Court sustain CBP's

remand redetermination in its entirety.

## BACKGROUND

I.    **Administrative Determination Under Review**

AHSTEC challenged CBP's final negative determination issued by the Office of Trade, Regulations and Rulings (ORR) as to a negative finding of evasion with respect to certain frozen warmwater shrimp from India produced and/or exported by Minh Phu Group (Minh Phu) and its affiliated importer, MSeafood Corporation (MSeafood) (collectively, MPG).  Notice of Final Determination as to Evasion in EAPA Case No. 7356 (Feb. 11, 2021) (C.R. 219)[1] (ORR Final Determination).  Specifically, although CBP's Trade Remedy and Law Enforcement Directorate (TRLED) determined that substantial evidence supported an affirmative finding of evasion, Notice of Determination as to Evasion at 9 (Oct. 13, 2020) (C.R. 217) (TRLED Determination), in a *de novo* review, ORR reversed that finding of evasion.  *See* ORR Final Determination.

II.   **Determinations Before CBP**

    A.    **Initiation Of Investigation**

On October 9, 2019, in response to a trade association's allegation that MPG was evading antidumping duties, CBP initiated an investigation under 19 U.S.C. § 1517, commonly referred to as the "Enforce and Protect Act" or "EAPA," to determine whether certain frozen warmwater shrimp from India had been entered into the United States by means of evasion.  Notice of Initiation (Oct. 9, 2019) (P.R. 10).  Specifically, AHSTEC alleged that MPG had evaded antidumping duties by importing certain frozen warmwater shrimp into the United States that were produced in India and transshipped through Vietnam.

---

[1]  References to the confidential and public records are C.R. and P.R., respectively.  The remand record was added in addition to the original record filed with the Court.

In January 2020, TRLED found that on the basis of AHSTEC's various submissions and the additional information it had placed on the record concerning MPG's monthly export snapshots showing aggregated exports of shrimp from India to Vietnam, there was a "reasonable suspicion" that MPG had evaded paying antidumping duties by transshipping Indian-origin shrimp to the United States while claiming it was of Vietnamese origin. *See* TRLED Memorandum to File (Dec. 20, 2019) (C.R. 5); Notice of Initiation and Interim Measures (Jan. 5, 2020) (C.R. 6).

**B.     TRLED Issued A Finding Of Affirmative Evasion And MPG's Appeal**

Following various record submittals and written arguments from MPG and AHSTEC, TRLED determined that "evidence on the record indicates that there is a strong likelihood that MPG co-mingled Indian-origin shrimp with Vietnamese-origin shrimp on imports to the United States." TRLED Determination at 9.  It first explained that "{r}ecord evidence shows that MSeafood, the U.S. based affiliated of {MPG}, imported shrimp from {MPG} during the period of investigation . . . from October 8, 2018, through October 13, 2020{, and that e}vidence on the record shows that {MPG} has a history of importing Indian-origin shrimp into Vietnam for processing." *Id.* at 4.

For example, TRLED explained that "{e}vidence on the administrative record shows that {MPG} stores and processes Indian-origin shrimp in the same facilities and locations in which it processes Vietnamese-origin shrimp, which allows for the possibility of comingling or mislabeling." *Id.* at 5.  In order to test the veracity of MPG's claim that it had "implemented a tracing system in 2016, which allows it to track imported shrimp from the minute it enters its production facility," TRLED explained that it had requested supplemental information from MPG including a "bill of lading report for all the covered merchandise imported from India." *Id.*

3

at 6.  MPG responded that "it cannot trace specific imported shrimp from the import bill of

lading through to specific 'XH' market shrimp in finished goods inventory, but it segregates and

traces *all* imported shrimp in order to ensure that no imported shrimp is exported to the United

States."  *Id.* at 6-7 (emphasis in original).

TRLED explained that MPG's "inability to trace specific imports of Indian-origin shrimp

through the production facility to specific sales is problematic in that it is crucial to CBP's

understanding of whether comingling or mislabeling of Indian-origin shrimp was happening."

*Id.* at 7.  Although MPG claimed that it could reconcile its purchases of imported shrimp to sales

to all markets, "{t}he problem with this claim is that it is an accounting reconciliation that is

unsupported by {MPG's} internal production records of the shrimp being processed at different

stages," and that the "importance of this missing information cannot be understated{.}"  *Id.*

Also, TRLED found several potential issues with MPG's response that it had discovered

that one of its export sales to ███████ contained some "mixed Vietnamese and Indian

shrimp (marked 'XH')."  *Id.*  First, a robust tracing system "should have prevented this instance

of comingling."  *Id.*  Second, "if {MPG} could precisely trace this sale of comingled shrimp,"

then TRLED explained that it questioned MPG's "inability to trace specific imported shrimp

from the bill of lading through to specific 'XH' marked shrimp in finished goods inventory.'"

*Id.* at 7-8.  Further, TRLED explained that "{MPG} and MSeafood should be capable of

conforming" to the Seafood Import Monitoring Program (SIMP) administered by the U.S.

National Oceanic and Atmospheric Administration (NOAA), and provide substantiating

documentation, and that even the accuracy of MPG's "SIMP documents are in question if they

are unable to trace imported shrimp that has been processed through to its production

documents."  *Id.* at 8.  Finally, TRLED noted "other discrepancies that cast doubt on the overall

reliability of {MPG's} responses," such as inconsistencies on when MPG had stated it had stopped "importing shrimp into Vietnam from [█████████████] after July 2019." *Id.*

Regarding evasion, TRLED explained that, pursuant to 19 U.S.C. § 1517(c)(e) and 19 C.F.R. § 165.6, "CBP may apply an adverse inference if the party to the investigation that filed an allegation, the importer, or the foreign producer or exporter of the covered merchandise fails to cooperate and comply to the best of its ability with a{request for information} made by CBP." *Id.* at 9.  TRLED determined that MPG's failure to "provide the requested information, *i.e.*, tracing imported shrimp's bill of ladings to specific exported shrimp, that would allow CBP to trace its imports of Indian-origin shrimp through its production processes to its sales demonstrates that {MPG} did not act to the best of its abilities in this EAPA investigation." *Id.* Thus, TRLED determined that record evidence supported its determination that MPG "has been comingling Indian-origin shrimp with Vietnamese-origin shrimp on imports to the United States," and that MPG's failure to "respond to the best of its ability supports the application of adverse inferences." *Id.* at 9-10.

In November 2020, MPG timely requested an administrative review of TRLED's decision, and argued that both the application of adverse inferences to it was unlawful and not supported by substantial evidence, and that CBP's determination of evasion was not supported by substantial evidence.  *See* MPG Request for Administrative Review (Nov. 10, 2020) (C.R. 218).

## C.   <u>On Appeal, ORR Reversed TRLED's Finding Of Affirmative Evasion</u>

On February 11, 2021, in a *de novo* administrative review, ORR reversed TRLED's affirmative finding of evasion.  *See* ORR Final Determination.

First, ORR determined that MPG had provided "{e}xtensive documentation" in support of non-evasion and "this documentation has not been shown to be unreliable." *Id.* at 8. Rather, in ORR's view, MPG's "inability to produce the specifically requested documents including a 'bill of lading' report (*i.e.* tracing imported shrimp's bills of lading to specific imported shrimp)," created a situation where there is "not substantial evidence that evasion occurred," especially considering that CBP did not have the opportunity to conduct a site visit due to ongoing pandemic restrictions. *Id.*

Moreover, ORR found it problematic that TRLED's "finding of evasion in this case appears to rest significantly upon the use of facts otherwise available due to the purported insufficient responses to TRLED's requests for information," which were based on "perceived deficiencies" and a finding that MPG had "failed to cooperate and comply to the best of its ability in response to requests for information from CBP." *Id.* at 9. To wit, even though MPG could not "trace imported shrimp in the exact manner requested by CBP, MPG was able to reach the same result by demonstrating that {it} tracks imported shrimp throughout the production and sales process through its use of an 'XH' marking to ensure that imported shrimp is not shipped to the United States." *Id.* Also, ORR found that MPG had reconciled its accounting of shrimp purchases and withdrawals from inventory, and "{a}s such, {it} was not unresponsive to CBP's requests for information but rather, responded to the best of its ability given the practical difficulties of directly tracing imported shrimp throughout the production process from specific important bills of lading to specific export sales." *Id.*

ORR also determined that MPG's explanation of the effectiveness of its internal tracking system and accounting reconciliation was supported by substantial evidence because although MPG had identified one shipment to the United States customs territory which "erroneously

contained a *de minimis* amount of imported Indian-origin shrimp," it had explained that "this shipment was the result of a mistake by {its} production team, [███████████████ ███████████████████████████]." *Id.*  But because MPG had voluntarily disclosed the error, "while {it} was unable to tie the imported shrimp to a specific import bill of lading as requested by CBP," ORR determined that MPG's "ability to identify the sale of a *de minimis* amount of imported shrimp from India commingled with Vietnamese-origin shrimp to [███████] serves as reliable evidence that MPG's internal system is effective, though not without flaws." *Id.* at 10.  Additionally, the mistaken shipment to the U.S. customs territory was not repeated and, "{i}n the absence of evidence to the contrary, MPG's internal tracking system of imported shrimp in place during the period of investigation as well as its accounting reconciliation methods have not been proven to be unreliable by CBP." *Id.*

Thus, ORR determined that "based on the documentation and information provided in the record, there is not substantial evidence that MPG entered shrimp from India by means of evasion by transshipment through Vietnam during the period of investigation," and reversed TRLED's determination of evasion.  *Id.*

## III.    **The Court's Remand Order**

In its May 2022 opinion, the Court held that, because the defendant had conceded at oral argument that TRLED had "failed to transmit the entire record to ORR," "even a cursory review" of the missing documents from the record "demonstrates that ORR could not possibly have complied with its obligation to conduct a *de novo* review of the entire administrative record." *AHSTEC*, 578 F. Supp. 3d at 1317-18.  And while the defendant and MPG argued that the missing record documents were immaterial, the Court held that ORR was "not permitted" to make its decision to reverse TRLED's finding of evasion "based on a review of only part of the

administrative record." *Id.* at 1318 (citing *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988)); *see also* 19 U.S.C. § 1517(f)(1) (explaining appealing a TRLED determination to ORR); 19 C.F.R. § 165.46 ("CBP will review the *entire* administrative record upon which the initial determination was made") (emphasis added).

Relatedly, the Court agreed with AHSTEC that CBP had failed to "adequately explain why it accepted {MPG's} assertions regarding confidential information or how CBP evaluated the sufficiency of public summarization or explanation of the inability of {MPG} to publicly summarize the purportedly confidential documents{.}" *AHSTEC*, 578 F. Supp. 3d at 1319-20. Although CBP's regulations permit parties to an EAPA proceeding to request confidential treatment for certain "business confidential information," only "'trade secrets and confidential or financial information obtained from any person, which is privileged or confidential'" is covered for the purposes of EAPA proceedings. *Id.* (quoting 19 C.F.R. § 165.4(a)). Moreover, even if a party requests confidential treatment, that party must also submit a public version of the document that contains a sufficiently detailed summary of the bracketed information such that it permits a reasonable understanding of the information's substance. *Id.*

In this case, the Court noted that AHSTEC had complained on numerous occasions about the "lack of public summarization and the inconsistent treatment of allegedly business confidential information," but that issue was not even mentioned in TRLED's determination, "let alone how {TRLED} complied with CBP's regulations." *Id.* at 1321. Because "{n}owhere does TRLED or ORR address CBP's regulations governing public summarization, AHSTEC's specific complaints, or how CBP evaluated {MPG's} treatment of purportedly confidential information," the Court held that it could not evaluate CBP's "action without any explanation of

CBP's obligations with respect to allegedly confidential information or the reasons for CBP's decisions in this investigation." *Id.*

Finally, the Court held that because the entire record had not been transmitted to ORR and TRLED did not explain how the public summaries complied with CBP's regulations, the Court "decline{d} to consider ORR's substantive findings." *Id.* On remand, the Court directed CBP "to make a determination as to evasion that is based on a review of the entire record and in compliance with CBP's procedural regulations." *Id.*

## IV.   CBP's Remand Redetermination

In its remand redetermination, consistent with the Court's remand order, TRLED placed revised public versions of business confidential documents on the administrative record, permitted AHSTEC and MPG to submit rebuttal information and additional arguments, and affirmed its determination of evasion. Remand Redetermination at 35. TRLED also transmitted all documents and information that it had previously omitted from the record, as well as any new information, to ORR for its *de novo* review. *Id.* ORR affirmed its decision to reverse TRLED's determination of evasion. *Id.*

### A.   TRLED Transmitted The Entire Record To ORR For Its *De Novo* Review

In the remand redetermination, TRLED explained that it had inadvertently not transmitted certain documents for ORR's *de novo* review, which included such information as (1) sales reports, (2) requests for information (RFIs) to Minh Phu and MSeafood, (3) inventories of food for raising shrimp and for shrimp seed, (4) employee information, (5) AHSTEC Part 165 Investigation submission of new factual information, and (6) various extension requests and responses from TRLED. *Id.* at 5. Upon remand, TRLED transmitted these documents, *id.* at 35, and also transmitted any new information placed on the remand record, which included both

AHSTEC's and MPG's new written arguments, as well as the revised public versions of documents that had been previously placed on the record.  *Id.* at 5-6; *see also id.* at 30 ("TRLED forwarded to {ORR} the revised documents, rebuttal information, comments from the parties, and documents previously omitted from {ORR's} *de novo* review.").

**B.**     **Pursuant To 19 C.F.R. § 165.4, TRLED Thoroughly Reviewed Requests For Confidential Treatment And The Public Summaries Of Redacted Information**

In the remand redetermination, CBP explained that it "reviewed documents it previously placed on the administrative record to determine whether revisions to bracketing of confidential information were necessary, and to revise the public versions of such documents to include public summaries to comply with the requirements of 19 C.F.R. § 165.4(a)(1) and (a)(2)."  *Id.* at 7.

As a part of this process, CBP re-opened the record and requested that MPG and AHSTEC "review business confidential documents each entity previously submitted for placement on the administrative record and provide a justification as to why any bracketed information consisted of trade secrets and confidential or commercial information" that would be subject to protection under 5 U.S.C. § 522(b)(4).  *Id.* at 8; *see* July 1, 2022 Letter to Counsel for AHSTEC and MPG (P.R. 251) (July 1, 2022 Letter).  The parties were reminded that if they wished to revise any business confidential documents, that they must "specify any changes to the previous bracketing and provide a justification, along with the applicable public versions of those documents and appropriate public summaries."  Remand Redetermination at 8; *see also* July 1, 2022 Letter.  To the extent any portions of the confidential documents were bracketed, the parties were also reminded that public summaries of that bracketed information was required "to include sufficient detail to permit a reasonable understanding of the substance of the bracketed

information or, to the extent that public summarization was not possible, the parties were to

provide an explanation of the reasons supporting such claim."  Remand Redetermination at 8;

*see also* July 1, 2022 Letter; 19 C.F.R. § 165.4(d) (requiring certifications for any request for

confidential treatment).

After extension requests, AHSTEC and MPG timely submitted their revised business

confidential and public version documents, which included public summaries of business

confidential requests, on July 14, 2022, and July 25, 2022, respectively.  Remand

Redetermination at 9-10.  CBP accepted AHSTEC's submission, but it rejected MPG's

submission for several reasons.  *Id.* at 10.  To wit, CBP determined that MPG's (1) sales and

other company documents in each appendix were "overly bracketed and lacked adequate public

summaries," (2) there were not corresponding public summaries of redacted business

confidential information in the narrative sections of each appendix, and (3) MPG failed to

provide a "revised public version of its September 14, 2020 MPG Written Argument with an

adequate public summary."  *Id.*; *see* July 28, 2022 Letter Rejecting MPG Submission (P.R. 266).

CBP thereafter accepted MPG's re-revised business confidential and public versions on August

4, 2022.  Remand Redetermination at 11; *see* MPG Re-Revised Confidential and Public Versions

(Aug. 4, 2022) (C.R. 344-348, P.R. 268-276).

MPG explained that it addressed all of CBP's identified concerns and "also specified the

number of pages omitted from public versions of record documents."  Remand Redetermination

at 15-17; *see also* MPG Re-Revised Confidential and Public Versions (Aug. 4, 2022).  In the

eight appendices that MPG included in its submission, CBP "determined that MPG provided an

adequate explanation requesting business confidential treatment for sales and company

documents," and, in "CBP's view, the public versions with public summaries permitted a

reasonable understanding of the underlying substance of the information."  Remand Redetermination at 17; *see also id.* (explaining that AHSTEC seemed to agree that the revised public summaries are adequate).  CBP also granted MPG's request to have certain revised business information be treated as confidential because "MPG provided sufficient explanation as to why the information it sought to withhold as confidential qualified as 'trade secrets and commercial or financial information.'"  *Id.* at 17-18.

With respect to AHSTEC, AHSTEC explained that it submitted revised business confidential and public versions of its September 30, 2019 second supplemental submission. Remand Redetermination at 18.  Specifically, Exhibits 3 and 4 contained information that was capable of public summary, but that any remaining bracketed information could not be publicly disclosed because it would identify the subject of a National Marine Fisheries Service (NMFS) SIMP "audit, the subject's suppliers, the suppliers' internal production and tracing operations, and the commercial terms between the subject of the NMFS SIMP audit and its suppliers."  *Id.* at 19-21.  CBP also determined that the public versions and request for continued business confidential treatment met the requirements of 19 C.F.R. § 165.4.  *Id.* at 21.  Thus, CBP determined that the parties "satisfied the requirements of 19 C.F.R. § 165.4(a)(2) by submitting revised public versions of information previously placed on the administrative record, including public summaries."  *Id.* at 14.

Finally, CBP examined its own information it had placed on the record.  *See id.* at 22-24. It determined that no changes to bracketing were required because the bracketed information "was pertinent to importer-specific entry data from CBP systems, including entry and entry summary date, country, and Harmonized Tariff Schedule of the United states classification numbers; foreign export information (such as number of shipments and export sales); portions of

entry numbers; container, bill, and conveyance information; and manufacturer/seller/shipper and confidential importer of record identification information (such as importer of record number)." *Id.* at 22.  CBP determined that it complied with 19 C.F.R. § 165.4(a) because a "submitting party had either requested business confidential treatment, or the data was business confidential information belonging to importers sourced from CBP systems." *Id.*

However, CBP revised the public summaries for eight documents, and after discovering two additional documents that had been inadvertently omitted from the records filed with the Court, provided public summaries for those documents, as well.  *Id.* at 22-23.  CBP noted that its revised public summaries "are sufficiently detailed to permit a reasonable understanding of the substance of the redacted information."  *Id.* at 24 (citing 19 C.F.R. § 165.4(a)(2)).

CBP then allowed the parties to submit rebuttal information in response to revised public versions of documents placed on the administrative record, but cautioned that it "would not accept any information or comments which were not related to the revised public versions of documents." *Id.* at 11.  Only AHSTEC timely submitted rebuttal information, which included information obtained from the U.S. Patent and Trademark Office (PTO) Trademark Electronic Search System (TESS).  *Id.* at 12.

## C.    TRLED Continued To Make An Affirmative Evasion Determination

In the remand redetermination, after considering the parties' written arguments as well as comments on the draft remand redetermination, TRLED determined that it complied with the Court's remand order with respect to confidential information, and continued to make an affirmative evasion determination.  *See id.* at 24-34.

First, TRLED explained that there is no protective order mechanism in place for EAPA proceedings, and that it "must be cautious in exercising its discretion whether to reject a

13

submission if there is a possibility the information is trade secrets or commercial or financial information." *Id.* at 32.  Even so, TRLED rejected MPG's revised submission and accepted the re-revised filing once MPG made certain recommended changes.  *Id.*  Also, CBP explained that pursuant to the amended judicial protective order (JPO), business confidential versions of documents were available for review in CBP's EAPA Case Management System (CMS) Portal." *Id.* at 12.  Moreover, TRLED carefully reviewed "its own documents and revised the bracketing as necessary and ensured compliance with the requirements for public summaries of business confidential information."  *Id.* at 33-34.

To the extent that AHSTEC continued to argue in its comments on the draft remand results that the submissions were "still heavily redacted," AHSTEC Written Argument for Public Summaries at 2-3 (Aug. 22, 2022) (P.R. 279) (AHSTEC Written Argument), CBP pointed out that AHSTEC had acknowledged that the "'revised public versions now make clear that certain claims made by MPG regarding the sufficiency of its internal control system may be tested for reliability against the information already submitted by the company.'"  Remand Redetermination at 25 (quoting AHSTEC Written Argument at 2-3, 15, 17-18); *id.* at 27 ("To be sure, AHSTEC even concedes that the revised public versions provide 'a small window into the nature of the information collected and produced by {MPG} in completing a sale of frozen warmwater shrimp.'") (quoting AHSTEC Written Argument at 2).

Turning to the evasion determination, TRLED explained that the remand record information is not "sufficient to reverse its determination considering the overall record evidence." *Id.* at 27.  It "continues to find that MPG's overall tracing system is insufficient in light of the totality of other record evidence inasmuch as MPG failed to substantiate its purported

internal tracing system beyond its own claims by, for example, failing to provide any unbiased, third-party evidence concerning the reliability of its internal controls." *Id.* at 28.

MPG also objected to TRLED's application of adverse inferences, and on remand, TRLED explained that "MPG {had} cooperated with the remand proceeding to the best of its ability, and therefore, adverse inferences are not applicable." *Id.* at 30.  But even so, TRLED determined that "MPG did not offer any persuasive and credible substantiation that the use of brand names prevented the comingling of shrimp" subject to the antidumping duty order with non-subject shrimp.  *Id.*  MPG also stored and processed Vietnamese- and Indian-origin shrimp in the same location and "remains unable to directly trace imported shrimp through the production process from specific bills of lading to specific export sales."  *Id.*  TRLED explained that although it "no longer finds adverse inferences applicable in this context," the inability to understand this "crucial" component is "problematic" because it is pertinent to "CBP's understanding of whether comingling or mislabeling of Indian-origin shrimp was happening." *Id.* at 30-31.  Thus, TRLED continued to be "convince{d}" that MPG has been comingling Indian- and Vietnamese-origin shrimp on imports to the United States, and "continues to maintain that substantial evidence of evasion exists and declines to reverse its initial determination."  *Id.* at 31.

## D.    <u>ORR Continued To Reverse TRLED's Evasion Determination</u>

In the ORR remand redetermination, ORR determined that "substantial evidence still supports a negative final determination of evasion as to {MPG}," which was based upon a "*de novo* review of the on remand of the entire administrative record in this case{.}"  ORR Remand Redetermination at 5-6; *see also* Remand Redetermination at 2 (incorporating by reference ORR Final Determination).

In support, ORR cited eight previously omitted sample traces, which "demonstrate{}" provenance tracing of the Vietnamese-origin shrimp and prawns from purchase order to entry into the customs territory of the United States."  *Id.* at 2-3 (citing MSeafood RFI Resp., Exhibits 14-21 Sample Traces #1-8 (C.R. 229), Minh Phu RFI Resp., Exhibit 20, Sample Traces #1-8 (C.R. 330)).  CBP also determined that four SIMP audits in the record "indicated that {MPG} was able to provide provenance tracing of the shrimp and prawns contained in each audited entry from harvest at farms located in Vietnam to point of entry into the U.S. customs territory," which it viewed as MPG cooperating to the best of its "ability, given the practical difficulties associated with provenance tracing for this particular type of merchandise (*i.e.*, tracing shrimp and prawns throughout the various stages of the production process)."  *Id.* at 3 (citing Minh Phu Seafood Joint Stock Company RFI, Answer to Pertinent Production, Sales, Purchases/Procurement, and Documentation Requests, Question 4(f) at 29-33 (C.R. 330); *see also* MPG Supplemental RFI Response, Answer to Accounting/Purchases/Sales Activities, Question 11 at 13-18 (C.R. 213)).

ORR also noted that MPG had submitted food inventory records for raising shrimp and for shrimp seed "to support its assertion that {MPG} was able to procure enough shrimp and prawns in Vietnam to account for its sales of Vietnamese-origin frozen warmwater shrimp and prawns to the United States."  *Id.* (citing Exhibit 16, Inventories of Food for Raising Shrimp and for Shrimp Seed (C.R. 270-279)).

All the same, ORR acknowledged that TRLED had relied on evidence demonstrating that MPG had imported Indian-origin shrimp to Vietnam before and during the investigation, but ORR found other record evidence persuasive that "this Indian-origin shrimp is used to fulfill orders to other countries, and not in the United States, since the United States is not {MPG's} only market."  *Id.* at 3-4.  Specifically, Exhibit 36 demonstrated that "Indian-origin shrimp are

16

being sold exclusively to other countries outside of the U.S. customs territory, with the exception of the export sale to [        ] brought to CBP's attention by {MPG} during the period of investigation and identified by the use of {its} tracing system." *Id.* at 4 (citing MSeafood Resp. to Supplemental Importer RFI at Exhibit 36 (C.R. 348)).

ORR also rejected AHSTEC's rebuttal arguments when it concluded that "{t}he administrative record as a whole is still devoid of substantial evidence to support a factual determination that {MPG} entered covered merchandise into the U.S. customs territory during the period of investigation through evasion by comingling Indian-origin shrimp and prawns with Vietnamese-origin shrimp and prawns." *Id.* For example, ORR noted that AHSTEC "accurately identifies that 'the revised public versions now make clear that certain claims made by MPG regarding the sufficiency of its internal control system may be tested for reliability against the information" MPG had already submitted. *Id.* (quoting AHSTEC Written Argument at 3). Specifically, although AHSTEC argued that the "brand names, accounted for in the product description field of {MPG's} records, should be examined," ORR found MPG's argument to be more compelling that the "XH" designation "is the most important factor throughout the production process to segregate imported and domestic shrimp." *Id.* (citing MPG Resp. to AHSTEC's Written Argument at 9-10 (Sept. 6, 2022) (P.R. 280)). According to MPG, "certain brand names are sent to multiple markets, therefore it is not as simple as AHSTEC would suggest to track the shrimp using brand names." *Id.*

In any event, CBP tested AHSTEC's theory that brand names could be an additional way to track shrimp, and determined that it was "unable to find a discrepancy to support the argument that Indian-origin comingled shrimp is being transshipped to the U.S. customs territory." *Id.* For example, the [        ] and [        ] brand names contain imported Indian-origin

shrimp that go to non-U.S. markets, and another specific brand name, [▮▮▮▮▮▮], appears in

"Exhibit 36 for an export sale to [▮▮▮▮] and the information for the export sale listed in

Exhibit 36 appears to match the information included in the production documents of Exhibit 30,

which listed imported Indian-origin shrimp comingled with Vietnamese-origin shrimp."  *Id.* at 4-

5.  Thus, CBP determined that substantial evidence supports MPG's "contention that its tracing

system was sufficient at ensuring that imported Indian-origin shrimp is used to fulfill orders only

to other countries outside of the U.S. customs territory."  *Id.* at 5.

      Moreover, CBP noted that the "record evidence does not illustrate any other instances of

exports of Indian-origin shrimp and prawns to the United States occurring during the period of

investigation."  *Id.*  For as CBP explained, there was only one export sale to [▮▮▮▮▮▮▮]

during the investigation, which was "[▮▮▮▮▮▮▮] of Indian-origin shrimp out of a total of

[▮▮▮▮▮▮▮▮] of shrimp and the rest of the shrimp in the sale was from Vietnam."  *Id.*

n.25.  Rather, "this single mistake—for which {MPG} was able to trace origin down to the

[▮▮▮▮▮]—highlights the reliability of {MPG's} tracing system."  *Id.*  As such, CBP

declined to rely on the clerical error statutory exception in its conclusion.  *Id.*  And also, "in {its}

view, a single [▮▮▮▮▮▮] error, by one production worker, does not amount to a pattern of

negligent conduct as described in 19 U.S.C. § 1517(a)(5)(B), nor does it demonstrate substantial

evidence of evasion."  *Id.*  Thus, CBP declined to find that "one instance of a minimal quantity

of Indian-origin product entering the United States, which was discovered and revealed by MPG

itself, {could} constitute substantial evidence."  *Id.* at 5.

## ARGUMENT

### I.    Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence means evidence that a "reasonable mind might accept as adequate to support a conclusion." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

### II.    CBP's Remand Redetermination Complies With The Court's Remand Order

CBP adhered to this Court's Remand Order and acted in accordance with the law.  Consistent with the Court's opinion, (1) CBP complied with the public summary requirement set forth in 19 C.F.R. § 165.4, and afforded the parties an opportunity to present arguments based on that information, and (2) ORR made its negative final determination of evasion based on reviewing the entire record transmitted from TRLED to ORR.  *AHSTEC*, 578 F. Supp. 3d at 1317-21.

First, CBP complied with the public summary requirement set forth in 19 C.F.R. § 165.4. On remand, CBP issued a letter to interested parties requiring them to submit revised public versions of certain business confidential documents.  Remand Redetermination at 8.  CBP requested that the revised public versions contain public summaries of the business confidential

information with sufficient detail to allow for reasonable understanding of the redacted

information.  *Id.*  After gathering public summaries and determining that the summaries

complied with the regulations, CBP accepted both the confidential and revised public versions of

documents the parties submitted.  *Id.* at 15-21.

CBP also issued revised public versions of eight documents that it had previously placed

on the record, as well as public summaries of an additional two documents that had been

inadvertently omitted from the record.  *See id.* at 23.  In each document, CBP summarized

business confidential information with reasonable specificity and in a manner that permits a

reasonable understanding of the document.  *Id.* at 23-24.  Thus, CBP complied with the public

summary requirement set forth in 19 C.F.R. § 165.4.

Moreover, CBP allowed the parties to submit rebuttal information in response to revised

public versions of documents placed on the administrative record, but cautioned that it "would

not accept any information or comments which were not related to the revised public versions of

documents."  *Id.* at 11.  Only AHSTEC timely submitted rebuttal information, which included

information obtained from the U.S. Patent and Trademark Office (PTO) Trademark Electronic

Search System (TESS).  *Id.* at 12.  Finally, the parties also commented on the draft remand

results.  *See* Remand Redetermination at 28-32.

Second, as directed by the Court, ORR made "a determination as to evasion that is based

on a review of the entire record and in compliance with CBP's procedural regulations."

*AHSTEC*, 578 F. Supp. 3d at 1321; ORR Remand Redetermination.  Indeed, TRLED stated on

several occasions in the remand redetermination that it transmitted the entire record, including

new documents submitted on the remand record, to ORR for its *de novo* review.  Remand

Redetermination at 5-6, 30, 35.  ORR also listed the specific documents it relied upon in its *de novo* review upon remand.  ORR Remand Redetermination at 1-2.

ORR's continued reversal of TRLED's determination of evasion is supported by substantial evidence and in accordance with law because ORR determined that the record evidence was inconclusive to demonstrate that MPG's entries to the customs territory of the United States during the period of investigation contained Indian-origin shrimp, other than one acknowledged *de minimis* entry, which MPG self-identified.  *See generally* ORR Remand Redetermination.  In its decision reversing TRLED's finding of evasion, although TRLED no longer applied an adverse inference on remand because MPG had "cooperated with the remand proceeding to the best of its ability," Remand Redetermination at 30, ORR explained that TRLED continued to primarily rely on MPG's inability to produce the specifically requested documents including a "bill of lading report" (*i.e.* tracing imported shrimp's bills of lading to specific exported shrimp) to conclude that MPG could not adequately trace comingled shrimp. ORR Remand Redetermination at 2-3.  ORR determined that such a myopic approach was unnecessary because substantial evidence supports ORR's determination that there was *other* record evidence that demonstrates the same type of "provenance tracing" from purchase order to entry into the customs territory of the United States.  *Id.*  To wit, MPG produced eight sample traces and also provided four SIMP audits that demonstrated MPG could sufficiently and reliably do provenance tracing.  *Id.*

ORR also reasonably rejected AHSTEC's argument that brand names could undermine MPG's assertion that it did not comingle Indian shrimp with Vietnamese shrimp destined for U.S. markets, because, as MPG explained, certain brand names are sent to multiple markets.  *Id.* at 4.  And for one brand name, [ ▮▮▮▮▮▮ ], where AHSTEC asserted that it did not appear to

have a corresponding entry on Exhibit 36, which demonstrates export sales to non-U.S. countries, ORR explained that was incorrect. *Id.* at 4-5. For example, [ ▮▮▮ ] "does appear in Exhibit 36 for an export sale to [ ▮▮▮ ]" and the information for that sale "appears to match the information listed in the production documents of Exhibit 30, which listed imported Indian-origin shrimp comingled with Vietnamese-origin shrimp." *Id.*

Supporting its determination that MPG had adequately demonstrated the effectiveness of its internal tracking system and accounting reconciliation, ORR explained that MPG had identified one shipment to the United States customs territory that erroneously contained a *de minimis* amount of Indian-origin shrimp comingled with Vietnamese-origin shrimp. *See id.* at 5. ORR determined that substantial evidence supports MPG's assertion that the "XH" designation "is the most important factor throughout the production process to segregate imported and domestic shrimp." *Id.* Moreover, it was this "XH" tracing mechanism wherein MPG discovered that one shipment mistake was made with an export sale containing [ ▮▮▮ ] of Indian-origin shrimp out of a total of [ ▮▮▮ ] of Vietnamese shrimp sent to [ ▮▮▮ ]. *Id.* n.25. ORR continued to credit MPG for voluntarily disclosing this shipment, and further determined that "this single mistake" actually "highlights the reliability" of MPG's tracing system. *Id.*

As a result, ORR properly determined that the record did not contain substantial evidence of evasion and "{w}hen the record herein is considered as a whole, *one* instance of a minimal quantity of Indian-origin product entering the United States, which was discovered and revealed by MPG itself, does not constitute substantial evidence." *Id.* at 5 (emphasis added); *see also AHSTEC*, 578 F. Supp. 3d at 1317 (citing 19 U.S.C. § 1517(c)(1)(A)).

**III.**   **CBP's Treatment Of Business Confidential Information Is Lawful**

AHSTEC challenges CBP's use of public summaries to protect certain business confidential information under 19 C.F.R. § 165.4.  AHSTEC Cmts. at 17-20.  Specifically, AHSTEC argues that CBP did not provide a specific rationale for continuing to keep the location of the sale and the treatment of the volume of the sale as confidential information.  *Id.*  AHSTEC also points to an instance in the ORR Remand Determination where the volume of the shipment was redacted, but was not redacted in the public draft remand redetermination, and argues that this error means that AHSTEC can no longer even quote from its comments on the draft remand results without disclosing confidential business information.  *Id.* at 19-20.  These arguments do not pass muster.

First, neither the EAPA statute or regulations, nor the Court's remand order, permits, let alone requires, CBP to make substantive business confidential information public.  To the contrary, 19 C.F.R. § 165.4 requires CBP to withhold business confidential information submitted during an EAPA investigation (where, as here, certain requirements are met).  19 C.F.R. § 165.4(a).  In this case, under 19 C.F.R. § 165.4, and with certain exceptions, interested parties submitted information to CBP and requested that CBP treat parts of their submission as business confidential.  *See* Remand Redetermination at 6-7.  CBP then granted confidential treatment to the information over which the confidential treatment was sought because the information consisted of trade secrets and commercial or financial information obtained from any person.  *Id.* at 15-21; 19 C.F.R. § 165.4(a).  As CBP explained in the remand redetermination, "CBP has limited information that would allow it to *question* claims to confidential treatment by a third party and *relies* on the justification provided by the parties when determining whether to grant a claim to such confidential treatment under 19 C.F.R. § 165.4(a)."

Remand Redetermination at 18 (emphasis added); *see also Leco Supply Inc. v. United States*, No. 21-00136, Slip Op. 23-8 at 26 (Ct. Int'l Trade Feb. 1, 2023) (explaining that because CBP is subject to the Trade Secrets Act, 18 U.S.C. § 1905, "CBP must be afforded some discretion to determine what information qualifies as confidential.").

Notably, AHSTEC does not argue that the destination of the single shipment or the volume of the shipment is *not* business proprietary information, merely that CBP "inadequately" addressed its arguments why this information should remain confidential.  AHSTEC Cmts. at 18; *see* 19 C.F.R. § 165.4(c) (describing information that is not confidential).  Neither does AHSTEC argue that the public summaries were otherwise inadequate.  AHSTEC Cmnts. at 18-19.  Moreover, AHSTEC does not claim, nor can it, that it was harmed with the volume of the shrimp and the destination kept confidential because it had access to *all* proprietary information pursuant to the JPO.  Remand Redetermination at 12; *see also* Am. Protective Order (June 9, 2022), ECF No. 63.  Merely because it prefers that that information be publicly released, does not confer upon it the right to demand that another party's confidential information be made public.  *See* 19 C.F.R. § 165.4(a).

Indeed, although AHSTEC argued in its public remand comments that the "location of the sale is central" because "if the location implicated is to a place where {MPG} directed multiple sales during the period of investigation, the explanation merits greater scrutiny," AHSTEC Cmnts. at 18 (citing AHSTEC Remand Comments at 24), this ignores the fact that AHSTEC *knew* the U.S. customs territory was [          ] by virtue of the Court's protective order extending to the remand proceedings.  Remand Redetermination at 12; *see also* Am. Protective Order; *Leco Supply Inc.*, Slip Op. 23-8 at 26 ("Additionally, Leco received access to the confidential information in this litigation and has not identified any information or arguments

that it was unable to present at the administrative level.").  As to the volume of the shipment, AHSTEC offers no compelling reason for why such information, which is routinely treated as business confidential, would somehow lose its confidentiality, when the record is clear from the public summary that the amount was "minimal," and MPG requested confidential treatment of that information.  ORR Remand Redetermination at 5; *see* 19 C.F.R. § 165.4(a).  Moreover, the pertinent inquiry to assess CBP's compliance with the regulations is not whether AHSTEC subjectively feels that some information should be made public, but simply whether the public summary of confidential business information contains "sufficient detail to permit a reasonable understanding of the substance of the information."  19 C.F.R. § 165.4.  CBP made the determination that the public summaries met the standards outlined in 19 C.F.R. § 165.4, and AHSTEC has not demonstrated to the contrary that the underlying confidential information should *itself* be made public. *See* Remand Redetermination at 15-18 (describing different types of business confidential information and concluding for each type of information that the public summaries "included reasonable notice of the contents of the confidential information").

    Finally, to the extent that AHSTEC claims that CBP mistakenly redacted the volume of the shipment in the ORR remand redetermination, AHSTEC Cmnts. at 19-20, that does not undermine CBP's remand redetermination where CBP otherwise referred to the single instance of evasion as being "one instance of a minimal quantity of Indian-origin product entering the United States."  ORR Remand Redetermination at 5.  "It is well settled that principles of harmless error apply to the review of agency proceedings."  *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996); *see Prime Time Com., LLC v. United States*, Appeal No. 21-1783, 2022 WL 2313968, at *5, *7 (Fed. Cir. June 28, 2022) (concluding that "Commerce's failure to consider {the appellant's} efforts to cooperate as an interested party

was harmless error" because the failure "would not disturb" the antidumping duty rate or "entitle

{the appellant} to a separate rate").  In sum, CBP's bracketing of the volume shipped to a U.S.

customs region in the single instance of MPG comingling Indian and Vietnamese-origin shrimp

in product entering the United States, together with the fact that "kilogram" was not bracketed in

the public version of the draft remand results, is not evidence that fairly detracts from CBP's

conclusion because its reasoning and conclusions would not be affected by the one instance of

alleged over-bracketing.  *See generally* Remand Redetermination; ORR Remand

Redetermination.

IV.    <u>ORR Correctly Determined That There Was Not Substantial Evidence Of Evasion</u>

AHSTEC argues that "there is no dispute" that MPG entered Indian-origin shrimp into

U.S. customs territory during the period of investigation, and that this "uncontested" evidence "is

sufficient to constitute substantial evidence justifying an affirmative determination of evasion."

AHSTEC Cmnts. at 20-22.  Because ORR determined that the single entry was not a clerical

error, AHSTEC argues that it was clear error for ORR to inappropriately read a requirement into

the statute that the record evidence must "support a finding of *substantial evasion*."  *Id.* at 22

(emphasis in original).  AHSTEC also argues that MPG lacks meaningful controls over its

production process and that MPG "has been incapable of identifying verifiable procedures that

prevent the use of Indian-origin shrimp in its production for U.S. sales."  *Id.* at 28.  These

arguments are meritless.

Under EAPA, "{a} determination of evasion requires three elements: (1) entering

covered merchandise into the United States; (2) by means of any document or data or

information, written or oral statement, or act that is material and false, or any omission that is

material; and (3) that results in any applicable cash deposit or other security being reduced or not

applied to the merchandise." *Diamond Tools Tech. LLC v. United States*, No. 20-00060, 2022 WL 17730761, at *3 (Ct. Int'l Trade Dec. 16, 2022) (citing 19 U.S.C. § 1517(a)(5)(A); *All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1241 (Ct. Int'l Trade 2022)).  The statute does not define what amount or volume of covered merchandise would be considered "material" and this Court has not yet had occasion to determine whether a *de minimis* entry would be considered material.  *But see Aspects Furniture Int'l, Inc. v. United States*, No. 20-03824, 2022 WL 17249645, at *10 (Ct. Int'l Trade Nov. 28, 2022) (acknowledging that in destroying import documents, "Aspects does not contest the second factor that its entries were made by materially false statements or acts or material omissions.").

In this case, ORR considered the entire record and determined that there was only *one* instance when MPG exported Indian-origin shrimp and prawns to the United States during the period of investigation and determined that this did not constitute "substantial evidence of evasion."  ORR Remand Redetermination at 5.  Rather than create a standard of "substantial evasion" as AHSTEC suggests, AHSTEC Cmnts. at 22, ORR reasonably determined that "one instance of a minimal quantity of Indian-origin product entering the United States, which was discovered and revealed by MPG itself, does not constitute substantial evidence."  ORR Remand Redetermination at 5.

Also, AHSTEC's interpretation that *any* mistaken importation of covered merchandise, even a *de minimis* amount, somehow constitutes a "material" violation would be akin to interpreting EAPA as a strict liability statute, which this Court recently rejected.  *See Diamond Tools Tech.*, 2022 WL 17730761, at *8.  In other words, ORR's determination is reasonable that a single export sale to a U.S. customs territory of [ ████████ ] of Indian-origin shrimp out of

a total of [          ] of shrimp is *de minimis* and does not constitute substantial evidence of evasion.  ORR Remand Redetermination at 5 & n.25.

      Although AHSTEC suggests that there could be other evasion on the record, it fails to point to any *other* instance where Indian-origin shrimp entered the United States.  Indeed, although it resurrects its argument that the [      ] brand name, which comingles Indian- and Vietnamese-origin shrimp, may have been used for a different U.S. sale, AHSTEC Cmnts. at 25, this is only mere speculation and contradicts record evidence.  For ORR explained in the remand redetermination that it examined Exhibit 36 for the corresponding export sale entry for the brand name, and determined that the sale was to [    ].  ORR Remand Redetermination at 5.

      Moreover, AHSTEC's arguments that MPG's "XH" designation to denote comingled shrimp insufficiently tracks the merchandise, AHSTEC Cmnts. at 24-26, is also baseless and speculative.  ORR explained that not only did the "XH" marking appear sufficient to trace the provenance of sales via eight sample tracings, but also that "four SIMP audits indicated that {MPG} was able to provide provenance tracing of the shrimp and prawns contained in each audited entry from harvest at farms located in Vietnam to point of entry into the U.S. customs territory."  ORR Remand Redetermination at 3-4.

      Finally, ORR explained why it did not use the "clerical error" exception to the statute in the one mistaken shipment, because the record evidence "seems to suggest that the error was one of fact, rather than the result of a transcription or other similar error."  *Id.* at 5 n.25; *see also* 19 U.S.C. § 1517(a)(5)(B)(i) (describing a clerical error).  And based on the one error, "by one production worker," ORR also reasonably determined that that "does not amount to a pattern of negligent conduct{.}"  ORR Remand Redetermination at 5 n.25; *see also* 19 U.S.C.

§ 1517(a)(5)(B)(ii) (explaining that a clerical error that is "part of a pattern of negligent conduct on the part of that person" may nonetheless be deemed evasion).

Thus, substantial evidence supports a negative final determination of evasion as to MPG. *See* ORR Remand Redetermination; *Downhole Pipe*, 776 F.3d at 1374.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain CBP's negative evasion determination on remand and enter final judgment in favor of the United States.

<div style="margin-left: 40%;">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Director

</div>

OF COUNSEL:
JENNIFER L. PETELLE
Attorney
U.S. Customs and Border Protection
  Office of the Chief Counsel

<div style="margin-left: 40%;">

/s/ Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov

</div>

February 2, 2023                            Attorneys for Defendant

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief contains 8,235 words.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

/s/*Kara M. Westercamp*
KARA M. WESTERCAMP

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |  |
|---|---|---|
| AD HOC SHRIMP TRADE ENFORCEMENT COMMITTEE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) | Court No. 21-00129 |
| Defendant, | ) ) | |
| and | ) ) | |
| MINH PHU SEAFOOD JOINT STOCK COMPANY and MSEAFOOD CORPORATION, | ) ) | |
| Defendant-intervenors. | ) ) | |

ORDER

Upon consideration of the U.S. Customs and Border Protection's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety.

Dated _____
      New York, N.Y.                         _____
                                            Judge