Slip Op. 23-61

## UNITED STATES COURT OF INTERNATIONAL TRADE

AD HOC SHRIMP TRADE
ENFORCEMENT COMMITTEE,

      Plaintiff,

      v.

UNITED STATES,

      Defendant,

      and

MINH PHU SEAFOOD JOINT STOCK
COMPANY and MSEAFOOD
CORPORATION,

      Defendant-Intervenors.

Before: Claire R. Kelly, Judge

Court No. 21-00129
PUBLIC VERSION

## OPINION

[Sustaining U.S. Customs and Border Protection's remand determination of non-evasion of antidumping duties on frozen warmwater shrimp from India.]

Dated: April 26, 2023

Nathaniel Maandig Rickard and Zachary J. Walker, Picard, Kentz & Rowe, LLP, of Washington, D.C., for plaintiff Ad Hoc Shrimp Trade Enforcement Committee.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the brief was Jennifer L. Petelle, Attorney, Office of the Chief Counsel, Enforcement and Compliance, U.S. Customs and Border Protection.

<u>Donald B. Cameron</u>, <u>Julie C. Mendoza</u>, <u>R. Will Planert</u>, <u>Brady W. Mills</u>, <u>Mary S. Hodgins</u>, <u>Eugene Degnan</u>, <u>Edward J. Thomas III</u>, <u>Jordan L. Fleischer</u>, and <u>Nicholas C. Duffey</u>, Morris, Manning & Martin, LLP, of Washington, D.C., for defendant-intervenors Minh Phu Seafood Joint Stock Company and MSeafood Corporation. Also on the brief was <u>William H. Barringer</u>, IDVN Lawyers (Viet Nam), of Washington, D.C.

Kelly, Judge:  Before the court is the U.S. Department of Customs and Border Protection's ("CBP")[1] remand determination pursuant to the court's remand order. <u>See</u> Remand Redetermination, Nov. 21, 2022, ECF No. 68 ("Remand Results"); <u>Ad Hoc Shrimp Trade Enf't Comm. v. United States</u>, 578 F. Supp. 3d 1310, 1322 (Ct. Int'l Trade 2022) ("<u>Ad Hoc Shrimp I</u>").  The Ad Hoc Shrimp Trade Enforcement Committee ("AHSTEC") challenged the administrative determination made by the CBP Office of Regulations and Rulings ("ORR") in an administrative proceeding conducted pursuant to the Enforce and Protect Act of 2015, 19 U.S.C. § 1517 ("EAPA").  Minh Phu Seafood Joint Stock Company and MSeafood Corporation (collectively "MSeafood") intervened in this action.  Order, Apr. 2, 2021, ECF No. 12.  For the following reasons, the court sustains the determinations of CBP's ORR on remand.

---

[1] Two CBP entities are involved in EAPA determinations.  19 U.S.C. § 4371 creates the Trade Remedy Law Enforcement Division ("TRLED"), which directs enforcement activities concerning evasion.  19 U.S.C. § 4371(a)(3)(A)–(E).  Customs regulations specify that CBP will make a determination based on substantial evidence as to whether covered merchandise was entered into the United States through evasion, 19 C.F.R. § 165.27, and that requests for administrative review of the initial determination of evasion shall be made to the Office of Regulations and Rulings ("ORR"), 19 C.F.R. § 165.41(a).  The decision of ORR is final unless appealed.  19 C.F.R. § 165.46(a).

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to CBP, see Ad Hoc Shrimp I, 578 F. Supp. 3d at 1314–17, and now recounts only those facts relevant to the court's review of the Remand Results.   On February 1, 2005, Commerce imposed antidumping duty ("ADD") orders on certain frozen warmwater shrimp from India and Vietnam. Certain Frozen Warmwater Shrimp from India, 70 Fed. Reg. 5,147 (Dep't Commerce Feb. 1, 2005) (Notice of Amended Final Determination of Sales at Less Than Fair Value and [ADD] Order) ("India Order"); Certain Frozen Warmwater Shrimp from [Vietnam], 70 Fed. Reg. 5,152 (Dep't Commerce Feb. 1, 2005) (Notice of Amended Final Determination of Sales at Less Than Fair Value and [ADD] Order) ("Vietnam Order").   In the less than fair value investigation of certain frozen warmwater shrimp from Vietnam, Minh Phu Seafood Corporation was a mandatory respondent. See Vietnam Order, 70 Fed. Reg. at 5,153–55.   On July 22, 2016, Commerce revoked the Vietnam Order with respect to Minh Phu Seafood Corporation and its affiliates, allowing Minh Phu Group to enter certain frozen warmwater shrimp without ADDs provided the shrimp are "produced and exported by the Minh Phu Group."[2]   Certain

---

[2] "Minh Phu Group," as used in the Revocation Order, refers to 15 entities including Minh Phu Seafood Joint Stock Company.   See Revocation Order, 81 Fed. Reg. at 47,756 n.9.   MSeafood Corporation, also referred to as MSeafood US, is the importer of record and a party to this action.   Remand Results at 1.   Minh Phu Seafood Joint

(footnote continued)

Frozen Warmwater Shrimp from [Vietnam], 81 Fed Reg. 47,756, 47,757–58 (Dep't

Commerce July 22, 2016) (partial revocation of ADD order) ("Revocation Order").

Minh Phu Group instituted a tracing system ensuring that all the shrimp it exports

to the United States originate from Vietnam.  See Minh Phu Seafood Corporation's

Voluntary EAPA Submission at 4–7, CD 7, CR1056–59 (Jan. 31, 2020).[3]  On July 17,

2019, AHSTEC alleged to CBP pursuant to 19 C.F.R. § 165.11 that MSeafood was

evading the India Order.  EAPA Allegation Re MSeafood Corporation at 3–6, PD 2,

PR8–11 (July 17, 2019).

On July 17, 2019, AHSTEC filed its Enforce and Protect Act ("EAPA")

allegation.  AHSTEC's EAPA Allegation at 1, PD 2, PR2 (July 17, 2019).  Between

August and October 2019, AHSTEC supplemented its allegation.  AHSTEC's

Supplemental Information, PD 8 (Oct. 8, 2019); AHSTEC's Supplemental

Information, PD 7 (Sept. 30, 2019); AHSTEC's Supplemental Information, PD 4 (Aug.

30, 2019).  In September 2019, Minh Phu Seafood Joint Stock Company submitted a

---

Stock Company is the parent company of MSeafood Corporation.  Disclosure of Corp.
Affiliations and Financial Interest, Apr. 1, 2021, ECF No. 10.  MSeafood US is
affiliated with Minh Phu Seafood Export Import Corporation and Minh Phu Seafood
Corporation.  Notice of Determination as to Evasion at 1 n.1, CD 217 (Oct. 13, 2020)
("TRLED Initial Determination").  MSeafood Corporation and its affiliated companies
submitted the request for administrative review.  Remand Results at 1 n.1.  MSeafood
Corporation and its affiliated companies are collectively referred to as the "Minh Phu
Group".
[3] All citations to documents in the administrative record are to those in EAPA Case
No. 7356.  The Joint Appendix contains the referenced Public Documents ("PD") and
Confidential Documents ("CD").  See ECF Nos. 83–86.

voluntary response to CBP.  Minh Phu Seafood Corporation's Voluntary EAPA Submission, CD 7, CR1053 (Sept. 13, 2019).  On October 9, 2019, TRLED initially determined AHSTEC submitted sufficient information to reasonably suggest MSeafood was evading the India Order and initiated an EAPA investigation. Initiation of Investigation of MSeafood Corp. at 4–5, PD 10, PR748–49 (Oct. 9, 2019).

On January 5, 2020, TRLED commenced a formal investigation into MSeafood and imposed interim measures against MSeafood's imports into the United States, including requiring MSeafood to pay cash deposits pursuant to the ADD order on frozen shrimp from India.  Notice of Initiation of Investigation and Interim Measures at 1, 7, CD 6, CR1027, CR1033 (Jan. 5, 2020) ("Imposition of Interim Measures"). TRLED also suspended liquidation on all unliquidated entries for the period of investigation, i.e., those entries that had entered one year prior to the investigation and on any entry that had entered on or after October 9, 2019, the date of the investigation.  See id. at 7, 7 n.45.  TRLED preliminarily determined that a reasonable suspicion existed that Minh Phu Group had exported Indian-origin shrimp to the United States as Vietnam-origin shrimp, and thus had evaded ADDs. See id. at 4.  TRLED based its determination upon Minh Phu Group's history of orders exceeding its capacity, data showing it imported large volumes of frozen shrimp from

India, and its history of using a significant amount of Indian-origin shrimp in its raw

material processing.[4]  Id. at 6–7.

Between January and March 2020, TRLED issued requests for information to

which both Minh Phu Seafood Joint Stock Company and MSeafood Corporation

responded and on which ASHTEC commented.  See Req. for Information to Minh Phu

Seafood Joint Stock Co., CD 8 (Feb. 25, 2020); Req. for Information to Mseafood Corp.,

CD 9 (Feb. 25, 2020); Mseafood's RFI Resp., CD 229 (Mar. 19, 2020); Minh Phu

Seafood Joint Stock's RFI Resp., CD 330 (Part 1) (Mar. 23, 2020); AHSTEC's

Comments on Mseafood's Mar. 19, 2020 Resp., PD 18 (Mar. 25, 2020); AHSTEC's

Comments on Minh Phu Seafood Joint Stock Co.'s Mar. 23, 2020 Resp., PD 19 (Mar.

31, 2020).

TRLED issued supplemental questionnaires to Minh Phu Joint Stock

Company and Mseafood Corporation, and they responded.  See Mseafood's RFI Resp.

at 1, CD 213, CR33683 (June 11, 2020); Mseafood's RFI Resp. at 1, CD 62, CR29305

(June 3, 2020).  In September 2020, Minh Phu Group explained that it discovered

that one of its shipments sent to United States customs territory contained Indian-

origin shrimp and explained how the error occurred.  Minh Phu Group Written Arg.

at 11 n.29, CD 214, CR36375 (Sept. 14, 2020).  On October 13, 2020, TRLED issued

---

[4] TRLED stated, "Minh Phu has a known history of using [[                              ]]
in its raw material processing" and the value of shipments for the period under
consideration was worth $ [[               ]].  Imposition of Interim Measures at 6–7.

a decision imposing an "adverse inference"[5] against MSeafood for failing to produce reports tracking Minh Phu Group's shipments of shrimp imported into Vietnam and therefore concluding that Mseafood entered Indian-origin shrimp into the United States, evading ADDs in violation of the India Order.  Notice of Determination as to Evasion at 9–10, CD 217, CR36395–96 (Oct. 13, 2020) ("TRLED Initial Determination").  MSeafood appealed that decision to ORR on November 10, 2020. Minh Phu Req. for Administrative Review at 1, CD 218, CR36398 (Nov. 10, 2020). On February 11, 2021, ORR issued its decision, concluding that TRLED had erred in applying an adverse inference against MSeafood, and that there was insufficient information on the record to find that MSeafood had evaded the ADD order by entering Indian-origin shrimp into the United States.  ORR Administrative Review at 8–10, CD 219, CR36443–45 (Feb. 11, 2021) ("ORR Initial Determination").

In Ad Hoc Shrimp I, AHSTEC challenged: (i) CBP's alleged failure to provide and require adequate public summaries of confidential information; (ii) ORR's alleged failure to review the entire administrative record in support of its decision; and (iii) ORR's determination of non-evasion as not based on the record.  [AHSTEC]'s Mem. Supp. Mot. J. Agency R. at 31–40, Aug. 30, 2021, ECF No. 33 ("Pl. Original Br."); see Ad Hoc Shrimp I, 578 F. Supp. 3d at 1317.  The court remanded CBP's final

---

[5] If CBP finds a party has failed to cooperate, it may "use an inference that is adverse to the interests of that party or person in selecting from among the facts otherwise available to make the determination."  19 U.S.C. § 1517(c)(3)(A).

determinations, declining to consider ORR's substantive findings until the record was

complete.  Ad Hoc Shrimp I, 578 F. Supp. 3d at 1313–14, 1321–22.  Specifically, the

court remanded the TRLED and ORR decisions, directing CBP to: (i) review the entire

administrative record, including documents collected during the investigation but not

previously sent to the ORR prior to its initial review,[6] id. at 1317–19; (ii) further

explain or reconsider why CBP accepted MSeafood's assertions regarding confidential

information or how CBP evaluated the sufficiency of public summarization, id. at

1319–21; and (iii) determine whether there was evasion based on a review of the

entire administrative record, in compliance with CBP's EAPA regulations, id. at 1321.

Given the deficiencies in the record, the court did not consider ORR's substantive

findings.  Id.

CBP filed the Remand Results on November 21, 2022.  On remand, TRLED

explains how it placed revised public versions, including summaries of confidential

---

[6] Prior to remand, TRLED failed to forward approximately 17,000 pages of the record including Minh Phu Seafood Joint Stock Company and MSeafood Corporation's entire responses to TRLED's initial RFIs.  Id. at 1318; see Supplemental Index of Administrative Record, June 30, 2021, ECF No. 30-1 (pertaining to CD 220–330).  TRLED also inadvertently failed to send to ORR the following documents:

> (1) sales reports; (2) Requests for Information (CBP Forms 28) sent to importer MSeafood and to manufacturer Minh Phu Joint Seafood Joint Stock Company; (3) inventories of food for raising shrimp and for shrimp seed; (4) lists of employees, direct labor working hours, and payrolls; (5) AHSTEC Part 165 Investigation submission of new factual information (NFI); and (6) extension requests and responses from TRLED.

Remand Results at 5.

**PUBLIC VERSION**

documents, on the administrative record after providing both parties the opportunity to comment during the remand proceeding, and it affirms its prior determination of evasion based on substantial evidence.  Id. at 6–28, 32–34.  ORR reviewed the previously omitted information and additional information placed on the record during the remand proceeding and determines that substantial evidence supports a finding of non-evasion on the part of MSeafood.  Remand Results at 4–6, Addendum at 2–6.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 517(g) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g) (2018)[7] and 28 U.S.C. § 1581(c).  Section 1581(c) grants the Court jurisdiction over actions contesting EAPA determinations made pursuant to 19 U.S.C. § 1517.

A party may seek judicial review of the determinations made under 19 U.S.C. § 1517(c) and (f) in the United States Court of International Trade.  19 U.S.C. § 1517(g)(1).  Subsection (c) provides the "Commissioner shall make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion."  Id. § 1517(c)(1)(A).  Subsection (f) allows a party to appeal a decision to the Commissioner

---

[7] Further citations to the Tariff Act of 1930 will be to the relevant sections of the U.S. Code, 2018 edition.

for de novo review of its initial decision, meaning applying the same substantial evidence standard.  Id. § 1517(f)(1).

Either party may appeal both determinations to this Court.  Subsection (g) allows parties to "seek judicial review of the determination under subsection (c) and the review under subsection (f) in the United States Court of International Trade to determine whether the determination and review is conducted in accordance with subsections (c) and (f)."  19 U.S.C. § 1517(g)(1).  However, this Court shall determine "(A) whether [CBP] fully complied with all procedures under [19 U.S.C. § 1517(c) and (f)]; and (B) whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  19 U.S.C. § 1517(g)(2)(A)–(B).

It is unclear why Congress chose to provide for review of a decision under subsection (c) even if the determination has been reversed pursuant to review under subsection (f).  Where a determination under (c) is appealed and reversed under (f), § 1517(c) would appear to have no effect, and it is not clear why the decision would give rise to any case or controversy.  If the appeal provided for under subsection (f) has any meaning, it supplants the decision made pursuant to subsection (c).  No party has raised this issue.  Although the lack of a case or controversy would deprive this Court of jurisdiction, there is a decision under subsection (f) which creates a case or controversy for the court to review.  Therefore, the court will address both challenges, as directed by Congress.

Further, that the agency bases its decision on substantial evidence while the court reviews the agency's determinations to assess whether they are arbitrary and capricious is unusual. Nonetheless, both standards require an assessment based on a reasonableness standard.  See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys., 745 F.2d 677, 683–84 (D.C. Cir. 1984) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial . . ." (emphasis in the original)).

## DISCUSSION

In Ad Hoc Shrimp I, the court remanded to CBP to (i) allow for consideration of the entire administrative record; (ii) explain or reconsider its treatment of confidential information; and (iii) make a determination as to evasion based on the entire record and in compliance with its regulations.  Ad Hoc Shrimp I, 578 F. Supp. 3d at 1318, 1320–21.  CBP complied with the court's order by compiling the entire record on remand.  Further, although the court finds CBP's explanation of its treatment of confidential information inadequate, this inadequacy is harmless given the judicial protective order issued in the case.  Finally, the court concludes TRLED's determination of evasion is unreasonable and ORR's determination of non-evasion is reasonable on this record.

## I.     ORR's Review of the Administrative Record

On remand, AHSTEC challenges ORR's explanation of its redactions and summarizations as insufficient.  [AHSTEC]'s Confidential Comments on [Remand Results] at 17–20, Jan. 3, 2023, ECF No. 76 ("Pl. Br."). AHSTEC argues that ORR fails to provide a "reasoned explanation" for its treatment of confidential information or for the public summarization of the information deemed confidential.  Id. at 20. Defendant and MSeafood argue that CBP complies with 19 C.F.R. § 165.4 and the court's order on remand.  Def.'s Resp. to Comments Regarding the [Remand Results] at 19–20, Feb. 2, 2023, ECF No. 78 ("Def. Br."); Comments of [MSeafood] Opp. [Pl. Br.] at 13–17, Feb. 3, 2023, ECF No. 81 ("Def.-Int. Br.").

### A.     Compiling of the Record

Under EAPA when an interested party requests administrative review of a TRLED determination, ORR reviews the determination de novo.  19 U.S.C. § 1517(f)(1).  It must "review the entire administrative record upon which the initial determination was made . . . ."  19 C.F.R. § 165.45.  A determination not based on the whole record should be remanded for reconsideration.  See JSW Steel (USA) Inc. v. United States, 466 F. Supp. 3d 1320, 1328–29 (Ct. Int'l Trade 2020) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419 (1971)) (remanding for supplementation of the record in light of evidence that documents considered by the agency were not included in the record).

On remand, TRLED complied with the court's order by forwarding the full administrative record to ORR for review.  TRLED forwarded to ORR the documents from the administrative record which had previously been omitted.  Remand Results at 5.  TRLED also sent the parties' additional submissions on remand to ORR.  Id. No party challenges CBP's compliance with the court's remand order to consider the entire administrative record.  See Pl. Br. at 4; Def. Br. at 9–10; Def.-Int. Br. at 5.

### B.     Treatment of Confidential Information

On remand, CBP's treatment of confidential information and explanations in response to the court's remand fall short of what the court ordered and expected. However, because the parties have been granted complete access to the record under a judicial protective order, CBP's actions do not affect the parties' ability to litigate their positions or the court's ability to review the determination. Therefore, CBP's failure to explain its treatment of submissions as confidential, while an error, is harmless.

CBP regulations contain procedures for the proper treatment of business confidential information from interested parties.  See 19 C.F.R. § 165.4(a).  Business confidential information includes "trade secrets and commercial or financial information."  Id.  A party must bracket any information it seeks to protect and explain why the party believes the information to be confidential.  Id. § 165.4(a)(1) ("The submitting interested party must also provide with the claimed business confidential information an explanation of why each item of bracketed information is

entitled to business confidential treatment"). The party must also submit a public

version of the document containing a summary of the bracketed information. Id.

§ 165.4(a)(2). The summary of the bracketed information must contain "sufficient

detail to permit a reasonable understanding of the substance of the information" or

otherwise "a full explanation of the reasons supporting" a claim that the bracketed

information cannot be publicly summarized. Id. CBP must reject a party's request

for business confidential treatment if the information does not meet these

requirements. Id. § 165.4(b).

In Ad Hoc Shrimp I, the court explained that:

> despite AHSTEC complaining in multiple submissions about the lack of
> public summarization and the inconsistent treatment of allegedly
> business confidential information, TRLED did not even mention the
> issue in the TRLED Decision, let alone explain how it complied with
> CBP's regulations. See generally TRLED Decision. AHSTEC
> repeatedly complained about inconsistent treatment of allegedly
> confidential information, claims that confidential information was not
> subject to public summarization when such information was
> summarized elsewhere in Minh Phu Group's submissions, and the terse,
> boilerplate explanations for why allegedly confidential information was
> not subject to public summarization. AHSTEC Resp. to MPG Voluntary
> Submission, 6–18; AHSTEC March 25th Resp., 4–12; AHSTEC March
> 31st Resp., 4–14; AHSTEC May 7th Rebuttal, 3–4; AHSTEC Written
> Arg., 4–7. Nowhere does TRLED or ORR address CBP's regulations
> governing public summarization, AHSTEC's specific complaints, or how
> CBP evaluated Minh Phu Group's treatment of purportedly confidential
> information, assertions that such information is not susceptible to public
> summarization, and explanations in support of those assertions. The
> court cannot evaluate CBP's action without any explanation of CBP's
> obligations with respect to allegedly confidential information or the
> reasons for CBP's decisions in this investigation. Therefore, the court
> remands the CBP Decisions for reconsideration or further explanation

       regarding confidential treatment and public summarization of allegedly confidential information.

578 F. Supp. 3d at 1321.

       CBP explains that, when it reopened the record on remand for the parties to revise their business confidential filings, it required the parties to justify their redactions and include public summaries consistent with 19 C.F.R. § 165.4.  Remand Results at 8.  CBP gave the parties an opportunity to submit written comments on whether the revised filings complied with 19 C.F.R. § 165.4.  Remand Results at 8–9.  Although AHSTEC challenged MSeafood's redactions, AHSTEC acknowledges MSeafood's public summaries were sufficient.  Id. at 17.  After allowing for comments and corrections, CBP determines that the parties' redactions and their public summaries are consistent with its regulation.  Id. at 15–24, 33–34.

       Although the parties agree the public summaries are adequate, nowhere does CBP explain how it determines the veracity of claimed confidentiality.  Instead CBP simply states it concluded that MSeafood had provided an adequate basis for requesting confidentiality.  Remand Results at 17.  CBP does not share with the court the basis for that conclusion, though it does cite MSeafood's submissions, which assert confidentiality.  Remand Results at 17 n.83.  For example, CBP cites to MSeafood's August 4, 2022, submission which itself references, inter alia, its January 31, 2020, submission.  See id.; Letter Re MPG Re-Revised Confidential and Public Versions, Attachment 1, at 3, PD 276, REMPV-3950 (Aug. 4, 2022).  In its August 4,

2022, submission, MSeafood explains that it reduced bracketing in its prior submission and that the justification for the remaining bracketed items can be found in that submission.  Letter Re MPG Re-Revised Confidential and Public Versions at 2, PD 276, REMPV-3942 (Aug. 4, 2022).  In that submission, MSeafood states that "it consists of trade secrets and commercial or financial information of MPG that is not available to the public in any form . . . ."  Id. at 4.  The January 31, 2020, cover letter and attachment describe "MPG's business, confidential and proprietary information relating to confidential production processes, confidential sales, import, export, and production data, confidential recordkeeping processes, confidential bank account information, confidential corporate structure of MPG, proprietary shareholder information, and/or proprietary affiliate information."  Voluntary Submission of Information at 6, PD 13, PR1009 (Sept. 13, 2019); see Re-Filing of Sept. 13, 2019 Submission at 1, PD 13, PR1000 (Jan. 31, 2020).

CBP fails to explain its determination to provide business confidential treatment to (1) the location of MSeafood's sale of Indian-origin shrimp, (2) the amount of Indian-origin shrimp contained in that sale, and (3) the word "kilogram" in the context of the level of detail Minh Phu Group used to trace its product.  See Pl. Br. at 18–20. Specifically, ORR bracketed the word "kilogram" in the Remand Results, even though TRLED had written the same phrase without brackets in its draft remand determination.  See Remand Results, Addendum at 5 n.25 (business proprietary information version); TRLED – Draft Remand Determination at 4 n.16,

PD 281 (May 23, 2022); see also Apple Inc. v. Samsung Electronics Co., Ltd., 727 F.3d 1214, 1220 (Fed. Cir. 2013) (once confidential information is made public, "it cannot again be made secret again").

Nonetheless, following Ad Hoc Shrimp I, the court issued an amended judicial protective order allowing the parties on remand to have complete access to confidential information in the remand.  See Amended Protective Order, June 9, 2022, ECF No. 63; Order, June 9, 2022, ECF No. 62; see also Ad Hoc Shrimp I, 578 F. Supp. 3d at 1322.  With this access, the parties had "a reasonable understanding of the substance of the information" as required by § 165.4(a)(2).  Therefore, although TRLED's treatment of confidential information falls short of what the law requires, this failure is harmless error.  See Guangdong Chems. Imp. & Exp. Corp. v. United States, 30 C.I.T. 85, 94 (2006) (declining to void administrative review for failure to timely notify party when that party admitted to full participation in review).  Therefore, the court does not remand to CBP on this issue.

## II.    Determinations Regarding Evasion

AHSTEC contends that Minh Phu Group's internal control systems are insufficient to prevent evasion and TRLED correctly determined on remand that evasion had taken place.  Pl. Br. at 28.  ORR in its review on remand determines that substantial evidence on the record supports its initial finding of non-evasion. Remand Results, Addendum at 2.  ORR also concludes that MSeafood acted to the best of its ability in its attempt to cooperate with the EAPA investigation; therefore,

TRLED erred when applying adverse inferences in its initial determination.  Id.

Addendum at 3.  Defendant and MSeafood argue that ORR's determination of non-

evasion is supported by substantial evidence.  Def. Br. at 26–29; Def.-Int. Br. at 17–

31.  For the reasons that follow, TRLED's determination is unreasonable while ORR's

determination is reasonable.

## A.    The Legal Framework

The EAPA requires that CBP shall:

> make a determination, based on substantial evidence, with respect to
> whether such covered merchandise was entered into the customs
> territory of the United States through evasion.

19 U.S.C. § 1517(c)(1)(A).  "Covered merchandise" is defined as merchandise which is

subject to an antidumping or countervailing duty order.[8]  19 U.S.C. § 1517(a)(3).

Evasion is statutorily defined as:

> entering covered merchandise into the customs territory of the United
> States by means of any document or electronically transmitted data or
> information, written or oral statement, or act that is material and false,
> or any omission that is material, and that results in any cash deposit or
> other security or any amount of applicable antidumping or
> countervailing duties being reduced or not being applied with respect to
> the merchandise.

---

[8] "Entries that may be the subject of an allegation made under 19 C.F.R. § 165.11 or
a request for an investigation under § 165.14 are those entries of allegedly covered
merchandise made within one year before the receipt of an allegation under § 165.11
or of a request for an investigation under § 165.14."  19 C.F.R. § 165.2.  "In addition,
at its discretion, CBP may investigate other entries of such covered merchandise."
Id.

Id. § 1517(a)(5)(A).  The statute makes an exception for clerical errors, 19 U.S.C.

§ 1517(a)(5)(B)(i), and provides for interim measures, see id. § 1517(e).

In making its determination, if CBP decides that a party has not cooperated

by failing to act to the best of the party's ability regarding a request for information,

CBP may use an inference, selected from the facts available, adverse to that party.

19 U.S.C. § 1517(c)(3)(A); see also 19 C.F.R. § 165.6 (if a party "fails to cooperate and

comply to the best of its ability with a request for information made by CBP, CBP

may apply an inference adverse to the interests of that party in selecting from among

the facts otherwise available to make the determination as to evasion pursuant to

§ 165.27 and subpart D of this part").  Finally, where there is a determination of

evasion, CBP "suspend[s] the liquidation of unliquidated entries of such covered

merchandise," requires cash deposits, assesses duties on entries according to the

applicable ADD assessment rate, and takes any additional enforcement measures

CBP determines appropriate.  19 U.S.C. § 1517(d)(1).

### B.    TRLED's Determination

On remand, TRLED again concludes MSeafood entered covered merchandise

into the United States through evasion.  Remand Results at 2, 28.  Specifically,

TRLED continues to find that substantial evidence supports its determination of

evasion because MSeafood failed to (i) offer any "persuasive and credible

substantiation" that the use of brand names prevented the comingling of shrimp;[9] (ii) provide independent verification of its internal tracing system combined with its history of importing Indian-origin shrimp to Vietnam for processing, including during the period of investigation; and (iii) directly trace Indian-origin shrimp through the production process in light of the fact Indian-origin and Vietnamese-origin shrimp are stored and processed in the same location. Remand Results at 30. Notably, TRLED declines to apply adverse inferences on remand as it had in its initial determination. Id.; see TRLED Initial Determination at 9–10. Without explanation as to why it reverses itself, TRLED recognizes that MSeafood cooperated with the remand to the best of its abilities. Remand Results at 30.

TRLED's determination of evasion is not reasonable on this record. On remand TRLED "affirms its determination that MSeafood entered covered merchandise into the customs territory of the United States through evasion." Remand Results at 2. TRLED bases its decision on Minh Phu Group's "inability to directly trace imported shrimp throughout the production process" as well as Minh Phu Group's concession

---

[9] [[                                                                                ]]
are included as part of the mark Minh Phu Group workers place on each basket of shrimp at the sizing stage of production. Minh Phu Seafood Corporation's Voluntary EAPA Submission, CD 7, CR1057 (Jan. 31, 2020). Brand names help the workers know to which markets final products will be exported. Id. Further, the marks workers place on the baskets of shrimp contain other information, including the source of shrimp—whether it was imported or sourced domestically. Id. If the mark on the shipment indicates that the shrimp were sourced from imports, workers are barred from writing brand names used by U.S. customers on the marks to avoid packing finished products from imported shrimp. Id.

that one of its affiliates exported "comingled Indian-origin and Vietnamese-origin shrimp into the customs territory of the United States." Id. at 28.  In making its determination, TRLED fails to confront record evidence that Minh Phu Group's tracing system is reliable, and arbitrarily transforms a single instance of evasion into a finding of evasion for an entire year of entries.  See id.

TRLED does not address record evidence undermining its determination and demonstrating that Minh Phu Group's tracing system prevents ADD evasion.  Minh Phu Group described a system in which, at no time before final processing, are domestic Vietnamese-origin shrimp and imported shrimp at risk of intermingling. Voluntary Submission of Supplemental Information at 15–17, PD 38, PR1970–72 (May 1, 2020).  By the time the shrimp undergo final processing, only shrimp not slated for export to the United States are intermingled.  Id. at 17.  Minh Phu Group documentation reveals that Minh Phu Group either directly receives deliveries of shrimp from domestic Vietnamese farmers or personally procures shrimp from Vietnamese farms and fish markets.  Id. at 15.  Shrimp arriving at Minh Phu Group factories from any domestic source is accompanied by an invoice specifying the supplier of the shrimp, tax information of the supplier, and the quantity of shrimp sold.  Id.  Minh Phu Group also obtains an "Origin Declaration" from the supplier that includes the name of the farm where the shrimp originated.  Id.  These domestic shrimp are then grouped into separate baskets identified with a trace code and the name of their suppliers.  Id. at 16.

Meanwhile, imported shrimp are marked as imported with the designation "XH" and grouped into separate bins with trace codes.  Voluntary Submission of Supplemental Information at 16, PD 38, PR1971 (May 1, 2020).  Shrimp grouped in imported bins are kept separate from domestic shrimp.  Id.  Both domestic and imported shrimp are separately sorted into further sub-categories and tagged with information pertinent to final processing, including the source of the shrimp, its traceability code, the name of the finished product to designate to employees what kind of further processing the shrimp requires, and the brand name that will appear on the shrimp's final packaging.  Id.  All shrimp, domestic and imported, are then sent to a production line and processed in accordance with this information, as determined by specific orders for shrimp.  Id.  There, domestic and imported shrimp may be intermingled to fulfill orders not intended for export to the United States, while orders destined for the United States remain separate to ensure that only Vietnamese-origin shrimp are used to satisfy the orders.  Id. at 16–17.

Minh Phu Group's origin tracing system has been audited four times by the U.S. National Oceanic and Atmospheric Administration ("NOAA").  MSeafood RFI Resp., Ex. 3, Sample NOAA Audit Reports, CD 229, CR37010–207 (Mar. 19, 2020).  In each audit, the system was found to conform to the Seafood Import Monitoring Program ("SIMP") administered by NOAA.  See id., CR37045–46, 37100–01, 37132, 37207.  A SIMP audit collects information on importers' harvesting locations, storage conditions, sales, and transportation of subject merchandise.  See, e.g., id., CR37049.

    Minh Phu Group was unable to provide specific bills of lading for all shrimp imported from India, as TRLED noted, <u>see</u> TRLED Initial Determination at 9, because imported shrimp are imported from multiple countries and intermingled collectively under the "XH" designation.   <u>See</u> MSeafood's RFI Resp. at 13, CD 213, CR33699 (June 11, 2020) (Ming Phu Group "notes that it cannot trace specific imported shrimp from the import bill of lading through to specific "XH" marked shrimp in finished goods inventory").   It is unclear why TRLED thought this inability to delineate Indian-origin shrimp from non-Indian-origin shrimp renders Minh Phu Group's tracing system inadequate to determine whether Indian-origin shrimp were intermingled with shrimp exported to the United States.   Minh Phu Group does not need to demonstrate the origin of shrimp sold outside of the United States; it only needs to demonstrate that its tracing system does not permit any shrimp from India to be intermingled with shrimp for export to the United States.   <u>See</u> Final Determination Mem. at 6, Appendix at 9–11, A-552-802, bar code 3488092-01 (July 18, 2016) (importer must certify that only shrimp produced by Minh Phu Group be exported to the United States); <u>Revocation Order</u>, 81 Fed. Reg. at 47,757–58.   The record evidence supports the conclusion that no shrimp imported from outside Vietnam is subsequently exported to the United States, whether from India or some other origin, other than one instance of a minimal quantity of shrimp from India and from Vietnam being comingled.   Remand Results, Addendum at 5.

TRLED and AHSTEC's argument that MSeafood concedes evasion, see Pl. Br. at 20; Remand Results at 28, fails to persuade the court that TRLED's decision is reasonable.   AHSTEC argues, "Uncontested evidence on the record that covered merchandise was entered into the customs territory of the United States through evasion is sufficient to constitute substantial evidence justifying an affirmative determination of evasion."[10]  Pl. Br. at 22.  AHSTEC points out that MSeafood does not claim an exception for a clerical error,[11] and that TRLED therefore correctly concludes that MSeafood evaded the order.[12]  The concession TRLED relies upon is insufficient to support the remedy it imposes.

---

[10] As will be discussed below, AHSTEC also argues that ORR commits a "clear error" by reading a requirement into 19 U.S.C. § 1517(a)(5)(B)(ii) that evidence on the record supports a finding of "substantial evasion."  Pl. Br. at 22.

[11] The EAPA does not define clerical error.  In the penalty context, a clerical error "is a mistake made by a clerk or other subordinate, upon whom devolves no duty to exercise judgment, in writing or copying the figures or in exercising his intention." PPG Indus., Inc. v. United States, 7 C.I.T. 118, 124 (1984); see also Hynix Semiconductor Am., Inc. v. United States, 30 C.I.T. 103, 120 (2006) ("Clerical errors are characterized by the absence of exercising judgment and intention, as when a mistake is made in copying or typing figures . . . ").

[12] AHSTEC points out that ORR references the pattern of negligent conduct exception to the clerical error exception, arguing that ORR's analysis "reflects a fundamental misunderstanding as to how evasion is defined in the statute . . . ." Pl. Br. at 21.  ORR stated in a footnote, "Thus, we do not rely on the clerical error statutory exception in reaching our conclusion.   Rather, in our view, a single [[          ]] error, by one production worker, does not amount to a pattern of negligent conduct as described in 19 U.S.C. § 1517(a)(5)(B), nor does it demonstrate substantial evidence of evasion." Remand Results, Addendum at 5 n.25.  ASHTEC is correct that the statute provides that a "pattern of negligent" conduct is an exception to the clerical error exception to

(footnote continued)

The record only supports a finding of evasion for one shipment of "covered merchandise."  TRLED and AHSTEC appear to believe the statute is broad enough for TRLED to find evasion, and impose a remedy for, over an entire year's worth of entries where MSeafood concedes it evaded ADDs for one shipment.  However, § 1517(d)(1) provides for remedies for "such covered merchandise"—the merchandise that would have been subject to the order had the importer not evaded the order.  19 U.S.C. § 1517(a)(3), (d)(1).  On this record, the only "covered merchandise," i.e., merchandise that would have been subject to the order, is the one shipment, not the entire year's worth of entries under investigation.  Yet, TRLED ordered all entries under investigation to be designated as "03" entries, i.e., subject to ADDs and cash deposits. <u>See</u> TRLED Initial Determination at 10; Imposition of Interim Measures at 7.  Thus, on the basis of one shipment, TRLED concludes MSeafood evaded ADDs for a year's worth of entries and subjects those entries to the ADD order on India.  It would be unreasonable to rely upon one shipment to conclude that MSeafood had evaded ADDs for an entire year, when the record demonstrates both that Minh Phu

---

evasion. <u>See</u> 19 U.S.C. § 1517(a)(5)(B).  However, it is reasonably discernible that ORR refers to this exception with reference to its earlier statement in its initial determination: "CBP cannot speak to whether this shipment qualifies as a clerical error under the EAPA."  ORR Initial Determination at 9.  Nonetheless, ORR in its analysis states that "one instance of a minimal quantity of Indian-origin product . . . does not constitute substantial evidence" of evasion.  Remand Results, Addendum at 5.  As explained above, ORR's determination is reasonable.

Group has a system in place to ensure that shrimp are not comingled and also that the single instance of evasion was caused by human error.[13]

### C.   ORR's Determination

Using the new information made available by TRLED, ORR concludes that the sample traces and the SIMP audits included on the record constituted MSeafood's attempt to cooperate with the EAPA investigation and respond to the requests for information ("RFIs"), making the application of adverse inferences unwarranted. Remand Results, Addendum at 3.  ORR further concludes that Minh Phu Group's tracing system was sufficient and that substantial evidence still supports a finding of non-evasion.  Id. Addendum at 5.  AHSTEC argues ORR applies the incorrect standard and that MSeafood concedes evasion.  Pl. Br. at 20–28.  For the reasons that follow, ORR's determination is reasonable.

On remand, ORR determines that substantial evidence on the record supports a finding of non-evasion by MSeafood.  Remand Results, Addendum at 5.  ORR explains how Minh Phu Group's submissions demonstrate its product tracing is reliable.  First, ORR reviews eight sample traces previously omitted from the record and determines that those samples demonstrate Minh Phu Group's provenance tracing of its product.  Id. Addendum at 2–3. As discussed, ORR also found Minh Phu

---

[13] Minh Phu Group's production team erroneously believed that [[            ]] was not a part of the customs territory of the United States, resulting in one shipment of shrimp marked "XH" being exported to [[            ]].  See MSeafood Suppl. RFI Resp., CD 213, CR33694 (June 11, 2020).

Group also uses its tracing system to comply with NOAA's SIMP.  Id. Addendum at 3.  SIMP requires Minh Phu Group to submit its chain of custody records tracking shrimp and prawns from harvest in Vietnam to the point of entry into the United States.  Id. ORR analyzes four SIMP audits of Minh Phu Group's tracing system and determines the application of adverse inferences pursuant to 19 U.S.C. § 1517(c)(3) was unwarranted because Minh Phu Group's tracing system alone was enough to represent its cooperation with the EAPA investigation and the RFIs issued by TRLED.[14]  Remand Results, Addendum at 3.  ORR also considers Minh Phu Group's submissions of shrimp food and seed to support its assertion that it was able to procure enough shrimp and prawns in Vietnam to account for all its sales to the United States.  Id.

In response to ASHTEC's request, ORR examines the use of brand names to assess whether Minh Phu Group comingled Indian-origin and Vietnamese-origin shrimp.  ASHTEC argues that Minh Phu Group relies on identifying brand names in the production process to prevent intermingling Indian-origin shrimp and Vietnamese-origin shrimp in preparing orders intended for export to the United States and that Minh Phu Group's use of branding is insufficient to prevent the comingling of shrimp.  Pl. Br. at 23–25.  Minh Phu Group workers do rely on brand

---

[14] ORR addresses the application of adverse inferences even though TRLED did not apply adverse inferences on remand.  Remand Results, Addendum at 3.  Both TRLED and ORR's remand determinations are signed and dated on the same day, with ORR's being signed by a supervisor 53 minutes and 5 seconds earlier than TRLED's.

names to know to which market finished products will be exported.  See Re-Filing of

Sept. 13, 2019 Submission, Attachment, CD 7, CR1057 (Jan. 31, 2020).  However,

whether brand names are marked on bins is not dispositive of whether Minh Phu

Group is able to keep Vietnamese-origin and imported shrimp segregated throughout

the production process.  The "XH" designation on bins is the single most important

factor throughout the production process.  Regardless, ORR compared brand names

and found that particular brand names were destined for the United States while

others were not.[15]  Remand Results, Addendum at 4.  Yet, ORR was unable to find a

discrepancy to support the argument that Minh Phu Group transships Indian-origin

comingled shrimp to the United States.  Id. Addendum at 4.

Finally, ORR confronts evidence that detracts from its determination.  It

acknowledges that some record evidence raised a reasonable suspicion and concern

of comingling.  Remand Results, Addendum at 5 (acknowledging that some evidence

demonstrates that Minh Phu Group did import Indian-origin shrimp to Vietnam).  In

response to allegations by a U.S. Congressman that Minh Phu Group exported

Indian-origin shrimp to the United States as Vietnamese-origin shrimp, Minh Phu

---

[15] ORR determines that the brands [[                              ]] and [[                    ]] contain
imported Indian-origin shrimp, which Minh Phu Group exports to non-U.S. markets.
Remand Results, Addendum at 4.  ORR also determines the [[                    ]] brand
contains Indian-origin shrimp, which Minh Phu Group exports to [[                ]].  Id.
Addendum at 4–5.  Therefore, ORR determines that Minh Phu Group's tracing
system was sufficient to ensure Indian-origin shrimp was only exported to countries
other than the United States.  Id. Addendum at 5.

Group stated that, although there are Indian-origin shrimp at its plant, it had not and does not export Indian-origin shrimp to the United States. Minh Phu Req. for Administrative Review at 4, CD 218, CR36408 (Nov. 10, 2020). Minh Phu Group explained that it has a specific tracing system to track imported shrimp, which are only used to fulfill orders to countries outside of the United States customs territory. Remand Results, Addendum at 4–5, 5 n.25. ORR concludes, in light of this explanation and after examining Minh Phu Group's tracing procedures, that the record does not support a finding that Minh Phu Group's method of tracing shrimp to avoid shipment of comingled shrimp to the United States was inadequate. Id. Addendum at 5. ORR determines that "one instance of a minimal quantity of Indian-origin product entering the United States, which was discovered and revealed by MPG itself, does not constitute substantial evidence [of evasion]." Remand Results, Addendum at 5. As discussed above, a Minh Phu Group employee made a factual mistake resulting in the export to the United States of shrimp destined for other countries. Id. at 5 n.25. Minh Phu Group discovered this error during the investigation and reported it to CBP. Id. at 5.

AHSTEC argues that ORR clearly errs when it implicitly reads a requirement into 19 U.S.C. § 1517(a)(5)(B)(ii) that the record must support a finding of "substantial" evasion. Pl. Br. at 22. Specifically, AHSTEC points to ORR's statement:

> The record must contain substantial evidence of evasion. When the record herein is considered as a whole, one instance of a minimal quantity of Indian-origin product entering the United States, which was

> discovered and revealed by MPG itself, does not constitute substantial
> evidence.  As such, the totality of the evidence remains insufficient to
> support a determination of evasion.

Id. at 22 (citing Remand Results, Addendum at 5).  AHSTEC argues that "ORR,
however, appears to read a requirement into the statute that the evidence on the
record support a finding of <u>substantial evasion</u>."  Id. (emphasis in the original).  Thus,
AHSTEC argues, ORR improperly elevates the standard for evasion as applied to
MSeafood, which constitutes an abuse of discretion.  Id. at 22–23.  The language cited
by AHSTEC does not support the interpretation it attributes to ORR.  Throughout its
determination, ORR finds the record lacks "substantial evidence" of evasion  and that
the record must contain "substantial evidence of evasion."   Remand Results,
Addendum at 2, 4–5.  Moreover, it is reasonably discernable that ORR determines
substantial evidence supports a finding of non-evasion during the entire period of
investigation, rather than for the single mistaken entry, as AHSTEC suggests.
<u>Compare</u> <u>id.</u> Addendum at 5 (discussing shipments "during the period of investigation
. . . when considered as a whole") <u>with</u> Pl. Br. at 22.  Congress tasked CBP with finding
whether there is evasion and that its determination must be supported by substantial
evidence.  <u>See</u> 19 U.S.C. § 1517(c)(1)(A).  ORR's conclusion that the record lacks
"substantial evidence of evasion" does not reinterpret this standard.

Court No. 21-00129                                                    Page 31
**PUBLIC VERSION**

## CONCLUSION

For the foregoing reasons, ORR's Remand Results are supported by substantial evidence, comply with the court's order in <u>Ad Hoc Shrimp I</u>, and, therefore, are sustained.  Judgment will enter accordingly.

<u>/s/ Claire R. Kelly</u>
Claire R. Kelly, Judge

Dated:          April 26, 2023
                New York, New York